UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| Prepared Food Photos, Inc., <br><br> *plaintiff,* <br><br> versus <br><br> Epic Solutions, LLC, Epic Cybernetics, LLC, Adrien's Supermarket, Inc., McDaniel Food Management, Inc., McLawrence Foods, L.L.C., McDaniel Foods of Alexandria, Inc., McDaniel Foods of Drew, LLC, McLawrence Foods of Swartz, Inc., McLawrence Foods of Oak Grove, Inc., McLawrence Foods of Columbia, LLC, McLawrence Foods of W. Monroe, LLC, Piggly Wiggly South Opelousas, LLC, Sullivan's Grocery LA#2, Sullivan's Inc Grocery, and John Does 1-100, <br><br> *defendants.* | Civil Action No. 22-37 <br><br> Section          Division <br><br> District Judge <br><br> Magistrate Judge <br><br> **Jury Trial Demanded** |

### Complaint

Plaintiff Prepared Food Photos, Inc. ("PFP" or "Plaintiff"), by and through its attorneys, brings this action against Defendants Epic Solutions, LLC, Epic Cybernetics, LLC, Adrien's Supermarket, Inc., McDaniel Food Management, Inc., McLawrence Foods, L.L.C., McDaniel Foods of Alexandria, Inc., McDaniel Foods of Drew, LLC, McLawrence Foods of Swartz, Inc., McLawrence Foods of Oak Grove, Inc., McLawrence Foods of Columbia, LLC, McLawrence Foods of W. Monroe, LLC, Piggly Wiggly South Opelousas, LLC, Sullivan's Grocery LA#2 Inc., Sullivan's Inc Grocery, and John Does 1-100, and alleges as follows:

## Nature of the Action

1.   This is an action for direct copyright infringement, contributory copyright infringement, the distribution of false Copyright Management Information ("CMI"), as that term is defined under 17 U.S.C. § 1202, the alteration, removal, and falsification of CMI, false designation of origin, false advertising, and unfair trade practices pursuant to the Louisiana Unfair Trade Practices Act (the "LUTPA"). Plaintiff PFP brings this action in response to the knowingly unauthorized uses of its original, copyrighted photographs, and other copyright violations, by the Defendants, without its knowledge or consent.

## Parties

2.   Plaintiff Prepared Food Photos, Inc. is a corporation that was formed for the principal purpose of creating and licensing photographic works of prepared food items, primarily through its website, preparedfoodphotos.com. PFP is the owner of all relevant copyrights and other rights at issue in this case. PFP previously conducted business as Adlife Marketing, Inc. and Adlife Marketing & Communications Company, Inc., which merged and changed their corporate name to PFP, and thus PFP owns any copyright registrations filed under its prior corporate names.

3.   Defendant Epic Solutions, LLC is a Tennessee limited liability company that has its principal place of business in Cordova, Tennessee, but which does significant business in Louisiana with the other defendants as discussed below.

4.   Defendant Epic Cybernetics, LLC is a Tennessee limited liability company that has its principal place of business in Collierville, Tennessee, but which does significant business in Louisiana with the other defendants as discussed below.

5.   Defendants Epic Solutions, LLC and Epic Cybernetics, LLC act in concert in the operation of a marketing company providing printing, advertising, and social media services, in particular to grocery retail stores. Therefore, these two defendants will be hereinafter referred to collectively as "Epic" or the "Epic Defendants." The

allegations and claims asserted against Epic in this Complaint arise out of Epic's business relationships with the Louisiana grocery store defendants referenced below.

6.     Defendant Adrien's Supermarket, Inc. ("Adrien's") is a Louisiana corporation that has its principal place of business in Lafayette, Louisiana. On information and belief Defendant Adrien's owns and operates the grocery store Adrien's Supermarket in Louisiana and does business through adrienssupermarket.com.

7.     Defendant McDaniel Food Management, Inc. is a Louisiana corporation that has its principal place of business in Monroe, Louisiana. On information and belief Defendant McDaniel Food Management, Inc. does business as Mac's Fresh Market, including through the website macsfreshmarket.com.

8.     Defendant McLawrence Foods, L.L.C. is a Louisiana limited liability company that has its principal place of business in Monroe, Louisiana. On information and belief Defendant McLawrence Foods, LLC does business as Mac's Fresh Market, including through the website macsfreshmarket.com.

9.     Defendant McDaniel Foods of Alexandria, Inc. is a Louisiana corporation that has its principal place of business in Monroe, Louisiana. On information and belief Defendant McDaniel Foods of Alexandria, Inc. does business as Mac's Fresh Market, including through the website macsfreshmarket.com.

10.    Defendant McDaniel Foods of Drew, LLC is a Louisiana limited liability company that has its principal place of business in Monroe, Louisiana. On information and belief Defendant McDaniel Foods of Drew, LLC does business as Mac's Fresh Market, including through the website macsfreshmarket.com.

11.    Defendant McLawrence Foods of Swartz, Inc. is a Louisiana corporation that has its principal place of business in Monroe, Louisiana. On information and belief Defendant McLawrence Foods of Swartz, Inc. does business as Mac's Fresh Market, including through the website macsfreshmarket.com.

12.     Defendant McLawrence Foods of Oak Grove, Inc. is a Louisiana corporation that has its principal place of business in Monroe, Louisiana. On information and belief Defendant McLawrence Foods of Oak Grove, Inc. does business as Mac's Fresh Market, including through the website macsfreshmarket.com.

13.     Defendant McLawrence Foods of Columbia, LLC is a Louisiana limited liability company that has its principal place of business in Monroe, Louisiana. On information and belief Defendant McLawrence Foods of Columbia, LLC does business as Mac's Fresh Market, including through the website macsfreshmarket.com.

14.     Defendant McLawrence Foods of W. Monroe, LLC is a Louisiana limited liability company that has its principal place of business in Monroe, Louisiana. On information and belief Defendant McLawrence Foods of W. Monroe, LLC does business as Mac's Fresh Market, including through the website macsfreshmarket.com.

15.     Defendants McDaniel Food Management, Inc., McLawrence Foods, L.L.C., McDaniel Foods of Alexandria, Inc., McDaniel Foods of Drew, LLC, McLawrence Foods of Swartz, Inc., McLawrence Foods of Oak Grove, Inc., McLawrence Foods of Columbia, LLC, and McLawrence Foods of W. Monroe, LLC collectively own and operate the grocery store chain Mac's Fresh Market in Louisiana and collectively do business through the website macsfreshmarket.com. Therefore, these eight defendants will hereinafter be referred to collectively as "Mac's Fresh Market" or "Mac's."

16.     Defendant Piggly Wiggly South Opelousas, LLC ("Piggly Wiggly South") is a Louisiana limited liability company that has its principal place of business in Opelousas, Louisiana. On information and belief, Defendant Piggly Wiggly South owns and operates the grocery store Cash Saver South and does business through cashsaversouth.com.

17.     Defendant Sullivan's Grocery LA#2 Inc. is a Louisiana corporation that has its principal place of business in Clinton, Louisiana. On information and belief, Sullivan's

Grocery LA#2 Inc. owns and operates the grocery store Sullivan's Grocery in Louisiana and does business through the website sullivansgroc.com.

18. Defendant Sullivan's Inc Grocery is a corporation registered to do business in Louisiana, with a registered office, principal business establishment, and registered agent located in Angie, Louisiana. On information and belief, Sullivan's Inc Grocery owns and operates the grocery store Sullivan's Grocery in Louisiana and does business through the website sullivansgroc.com.

19. Defendants Sullivan's Grocery LA#2 Inc. and Sullivan's Inc Grocery collectively own and operate the grocery store chain Sullivan's Grocery in Louisiana and collectively do business through the website sullivansgroc.com. Therefore, these two defendants will hereinafter be referred to collectively as "Sullivan's."

20. Defendants John Does 1-100 (the "Doe Defendants") include parties who have used copyrighted photographs owned by Plaintiff PFP as a result of their business relationship with Epic, and will be identified during discovery.

21. All of the defendants in this case except for Epic Solutions, LLC and Epic Cybernetics, LLC own and operate grocery stores and on information and belief are clients of Epic, and therefore they may hereinafter be referred to collectively as the "Grocery Store Defendants" (*i.e.*, Defendants Adrien's Supermarket, Inc., McDaniel Food Management, Inc., McLawrence Foods, L.L.C., McDaniel Foods of Alexandria, Inc., McDaniel Foods of Drew, LLC, McLawrence Foods of Swartz, Inc., McLawrence Foods of Oak Grove, Inc., McLawrence Foods of Columbia, LLC, McLawrence Foods of W. Monroe, LLC, Piggly Wiggly South Opelousas, LLC, Sullivan's Grocery LA#2 Inc., Sullivan's Inc Grocery, and John Does 1-100).

### Jurisdiction and Venue

22. This action arises under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq*. and 15 U.S.C. § 1125, *et seq*.

23. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367, and 15 U.S.C. § 1121.

24. This Court has personal jurisdiction over Defendant Epic Solutions, LLC pursuant to La. R.S. § 12:3201 because, as described in greater detail below, it has: (1) transacted business in Louisiana, in particular with the Grocery Store Defendants in this case; (2) contracted to supply services or things in Louisiana, in particular with the Grocery Store Defendants in this case; and/or (3) caused injury or damage to Plaintiff PFP by an offense or quasi offense committed through an act or omission in Louisiana. Personal jurisdiction over Defendant Epic Solutions, LLC is consistent with the Constitution of the State of Louisiana and of the United States Constitution, in particular its Due Process clause. As described in greater detail below, Defendant Epic Solutions, LLC purposefully directed its activities at residents of Louisiana, including the Grocery Store Defendants in this case and their customers, and this litigation results from alleged injuries that arise out of or relate to those activities.

25. This Court has personal jurisdiction over Defendant Epic Cybernetics, LLC pursuant to La. R.S. § 12:3201 because, as described in greater detail below, it has: (1) transacted business in Louisiana, in particular with the Grocery Store Defendants in this case; (2) contracted to supply services or things in Louisiana, in particular with the Grocery Store Defendants in this case; and/or (3) caused injury or damage to Plaintiff PFP by an offense or quasi offense committed through an act or omission in Louisiana. Personal jurisdiction over Defendant Epic Cybernetics, LLC is consistent with the Constitution of the State of Louisiana and of the United States Constitution, in particular its Due Process clause. As described in greater detail below, Defendant Epic Cybernetics, LLC purposefully directed its activities at residents of Louisiana, including the Grocery Store Defendants in this case and their customers, and this litigation results from alleged injuries that arise out of or relate to those activities.

26.     This Court has personal jurisdiction over Defendant Adrien's Supermarket, Inc. because, as alleged above, it has its principal place of business in Louisiana.

27.     This Court has personal jurisdiction over Defendant McDaniel Food Management, Inc. because, as alleged above, it has its principal place of business in Louisiana.

28.     This Court has personal jurisdiction over Defendant McLawrence Foods, LLC because, as alleged above, it has its principal place of business in Louisiana.

29.     This Court has personal jurisdiction over McDaniel Foods of Alexandria, Inc. because, as alleged above, it has its principal place of business in Louisiana.

30.     This Court has personal jurisdiction over Defendant McDaniel Foods of Drew, LLC because, as alleged above, it has its principal place of business in Louisiana.

31.     This Court has personal jurisdiction over Defendant McLawrence Foods of Swartz, Inc. because, as alleged above, it has its principal place of business in Louisiana.

32.     This Court has personal jurisdiction over Defendant McLawrence Foods of Oak Grove, Inc. because, as alleged above, it has its principal place of business in Louisiana.

33.     This Court has personal jurisdiction over Defendant McLawrence Foods of Columbia, LLC because, as alleged above, it has its principal place of business in Louisiana.

34.     This Court has personal jurisdiction over Defendant McLawrence Foods of W. Monroe, LLC because, as alleged above, it has its principal place of business in Louisiana.

35.     This Court has personal jurisdiction over Defendant Piggly Wiggly South Opelousas, LLC because, as alleged above, it has its principal place of business in Louisiana.

36.     This Court has personal jurisdiction over Defendant Sullivan's Grocery LA#2 Inc. because, as alleged above, it has its principal place of business in Louisiana.

37.     This Court has personal jurisdiction over Defendant Sullivan's Inc Grocery because it is registered to do business in Louisiana and has a registered office, principal business establishment, and registered agent located in Louisiana. On information and belief, Sullivan's Inc Grocery owns and operates the grocery store Sullivan's Grocery

in Louisiana and does business through the website sullivansgroc.com, which targets Louisiana residents. In addition, on information and belief, in particular through its relationship with Defendant Sullivan's Grocery LA#2 Inc., Defendant Sullivan's Inc Grocery has: (1) transacted business in Louisiana; (2) contracted to supply services or things in Louisiana; and/or (3) caused injury or damage to Plaintiff PFP by an offense or quasi offense committed through an act or omission in Louisiana. Personal jurisdiction over Defendant Sullivan's Inc Grocery is consistent with the Constitution of the State of Louisiana and of the United States Constitution, in particular its Due Process clause. As described in greater detail below, Defendant Sullivan's Inc Grocery purposefully directed its activities at residents of Louisiana, and this litigation results from alleged injuries that arise out of or relate to those activities.

38.    Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400.

**Background Facts**

*PFP's Creation of the Copyrighted Photographs*

39.    Plaintiff Prepared Food Photos, Inc. is an advertising and marketing company that specializes in creating original photographic works of food items for use in the food industry. PFP is a veteran in this industry, and its business relies on the licensing of these original works to grocery stores, supermarkets, marketing companies, and other companies and individuals who wish to use the works for, among other things, supermarket circular advertisements, food calendars, packaging, and product labels.

40.    Over the past several decades, PFP and its predecessors have created thousands of photographs of food items. PFP's website, preparedfoodphotos.com, allows customers to download copies of PFP's copyrighted photographs from their photograph library by enrolling in a monthly subscription plan, currently at a rate of $999 per month, with a minimum subscription term of one year. The price is higher for an enterprise license for subscribers who need greater than five end-user licenses or who need to use any of PFP's photographs for the benefit of clients with more than twelve

locations or with more than twelve unique clients. PFP's revenue is derived substantially from the fees paid for the monthly subscription service and its enterprise licenses.

41.   PFP's photograph library includes certain photographs (each individually, a "Photograph"; collectively, the "Photographs") that serve as the basis for the claims alleged in this Complaint. Attached hereto as **Exhibit A** are copies of PFP's Photographs, in particular, the ones that are the subject of this action.[1]

42.   PFP (or its corporate predecessors) registered the Photographs in the U.S. Copyright Office, *inter alia*, as follows:

- Reg. No. VA-2-015-841 with an effective registration date of September 1, 2016;
- Reg. No. VA-2-021-644 with an effective registration date of November 4, 2016;
- Reg. No. VA-2-022-966 with an effective registration date of November 26, 2016;
- Reg. No. VA 2-023-644 with an effective registration date of December 2, 2016;
- Reg. No. VA-2-024-450 with an effective registration date of November 26, 2016.
- Reg. No. VA-2-024-712 with an effective registration date of December 18, 2016;
- Reg. No. VA-2-025-647 with an effective registration date of December 30, 2016;
- Reg. No. VA-2-045-003 with an effective registration date of April 19, 2017;
- Reg. No. VA-2-046-803 with an effective registration date of February 5, 2017;
- Reg. No. VA-2-046-924 with an effective registration date of March 8, 2017;
- Reg. No. VA-2-047-004 with an effective registration date of March 7, 2017;

---

[1] Additional Photographs than as expressly identified in this Complaint may be revealed through discovery as having been infringed by the currently-named defendants or defendants that will need to be added to this case at a later date. PFP reserves its rights to amend the Complaint accordingly.

- Reg. No. VA-2-047-017 with an effective registration date of March 5, 2017;

- Reg. No. VA-2-055-108 with an effective registration date of May 3, 2017; and

- Reg. No. VA-2-055-118 with an effective registration date of April 27, 2017;

Attached hereto as **Exhibit B** are copies of the registration certificates for the Photographs known at present by PFP to be at issue in this case, each followed by the particular Photographs covered by the registration that are currently known to have been infringed by the Defendants in this case; however, discovery is likely to reveal the infringement of additional Photographs and additional copyright registrations.

43. The Epic Defendants are a marketing company focused on, among other things, research and marketing analysis, print distribution, social media campaigns, and creative advertising design. Epic regularly provides print and advertising services to grocery stores across the United States, including the Grocery Store Defendants, which includes the distribution of photographs for these retailers to use in their advertisements.

*PFP's Prior Agreement with Multi-Ad*

44. At all relevant times until March 1, 2017, PFP had a contract with an organization called LSA Creative Outlet, which at that time was doing business as Multi-Ad Ad-Builder. This organization will be referred to hereinafter as "Multi-Ad," and its agreement with PFP will be referred to hereinafter as the "Multi-Ad Agreement."

45. Multi-Ad was a marketing organization that sought to provide marketing solutions to businesses, for example, through the availability of an online photo library. Under the Multi-Ad Agreement, Multi-Ad and its customers had access to PFP's library of Photographs for use in marketing materials.

46. On information and belief, Multi-Ad's platform expressly identified PFP as the owner of the particular PFP Photographs being offered on Multi-Ad's platform to its customers.

47.     On information and belief, Epic was a customer of Multi-Ad on or before March 1, 2017, and during such time obtained and used copies of Photographs as permitted under the Multi-Ad Agreement.

48.     On information and belief, Epic has numerous customers that are grocery retail stores, or otherwise sellers of food items, including but not limited to the Grocery Store Defendants in this case.

49.     On information and belief, Epic obtained copies of Photographs and either directly used the Photographs, or caused them to be used by the Grocery Store Defendants in this case, in connection with marketing materials for each of the Grocery Store Defendants in this case.

50.     Effective March 1, 2017, the Multi-Ad Agreement was terminated, thus ending the right of Multi-Ad to make PFP's Photographs available to its customers, such as Epic, and in turn ended the right of Epic's customers, including the Grocery Store Defendants in this case, to use any of the Photographs previously made available to them via Multi-Ad, to the extent Epic's customers possessed any such right.

51.     On information and belief, as early as December 2016, but in any event prior to March 1, 2017, Multi-Ad notified all of its customers, including Epic, that that the Multi-Ad Agreement was terminated, and thus none of Multi-Ad's customers would be permitted to make any use of any Photographs as of that date.

52.     On information and belief, PFP reasonably assumes without the benefit of discovery that at this time Epic notified all of its customers, including presumably the Grocery Store Defendants in this case, that that the Multi-Ad Agreement was being terminated, and thus none of Epic's customers, including the Grocery Store Defendants, would be permitted to make any use of any Photographs as of March 1, 2017.

*Epic's and the Grocery Store Defendants' Unauthorized Uses of the Photographs after the Termination of the Multi-Ad Agreement*

53.    At various times after the termination of the Multi-Ad Agreement, PFP discovered unauthorized uses of its copyrighted Photographs by Epic and its customers, including the Grocery Store Defendants.

54.    As early as July 2020 PFP notified Epic as to the numerous infringements of the Photographs it engaged in and/or caused through the use of Photographs by its grocery store customers.

55.    Subsequently, PFP and Epic engaged in discussions concerning a potential amicable resolution of PFP's dispute with Epic and its customers over their unauthorized use of PFP's copyrighted Photographs. But those discussions broke down without any resolution.

56.    While there was no resolution yet as to Epic and its grocery store customers' past infringement of the Photographs, in its prior dealings with Epic PFP made at least one material issue clear: that effective March 1, 2017, Epic, nor any other users purporting to use the Photographs pursuant to the Multi-Ad Agreement, was not authorized to use the Photographs pursuant to the terms of the Multi-Ad Agreement, nor sublicense the use of any Photographs. Thus, at minimum PFP reasonably assumed that future infringements by Epic and its grocery store customers would not occur, as there would be no question that any such future infringement would be willful. But that turned out to be a false hope.

*Epic's and the Grocery Store Defendants' Continued Unauthorized Use of the Photographs After the 2020 Negotiations Between PFP and Epic*

57.    Since PFP's and Epic's initial 2020 discussions concerning the infringement of PFP's Photographs following the termination of the Multi-Ad Agreement, it appears Epic has continued to infringe PFP's copyrights in the Photographs on a large commercial scale, flowing from Epic's unauthorized use and/or licensing of the Photographs in

connection with advertisements for numerous grocery stores and food retailers, including the Grocery Store Defendants in this case.

58.     Examples of Defendants' infringements are attached hereto as **Exhibits C** to **F.** Further detail of each Defendant's infringing and unlawful acts is set forth below.

59.     Beginning in the summer of 2021, PFP sent cease-and-desist letters to each of the Grocery Store Defendants, notifying them of their infringement of the Photographs. With respect to all of these Defendants, either the Defendant expressly identified Epic as the source for or liable party for the alleged infringement, the Defendant's website expressly identifies Epic as having a role in the creation and/or publication of the infringing materials, or both. Below is further detail as to Epic's role with respect to each Grocery Store Defendant.

60.     On information and belief, Defendant Adrien's was a recipient of Epic's unauthorized distribution of Photographs. In a letter to PFP's counsel, Adrien's insurer represented that "all marketing/advertising & social media promotions are the property of Epic Solutions, LLC[.]" Adrien's website bears a copyright notice, stating, "Copyright © 2021 All rights reserved by Epic Solutions LLC." *See* Exhibit C, at 10 of 16. Adrien's made at minimum 18 infringing uses of the Photographs without PFP's authorization. *See* Exhibit C.

61.     On information and belief, Defendant Mac's was a recipient of Epic's unauthorized distribution of Photographs. Mac's website bears a copyright notice, stating, "© 2021 Epic Cybernetics LLC." *See* Exhibit D, at 2 of 54. Mac's made at minimum 113 infringing uses of the Photographs without PFP's authorization. *See* Exhibit D.

62.     On information and belief, Defendant Piggly Wiggly South was a recipient of Epic's unauthorized distribution of Photographs. Piggly Wiggly South's infringing advertisement bears a copyright notice, stating, "© COPYRIGHTED . . . EPIC SOLUTIONS, LLC'S PERMISSION REQUIRED BEFORE USE." *See* Exhibit E, at 2 of 2.

Piggly Wiggly South made at minimum one infringing use of a Photograph without PFP's authorization. *See* Exhibit E.

63.    On information and belief, Defendant Sullivan's was a recipient of Epic's unauthorized distribution of Photographs. Sullivan's website bears a copyright notice, stating, "© 2021 Epic Cybernetics LLC." *See* Exhibit F, at 2 of 10. Sullivan's made at minimum 11 infringing uses of the Photographs without PFP's authorization. *See* Exhibit F.

64.    Below is a chart summarizing the above facts:

| Exhibit | Grocery Store Defendant | Number of infringements identified thus far | Source of information re: Epic's role |
|---------|------------------------|---------------------------------------------|----------------------------------------|
| C | Adrien's | 18 | Correspondence from Adrien's Insurer, on behalf of Adrien's, stating that "[A]ll marketing/advertising & social media promotions are the property of Epic Solutions, LLC[.]"<br><br>*See* Exhibit C, at 10 of 16 ("Copyright © 2021 All rights reserved by Epic Solutions LLC"). |
| D | Mac's | 113 | https://macsfreshmarket.com *See* Exhibit D, at 2 of 54 ("© 2021 Epic Cybernetics LLC"). |
| E | Piggly Wiggly South | 1 | *See* Exhibit E, at 2 of 2 ("© COPYRIGHTED . . . EPIC SOLUTIONS, LLC'S PERMISSION REQUIRED BEFORE USE."). |
| F | Sullivan's | 11 | https://sullivansgroc.com *See* Exhibit F, at 2 of 10 ("© 2021 Epic Cybernetics LLC"). |

65.     Having learned of Epic's role in each of these infringements, in the fall of 2021 PFP sought to reengage Epic in discussions so as to notify Epic as to its continued, willful infringement of PFP's Photographs, and to see if an amicable resolution could be reached.

66.     Despite the efforts of PFP, Epic has thus far failed to substantively engage in these discussions, and therefore there did not appear to be a realistic prospect of a pre-suit settlement. Despite numerous requests, Epic declined to enter into a tolling agreement, necessitating that PFP take action.

67.     As such, PFP commenced this action to remedy Defendants' unlawful activities.

*Epic's Direct and Contributory Infringement*

68.     On information and belief, Epic provided print and advertisement services to the Grocery Store Defendants by creating and distributing weekly circular advertisements for the purpose of soliciting business on behalf of the Grocery Store Defendants.

69.     In 2021, PFP began to notice that many grocery stores in the southern United States were repeatedly publicly displaying and distributing advertisements that used PFP's copyrighted Photographs. As months passed, the list of entities using the Photographs in their advertisements grew to include all of the Grocery Store Defendants, as well as others, although Plaintiff believes that there are likely many more entities not yet discovered that are infringing Plaintiff's Photographs, *i.e.*, the Doe Defendants.

70.     On information and belief, Epic reproduced the Photographs and either directly distributed and published them in connection with the Grocery Store Defendants' advertisements, or caused them to be distributed and published by the Grocery Store Defendants in connection with the Grocery Store Defendants' advertisements, or both. Unauthorized uses of the Photographs appeared on the websites promoting the Grocery Store Defendants' websites, and likely through print advertising as well.

71.  After March 1, 2017, the date the Multi-Ad Agreement was terminated, neither Epic nor the Grocery Store Defendants in question had a subscription to PFP's services, nor had any other active contract or licensing agreement with PFP concerning the use of any kind of the Photographs as would be required to use them. Neither Epic nor the Grocery Store Defendants in question requested any use of the Photographs from PFP, and none was permitted by PFP. As such, the uses of these Photographs, as to both Epic and the Grocery Store Defendants, were not authorized by PFP.

*Epic's CMI Violations*

72.  **Epic's State of Mind Concerning the Photographs' CMI.** To the extent the Photographs were obtained by Epic via Multi-Ad's platform, as alleged above, it is believed that PFP's CMI was conveyed in connection with all points of access to PFP's Photographs, as it is believed that Multi-Ad's platform expressly identified PFP as the owner of the particular PFP Photographs being offered on Multi-Ad's platform to its customers. This information constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

73.  To the extent the Photographs were obtained by Epic from PFP's website directly, when accessing PFP's website, particularly the pages where the Photographs can be accessed, provided at the bottom of each Photograph are notices stating: "Owner: Prepared Food Photos" and "Copyright © 2021 Prepared Food Photos . . . All Rights Reserved." *See* Exhibit A. This information constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

74.  Epic was thus aware of the fact that PFP was the sole author, copyright owner, and authorized licensor of the Photographs and that the use of PFP's Photographs after termination of the Multi-Ad Agreement was unauthorized. That is particular so because as early as 2016, by a notice from Multi-Ad, the PFP Photographs would no longer be able to be used under the Multi-Ad Agreement after March 1, 2017. And

further, in 2020 forward, the unauthorized use of the Photographs was the subject of discussions between PFP and Epic.

75.   **Removal and Alteration of PFP's CMI.** Despite Epic's knowledge of the Photographs' CMI and copyright status as alleged above, on information and belief, Epic nonetheless removed and altered the Photographs' CMI by: failing to properly attribute the Photographs to PFP; and by erroneously providing numerous copyright notices attributing the Photographs to Epic and intentionally causing the Grocery Store Defendants to credit Epic when Epic knew that it was not the author or owner of the Photographs.

76.   By failing to properly attribute the Photographs to PFP and by erroneously providing numerous copyright notices attributing the Photographs to Epic, Epic intentionally removed and/or altered the Photographs' CMI, distributed CMI knowing that the CMI had been removed and/or altered without authority of PFP or the law, and distributed the Photographs or copies thereof knowing that the CMI had been removed and/or altered without authority of PFP or the law, knowing or having reasonable grounds to know that these acts would induce, enable, facilitate, or conceal its own or a third party's infringement.

77.   **False CMI.** By providing Epic's copyright notice in connection with the Photographs, as described more fully below, Epic knowingly and with the intent to conceal its own or a third party's infringement provided false CMI and distributed false CMI.

*Adrien's Direct Infringement*

78.   On or around January 21, 2021, Adrien's, through itself or in concert with Epic, reproduced and publicly displayed at least 18 copies of certain Photographs in its advertisements for its business on adrienssupermarket.com and, on information and belief, on printed copies. *See* Exhibit C.

79.   Adrien's was aware that it was not authorized to reproduce, publish, display, or otherwise use the Photographs after termination of the Multi-Ad Agreement. That

is particularly so because, as alleged above, Adrien's was aware, by a notice from Multi-Ad, communicated to Adrien's either directly or via Epic, that the PFP Photographs would no longer be able to be used under the Multi-Ad Agreement after March 1, 2017. And by 2020, it is assumed that this was further communicated to Adrien's by Epic as a result of the 2020 discussions between PFP and Epic's counsel concerning the continued infringement of PFP's Photographs.

*Adrien's CMI Violations*

80.   **Adrien's State of Mind Concerning the Photographs' CMI**. To the extent the Photographs were obtained by Adrien's through Multi-Ad's platform, either directly or via Epic, as alleged above, it is believed that PFP's CMI was conveyed in connection with all points of access to PFP's Photographs, as it is believed that Multi-Ad's platform expressly identified PFP as the owner of the particular PFP Photographs being offered on Multi-Ad's platform to its customers. This information constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

81.   To the extent the Photographs were obtained by Adrien's from PFP's website directly, either directly or via Epic, when accessing PFP's website, particularly the pages where the Photographs can be accessed, provided at the bottom of each Photograph are notices stating: "Owner: Prepared Food Photos" and "Copyright © 2021 Prepared Food Photos . . . All Rights Reserved." *See* Exhibit A. This information constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

82.   Adrien's was thus aware of the fact that PFP was the sole author, copyright owner, and authorized licensor of the Photographs and that the use of PFP's Photographs after termination of the Multi-Ad Agreement was unauthorized.

83.   **Removal and Alteration of CMI.** Despite Adrien's knowledge of the Photographs' CMI and copyright status as alleged above, on information and belief, Adrien's nonetheless removed and altered the Photographs' CMI by: failing to properly

attribute the Photographs to PFP; and by erroneously providing numerous copyright notices attributing the Photographs to Epic.

84.   **False CMI.** Adrien's website bears a copyright notice, stating, "Copyright © 2021 All rights reserved by Epic Solutions LLC." *See* Exhibit C, at 10 of 16. This copyright notice constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

85.   By providing Epic's copyright notice in connection with its advertisements, Adrien's also provided and/or distributed false CMI to any person that accessed its infringing circular advertisements due to Epic's copyright notices being conveyed in connection with the Photographs, which were false because they erroneously communicated to the public that the use of the Photographs was authorized and that Epic was the author, owner, or authorized licensor of the Photographs, in particular because it is believed Epic's was the only copyright notice conveyed in connection with the Photographs by Adrien's.

86.   **Summary of Adrien's CMI Violations.** By itself or in concert with Epic, by failing to properly attribute the Photographs to PFP and by erroneously providing numerous copyright notices attributing the Photographs to Epic, Adrien's intentionally removed and/or altered the Photographs' CMI, distributed CMI knowing that the CMI had been removed and/or altered without authority of PFP or the law, and distributed the Photographs or copies thereof knowing that the CMI had been removed and/or altered without authority of PFP or the law, knowing or having reasonable grounds to know that these acts would induce, enable, facilitate, or conceal its own or a third party's infringement.

87.   By itself or in concert with Epic, by providing Epic's copyright notice in connection with the Photographs, Adrien's knowingly and with the intent to conceal its own or a third party's infringement provided false CMI and distributed false CMI.

*Mac's' Direct Infringement*

88.     On or around January 27, 2021, Mac's reproduced and publicly displayed at least six copies of the Photographs in advertisements for its grocery store chain, Mac's Fresh Market, on macsfreshgrocery.com and, on information and belief, on printed copies. *See* Exhibit D.

89.     Mac's was aware that it was not authorized to reproduce, publish, display, or otherwise use the Photographs after termination of the Multi-Ad Agreement. That is particularly so because, as alleged above, Mac's was aware, by a notice from Multi-Ad, communicated to Mac's either directly or via Epic, that the PFP Photographs would no longer be able to be used under the Multi-Ad Agreement after March 1, 2017. And by 2020, it is assumed that this was further communicated to Mac's by Epic as a result of the 2020 discussions between PFP and Epic's counsel concerning the continued infringement of PFP's Photographs.

*Mac's CMI Violations*

90.     **Mac's State of Mind Concerning the Photographs' CMI**. To the extent the Photographs were obtained by Mac's through Multi-Ad's platform, either directly or via Epic, as alleged above, it is believed that PFP's CMI was conveyed in connection with all points of access to PFP's Photographs, as it is believed that Multi-Ad's platform expressly identified PFP as the owner of the particular PFP Photographs being offered on Multi-Ad's platform to its customers. This information constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

91.     To the extent the Photographs were obtained by Mac's from PFP's website directly, either directly or via Epic, when accessing PFP's website, particularly the pages where the Photographs can be accessed, provided at the bottom of each Photograph are notices stating: "Owner: Prepared Food Photos" and "Copyright © 2021 Prepared Food Photos . . . All Rights Reserved." *See* Exhibit A. This information constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

92. Mac's was thus aware of the fact that PFP was the sole author, copyright owner, and authorized licensor of the Photographs and that the use of PFP's Photographs after termination of the Multi-Ad Agreement was unauthorized.

93. **Removal and Alteration of CMI.** Despite Mac's knowledge of the Photographs' CMI and copyright status as alleged above, on information and belief, Mac's nonetheless removed and altered the Photographs' CMI by: failing to properly attribute the Photographs to PFP; and by erroneously providing numerous copyright notices attributing the Photographs to Epic.

94. **False CMI.** Mac's website bears a copyright notice, stating, "© 2021 Epic Cybernetics LLC." See Exhibit D, at 2 of 54. The foregoing copyright notice constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

95. By providing Epic's copyright notice in connection with its advertisements, Mac's provided and/or distributed false CMI to any person that accessed its infringing advertisements due to Epic's copyright notices being conveyed in connection with the Photographs, which were false because they erroneously communicated to the public that the use of the Photographs was authorized and that Epic was the author, owner, or authorized licensor of the Photographs, in particular because it is believed Epic's was the only copyright notice conveyed in connection with the Photographs by Mac's.

96. **Summary of Mac's CMI Violations.** By itself or in concert with Epic, by failing to properly attribute the Photographs to PFP and by erroneously providing numerous copyright notices attributing the Photographs to Epic, Mac's intentionally removed and/or altered the Photographs' CMI, distributed CMI knowing that the CMI had been removed and/or altered without authority of PFP or the law, and distributed the Photographs or copies thereof knowing that the CMI had been removed and/or altered without authority of PFP or the law, knowing or having reasonable grounds

to know that these acts would induce, enable, facilitate, or conceal its own or a third party's infringement.

97.   By itself or in concert with Epic, by providing Epic's copyright notice in connection with the Photographs, Mac's knowingly and with the intent to conceal its own or a third party's infringement provided false CMI and distributed false CMI.

*Piggly Wiggly South's Direct Infringement*

98.   On or around May 18, 2021, Piggly Wiggly South reproduced and publicly displayed at least one copy of a Photograph in an advertisement for its grocery store, Cash Saver South, on its website, cashsaversouth.com, and, on information and belief, on printed copies. *See* Exhibit E.

99.   Piggly Wiggly South was aware that it was not authorized to reproduce, publish, display, or otherwise use the Photographs after termination of the Multi-Ad Agreement. That is particularly so because, as alleged above, Piggly Wiggly South was aware, by a notice from Multi-Ad, communicated to Piggly Wiggly South either directly or via Epic, that the PFP Photographs would no longer be able to be used under the Multi-Ad Agreement after March 1, 2017. And by 2020, it is assumed that this was further communicated to Piggly Wiggly South by Epic as a result of the 2020 discussions between PFP and Epic's counsel concerning the continued infringement of PFP's Photographs.

*Piggly Wiggly South's CMI Violations*

100.  **Piggly Wiggly South's State of Mind Concerning the Photographs' CMI.** To the extent the Photographs were obtained by Piggly Wiggly South through Multi-Ad's platform, either directly or via Epic, as alleged above, it is believed that PFP's CMI was conveyed in connection with all points of access to PFP's Photographs, as it is believed that Multi-Ad's platform expressly identified PFP as the owner of the particular PFP Photographs being offered on Multi-Ad's platform to its customers. This

information constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

101.  To the extent the Photographs were obtained by Piggly Wiggly South from PFP's website directly, either directly or via Epic, when accessing PFP's website, particularly the pages where the Photographs can be accessed, provided at the bottom of each Photograph are notices stating: "Owner: Prepared Food Photos" and "Copyright © 2021 Prepared Food Photos . . . All Rights Reserved." *See* Exhibit A. This information constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

102.  Piggly Wiggly South was thus aware of the fact that PFP was the sole author, copyright owner, and authorized licensor of the Photographs and that the use of PFP's Photographs after termination of the Multi-Ad Agreement was unauthorized.

103.  **Removal and Alteration of CMI**. Despite Piggly Wiggly South's knowledge of the Photographs' CMI and copyright status as alleged above, on information and belief, Mac's nonetheless removed and altered the Photographs' CMI by: failing to properly attribute the Photographs to PFP; and by erroneously providing numerous copyright notices attributing the Photographs to Epic.

104.  **False Copyright Notices.** Piggly Wiggly South's infringing advertisement bears a copyright notice, stating, "© COPYRIGHTED . . . EPIC SOLUTIONS, LLC'S PERMISSION REQUIRED BEFORE USE." *See* Exhibit E, at 2 of 2. The foregoing copyright notice constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

105.  By providing Epic's copyright notice in connection with its advertisements, Piggly Wiggly South provided and/or distributed false CMI to any person that accessed its infringing advertisements due to Epic's copyright notices being conveyed in connection with the Photographs, which were false because they erroneously communicated to the public that the use of the Photographs was authorized and that Epic was the

author, owner, or authorized licensor of the Photographs, in particular because it is believed Epic's was the only copyright notice conveyed in connection with the Photographs by Piggly Wiggly South.

106.   **Summary of Piggly Wiggly South's CMI Violations.** By itself or in concert with Epic, by failing to properly attribute the Photographs to PFP and by erroneously providing numerous copyright notices attributing the Photographs to Epic, Piggly Wiggly South intentionally removed and/or altered the Photographs' CMI, distributed CMI knowing that the CMI had been removed and/or altered without authority of PFP or the law, and distributed the Photographs or copies thereof knowing that the CMI had been removed and/or altered without authority of PFP or the law, knowing or having reasonable grounds to know that these acts would induce, enable, facilitate, or conceal its own or a third party's infringement.

107.   By itself or in concert with Epic, by providing Epic's copyright notice in connection with the Photographs, Piggly Wiggly South knowingly and with the intent to conceal its own or a third party's infringement provided false CMI and distributed false CMI.

*Sullivan's Direct Infringement*

108.   On or around February 17, 2021, Sullivan's reproduced and publicly displayed at least six copies of the Photographs in weekly circular advertisements for its grocery store chain, Sullivan's Grocery, on its website sullivansgroc.com and, on information and belief, on printed copies. *See* Exhibit F.

109.   Sullivan's was aware that it was not authorized to reproduce, publish, display, or otherwise use the Photographs after termination of the Multi-Ad Agreement. That is particularly so because, as alleged above, Sullivan's was aware, by a notice from Multi-Ad, communicated to Sullivan's either directly or via Epic, that the PFP Photographs would no longer be able to be used under the Multi-Ad Agreement after March 1, 2017. And by 2020, it is assumed that this was further communicated to

24

Sullivan's by Epic as a result of the 2020 discussions between PFP and Epic's counsel concerning the continued infringement of PFP's Photographs.

*Sullivan's CMI Violations*

110. **Sullivan's State of Mind Concerning the Photographs' CMI.** To the extent the Photographs were obtained by Sullivan's through Multi-Ad's platform, either directly or via Epic, as alleged above, it is believed that PFP's CMI was conveyed in connection with all points of access to PFP's Photographs, as it is believed that Multi-Ad's platform expressly identified PFP as the owner of the particular PFP Photographs being offered on Multi-Ad's platform to its customers. This information constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

111. To the extent the Photographs were obtained by Sullivan's from PFP's website directly, either directly or via Epic, when accessing PFP's website, particularly the pages where the Photographs can be accessed, provided at the bottom of each Photograph are notices stating: "Owner: Prepared Food Photos" and "Copyright © 2021 Prepared Food Photos . . . All Rights Reserved." *See* Exhibit A. This information constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

112. Sullivan's was thus aware of the fact that PFP was the sole author, copyright owner, and authorized licensor of the Photographs and that the use of PFP's Photographs after termination of the Multi-Ad Agreement was unauthorized.

113. **Removal and Alteration of CMI.** Despite Sullivan's knowledge of the Photographs' CMI and copyright status as alleged above, on information and belief, Sullivan's nonetheless removed and altered the Photographs' CMI by: failing to properly attribute the Photographs to PFP; and by erroneously providing numerous copyright notices attributing the Photographs to Epic.

114. **False Copyright Notices.** When accessing Sullivan's circular advertisement, provided in the footer of the advertisement is the copyright notice "© Copyrighted 2020 Epic

Solutions, LLC's Permission Required Before Use." *See* Exhibit F, at 2 of 10. The foregoing copyright notice constitutes CMI, in particular pursuant to 17 U.S.C.§§ 1202 (c)(1), (c)(2) and (c)(3).

115.   By providing Epic's copyright notice in connection with its advertisements, Sullivan's provided and/or distributed false CMI to any person that accessed its infringing advertisements due to Epic's copyright notices being conveyed in connection with the Photographs, which were false because they erroneously communicated to the public that the use of the Photographs was authorized and that Epic was the author, owner, or authorized licensor of the Photographs, in particular because it is believed Epic's was the only copyright notice conveyed in connection with the Photographs by Sullivan's.

116.   **Summary of Sullivan's CMI Violations**. By itself or in concert with Epic, by failing to properly attribute the Photographs to PFP and by erroneously providing numerous copyright notices attributing the Photographs to Epic, Sullivan's intentionally removed and/or altered the Photographs' CMI, distributed CMI knowing that the CMI had been removed and/or altered without authority of PFP or the law, and distributed the Photographs or copies thereof knowing that the CMI had been removed and/or altered without authority of PFP or the law, knowing or having reasonable grounds to know that these acts would induce, enable, facilitate, or conceal its own or a third party's infringement.

117.   By itself or in concert with Epic, by providing Epic's copyright notice in connection with the Photographs, Sullivan's knowingly and with the intent to conceal its own or a third party's infringement provided false CMI and distributed false CMI.

**FIRST CLAIM FOR RELIEF**
**Direct Copyright Infringement, 17 U.S.C. § 101, *et seq.***
**All Defendants**

118.    Plaintiff Prepared Food Photos, Inc. incorporates by reference and realleges the allegations contained in Paragraphs 1-117, inclusive, as though fully set forth herein.

119.    The Photographs are original copyrightable works.

120.    PFP complied in all respects with 17 U.S.C. 101, *et seq.*, and secured the exclusive rights in and ownership of the Photographs and filed its registration of copyright in the Photographs with the U.S. Copyright Office in accordance with its rules and regulations.

121.    PFP is the owner of the Photographs' copyrights, including the aforementioned copyright registration certificates, as the corporate successor to the Adlife entities that are named on the certificates.

122.    By the actions alleged above, Defendants Epic and the Grocery Store Defendants have infringed upon PFP's copyright in the Photographs by reproduction, public display, and/or distribution of the same, without authorization, and PFP additionally believes that there may be more infringers whose identity may be determined during discovery.

123.    As alleged above, the actions of Epic and the Grocery Store Defendants was willful and knowing.

124.    As a direct and proximate result of the copyright infringement detailed herein, PFP has been and continues to be damaged in an amount unknown at the present and to be determined at trial.

125.    As a direct and proximate result of the copyright infringement detailed herein, Defendants Epic and the Grocery Store Defendants, and possibly more parties to be determined, have gained and/or will gain substantial profits as a result of their infringement in an amount presently unknown and to be determined at trial.

126.   PFP is entitled to recover its actual damages and any additional damages from the profits of Defendants Epic and the Grocery Store Defendants not calculated in the computation of its actual damages in an amount to be determined at trial, pursuant to 17 U.S.C. § 504.

127.   To the extent such infringement persists, PFP has no adequate remedy at law to protect its rights in the Photographs and to prevent all Defendants from continuing to infringe the Photographs, thereby causing continued injury to it, and will continue to suffer irreparable injury from all the Defendants' conduct as alleged.

128.   As a direct and proximate result of the copyright infringement detailed herein, PFP is entitled to permanent injunctive relief enjoining and restraining Defendants Epic and the Grocery Store Defendants, and any other infringer identified at a future date from infringing his copyright, pursuant to 17 U.S.C. § 502.

129.   PFP is also entitled, in the alternative to actual damages, to seek statutory damages of up to $150,000 per work pursuant to 17 U.S.C. § 504(c) and its costs, including its attorneys' fees, pursuant to 17 U.S.C. § 505.

**SECOND CLAIM FOR RELIEF**
**Contributory Copyright Infringement, 17 U.S.C. § 101, *et seq*.**
**Defendants Epic Solutions, LLC and Epic Cybernetics, LLC**

130.   Plaintiff Prepared Food Photos, Inc. incorporates by reference and realleges Paragraphs 1-129, inclusive, as though fully set forth herein.

131.   By the actions alleged above, all Defendants have directly infringed upon PFP's copyright in the Photographs by reproduction, public display, and/or distribution of the same without PFP's authorization.

132.   In particular, on information and belief, Epic directly distributed copies of the Photographs to the Grocery Store Defendants for the use of the unauthorized use of the Photographs by these entities.

133.   By its actions, there is no question Epic had knowledge of the use of the Photographs the Grocery Store Defendants, and induced, caused, and/or materially contributed to their infringing uses. By providing these Defendants with access to, and copies of, the Photographs, Epic provided them with the tools and support for their direct infringements of PFP's copyrights.

134.   As such, Epic is contributorily liable for the direct copyright infringements committed by the Grocery Store Defendants.

135.   As a direct and proximate result of the copyright infringement detailed herein, PFP has been and continues to be damaged in an amount unknown at present and to be determined at trial.

136.   As a direct and proximate result of the copyright infringement detailed herein, Epic has gained and/or will gain substantial profits as a result of their contributory infringement in an amount presently unknown and to be determined at trial.

137.   PFP is entitled to recover from Epic its actual damages and any additional profits resulting from all Defendants' direct infringements in an amount to be determined at trial, pursuant to 17 U.S.C. § 504.

138.   To the extent such infringement persists, PFP has no adequate remedy at law to protect its rights in the Photographs and to prevent Epic from continuing to contributorily infringe the Photographs, thereby causing continued injury to, and will continue to suffer irreparable injury from the conduct as alleged.

139.   As a direct and proximate result of the copyright infringement detailed herein, PFP is entitled to permanent injunctive relief enjoining and restraining Epic from infringing his copyright, pursuant to 17 U.S.C. § 502.

140.   PFP is also entitled, in the alternative to actual damages, and at its election, to seek statutory damages of up to $150,000 per work pursuant to 17 U.S.C. § 504(c) and its costs, including its attorneys' fees, pursuant to 17 U.S.C. § 505.

### THIRD CLAIM FOR RELIEF
### False Copyright Management Information
### Digital Millennium Copyright Act, 17 U.S.C. § 1202(a)
### All Defendants

141.   Plaintiff Prepared Food Photos, Inc. incorporates by reference and realleges the allegations contained in Paragraphs 1-140, inclusive, as though fully set forth herein.

142.   As set forth more fully in Paragraphs 72-77 above, by providing Epic's copyright notice in connection with the Photographs, Epic knowingly and with the intent to conceal its own or a third party's infringement provided false CMI and distributed false CMI.

143.   As set forth more fully in Paragraphs 77-117 above, by providing Epic's copyright notice in connection with the Photographs, the Grocery Store Defendants, by themselves or in concert with Epic, knowingly and with the intent to conceal its own or a third party's infringement provided false CMI and distributed false CMI.

144.   Based on the foregoing, Defendants Epic and the Grocery Store Defendants, are in violation of 17 U.S.C. § 1202(a)(1) with respect to each of the copies of the Photographs they used, in connection with each separate act of CMI falsification alleged with respect to each such Defendant.

145.   Based on the foregoing, Defendants Epic and the Grocery Store Defendants are in violation of 17 U.S.C. § 1202(a)(2) with respect to each of the copies of the Photographs they used, in connection with each separate act of CMI falsification alleged with respect to each such Defendant.

146.   PFP has suffered actual damages as a result of the acts complained of herein in an amount unknown at present and to be determined at trial.

147.   Defendants have gained profits that are attributable to the acts complained of herein in an amount unknown at present and to be determined at trial.

148.   PFP is entitled to recover from Defendants Epic and the Grocery Store Defendants its actual damages and any additional of their profits not taken into account in computing its actual damages, pursuant to 17 U.S.C. § 1203(c)(2).

149.   In the alternative, and at its election, Defendants Epic and the Grocery Store Defendants for each and every violation of 17 U.S.C. §§ 1202(a)(1) and (a)(2), the full extent of which is unknown to PFP at present and which will be proven at trial, but in any event includes at minimum the specific violations referenced above, statutory damages of up to $25,000, but not less than $2,500, per violation, pursuant to 17 U.S.C. § 1203(c)(3)(B).

150.   To the extent that the acts complained of herein persist, PFP is entitled to permanent injunctive relief to prevent or restrain further violations of 17 U.S.C.§ 1202(a), pursuant to 17 U.S.C. § 1203(b)(1).

151.   PFP is entitled to recover its costs from Defendants Epic and the Grocery Store Defendants pursuant to 17 U.S.C. § 1203(b)(4).

152.   PFP is further entitled to recover its attorneys' fees from Defendants Epic and the Grocery Store Defendants pursuant to 17 U.S.C. § 1203(b)(5).

**FOURTH CLAIM FOR RELIEF**
**Removal and/or Alteration of Copyright Management Information**
**Digital Millennium Copyright Act, 17 U.S.C. § 1202(b)**
**All Defendants**

153.   Plaintiff Prepared Food Photos, Inc. incorporates by reference and realleges the allegations contained in Paragraphs 1-152, inclusive, as though fully set forth herein.

154.   As set forth more fully in Paragraphs 72-77 above, by failing to properly attribute the Photographs to PFP and by erroneously providing numerous copyright notices attributing the Photographs to Epic, Epic intentionally removed and/or altered the Photographs' CMI, distributed CMI knowing that the CMI had been removed and/or altered without authority of PFP or the law, and distributed the Photographs or copies thereof knowing that the CMI had been removed and/or altered without authority of PFP or the law, knowing or having reasonable grounds to know that these acts would induce, enable, facilitate, or conceal its own or a third party's infringement.

155.   As set forth more fully in Paragraphs 77-117 above, by themselves or in concert with Epic, by failing to properly attribute the Photographs to PFP and by erroneously providing numerous copyright notices attributing the Photographs to Epic, the Grocery Store Defendants intentionally removed and/or altered the Photographs' CMI, distributed CMI knowing that the CMI had been removed and/or altered without authority of PFP or the law, and distributed the Photographs or copies thereof knowing that the CMI had been removed and/or altered without authority of PFP or the law, knowing or having reasonable grounds to know that these acts would induce, enable, facilitate, or conceal its own or a third party's infringement.

156.   Based on the foregoing, Defendants Epic and the Grocery Store Defendants, are in violation of 17 U.S.C. § 1202(b)(1) with respect to each of the copies of the Photographs they used, in connection with each separate act of CMI falsification alleged with respect to each such Defendant.

157.   Based on the foregoing, Defendants Epic and the Grocery Store Defendants are in violation of 17 U.S.C. § 1202(b)(2) with respect to each of the copies of the Photographs they used, in connection with each separate act of CMI falsification alleged with respect to each such Defendant.

158.   Based on the foregoing, Defendants Epic and the Grocery Store Defendants are in violation of 17 U.S.C. § 1202(b)(3) with respect to each of the copies of the Photographs they used, in connection with each separate act of CMI falsification alleged with respect to each such Defendant.

159.   PFP has suffered actual damages as a result of the acts complained of herein in an amount unknown at present and to be determined at trial.

160.   Defendants have gained profits that are attributable to the acts complained of herein in an amount unknown at present and to be determined at trial.

161.   PFP is entitled to recover from Defendants Epic and/or the Grocery Store Defendants its actual damages and any additional of their profits not taken into account in computing its actual damages, pursuant to 17 U.S.C. § 1203(c)(2).

162.   In the alternative, and at its election, PFP is entitled to recover from Defendants Epic and/or the Grocery Store Defendants, for each and every violation of 17 U.S.C. § 1202(b), the extent of which is unknown at present and which will be proven at trial, statutory damages of up to $25,000 per violation, pursuant to 17 U.S.C. § 1203(c)(3)(B).

163.   To the extent that the acts complained of herein persist, PFP is entitled to temporary and permanent injunctive relief to prevent or restrain further violations of 17 U.S.C. § 1202(b), pursuant to 17 U.S.C. § 1203(b)(1).

164.   PFP is entitled to recover its costs from Defendants Epic and/or the Grocery Store Defendants pursuant to 17 U.S.C. § 1203(b)(4).

165.   PFP is further entitled to recover its attorneys' fees from Defendants Epic and/or the Grocery Store Defendants pursuant to 17 U.S.C. § 1203(b)(5).

## FIFTH CLAIM FOR RELIEF
### False Designation of Origin
### The Lanham Act, 15 U.S.C. § 1125(a)(1)(A)
### Defendants Epic Solutions, LLC and Epic Cybernetics, LLC

166.   Plaintiff Prepared Food Photos, Inc. incorporates by reference and realleges the allegations contained in Paragraphs 1-165, inclusive, as if set forth herein.

167.   PFP is the owner of the Photographs and of all rights in the Photographs.

168.   PFP is a licensor of photographs of prepared food items, including the Photographs at issue here, to be used by third parties, including grocery stores, on the Internet and in print, such as the Grocery Store Defendants in this case.

169.   Defendant Epic knew that PFP was the author of the Photographs and that at the time of its transactions with the Grocery Store Defendants, that PFP was the owner of the registered copyrights in the Photographs, and therefore that at that time PFP was the exclusive owner and licensor of the Photographs.

170.   Defendant Epic is a competitor of PFP, as it apparently provides similar services to grocery stores and their advertising and marketing needs as does PFP.

171.   Even though it knew of the copyright status of the Photographs and that PFP is the exclusive licensor of the same, Epic offered copies of the Photographs for licensing, thereby competing directly with PFP with respect to the licensing of the Photographs.

172.   By falsely holding itself out as a licensor of the Photographs, Epic has falsely represented to the public the source of the Photographs by attributing to itself the ownership and the right to administer the licensing of the Photographs.

173.   The actions complained of herein are likely to cause confusion or mistake, or to deceive the public as to the affiliation, connection or association of Epic with PFP and the Photographs.

174.   The actions complained of herein are further likely to cause confusion or mistake, or to deceive the public as to the origin or sponsorship of the Photographs or the approval of the use of the Photographs.

175.   Epic inserted the Photographs into the stream of commerce by distributing and purportedly licensing the Photographs to numerous Grocery Store Defendants, for the purpose of commercial gain.

176.   The conduct of Epic was willful and deliberate.

177.   PFP has suffered monetary damages because PFP sells and licenses the Photographs for the exact type of use employed by the Grocery Store Defendants' publications, and by its acts Epic usurped PFP's licensing market with respect to these grocery stores.

178.   As a direct and proximate result of the misleading and deceptive conduct of Epic, PFP has been, and continues to be, damaged in an amount unknown at present and to be determined at trial.

179.   As a direct and proximate result of the misleading and deceptive conduct of Epic, Epic has gained and/or will gain substantial profits in an amount presently unknown and to be determined at trial.

180.   The conduct complained of herein constitutes an exceptional case, in particular due to the willful conduct of Epic.

181.   PFP is entitled to recover from Epic its actual damages, the profits gained by Epic, and PFP's costs of this action, including attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

**SIXTH CLAIM FOR RELIEF**
**False Advertising**
**The Lanham Act, 15 U.S.C. § 1125(a)(1)(B)**
**Defendants Epic Solutions, LLC and Epic Cybernetics, LLC**

182.   Plaintiff Prepared Food Photos, Inc. incorporates by reference and realleges the allegations contained in Paragraphs 1-181, inclusive, as though fully set forth herein.

183.   PFP is the exclusive owner of the Photographs and holds all rights in the Photographs.

184.    PFP a prolific and well-known professional photography company known for pro-
ducing high quality images.

185.    PFP is a licensor of photographs, including the Photographs at issue here, to be used
by third parties, including grocery stores, on the Internet and in print, such as the
Grocery Store Defendants in this case.

186.    Defendant Epic is a competitor of PFP, as it apparently provides similar services to
grocery stores and their advertising and marketing needs as does PFP.

187.    Defendant Epic knew that at the time of its transaction with the Grocery Store De-
fendants that PFP was the owner of the Photographs and that at that time, and there-
fore that at that time PFP was the exclusive licensor of the Photographs.

188.    Defendant Epic offered copies of the Photographs for licensing, thereby competing
directly with PFP with respect to the licensing of the Photographs.

189.    In doing so, Epic has therefore made misrepresentations to the Defendants to whom
it distributed the Photographs, and presumably to other third parties according to
facts not yet known to PFP and to be revealed in discovery, the nature, quality, and
characteristics of the Photographs in connection with the commercial advertising
and promotion of the Photographs for license to the public. That is particularly so
because while PFP has spent decades building goodwill in the photographic licensing
marketplace as the licensor of high quality and sought after visual artworks, Epic
has not; Epic in no way specializes in the production of high quality images of food
items that PFP does. As such, by virtue of misrepresenting the source of the Photo-
graphs, Epic has not only created confusion in the marketplace as to the authorized
licensor of the Photographs, Epic has also misrepresented the nature, quality, and
characteristics of the Photographs by attributing the source of the Photographs to a
source (*i.e.*, Epic) that is not known in the marketplace as a source of high quality
food item visual artworks.

190. Defendant Epic has inserted the Photographs into the stream of commerce by distributing and purportedly licensing the Photographs to the public for commercial gain.

191. The conduct of Epic was willful and deliberate.

192. PFP has suffered monetary damages because it licenses the Photographs for the precise type of use employed by the Defendants, and by its acts Epic usurped that market.

193. As a direct and proximate result of the misleading and deceptive conduct of Epic, PFP has been, and continues to be, damaged in an amount unknown at present and to be determined at trial.

194. As a direct and proximate result of the misleading and deceptive conduct of Epic, Epic has gained and/or will gain substantial profits in an amount presently unknown and to be determined at trial.

195. The conduct complained of herein constitutes an exceptional case, in particular because of the willful conduct of Epic.

196. PFP is entitled to recover from Epic its actual damages, the profits gained by Epic, and PFP's costs of this action, including attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

**SEVENTH CLAIM FOR RELIEF**
**Unfair or Deceptive Acts**
**Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. § 51:1401, *et seq.***
**Defendants Epic Solutions, LLC and Epic Cybernetics, LLC**

197. Plaintiff Prepared Food Photos, Inc. incorporates by reference and realleges the allegations contained in Paragraphs 1-196, inclusive, as though fully set forth herein

198. PFP is the owner of the Photographs, and all rights in the Photographs are owned exclusively by PFP.

199. PFP is a prolific and well-known professional photography company known for producing high quality images.

200. PFP is a licensor of photographs, including the Photographs at issue here, to be used by third parties, including grocery stores, on the Internet and in print, like the Grocery Store Defendants in this case.

201. Defendant Epic knew that PFP was the author of the Photographs and that at the time of its transactions with the Grocery Store Defendants, that PFP was the owner of the registered copyrights in the Photographs, and therefore that at that time PFP was the exclusive owner and licensor of the Photographs.

202. Defendant Epic is a competitor of PFP, as it apparently provides similar services to grocery stores and their advertising and marketing needs as does PFP.

203. Even though it knew of the copyright status of the Photographs and that PFP is the exclusive licensor of the same, Epic offered copies of the Photographs for licensing, thereby competing directly with PFP with respect to the licensing of the Photographs.

204. By falsely holding itself out as a licensor of the Photographs, Epic has made a misrepresentation to the general public as to the source of the Photographs by attributing to itself the ownership and the right to administer the licensing of the Photographs.

205. In doing so, Epic has therefore made misrepresentations to the Defendants to whom it distributed the Photographs, and presumably to other third parties according to facts not yet known to PFP and to be revealed in discovery, the nature, quality, and characteristics of the Photographs in connection with the commercial advertising and promotion of the Photographs for license to the public. That is particularly so because while PFP has spent decades building goodwill in the photographic licensing marketplace as the licensor of high quality and sought after visual artworks, Epic has not; Epic in no way specializes in the high quality images of food items that PFP does. As such, by virtue of misrepresenting the source of the Photographs, Epic has not only created confusion in the marketplace as to the authorized licensor of the Photographs, Epic has also misrepresented the nature, quality, and characteristics of

the Photographs by attributing the source of the Photographs to a source (*i.e.*, Epic) that is not known in the marketplace as a source of high quality visual artworks.

206.   The actions complained of herein are likely to cause confusion or mistake, or to deceive the public as to the affiliation, connection or association of Epic with PFP and the Photographs.

207.   The actions complained of herein are further likely to cause confusion or mistake, or to deceive the public as to the origin or sponsorship of the Photographs or the approval of the use of the Photographs.

208.   Epic inserted the Photographs into the stream of commerce by distributing and purportedly licensing the Photographs to numerous publications, for the purpose of commercial gain.

209.   The conduct of Epic was willful and deliberate.

210.   PFP has suffered monetary damages because PFP sells and licenses the Photographs for the exact type of use employed by the Grocery Store Defendants' publications, and by its acts Epic usurped PFP's licensing market.

211.   As a direct and proximate result of the unscrupulous, unethical, and deceptive conduct of Epic, PFP has been, and continues to be, damaged in an amount unknown at present and to be determined at trial.

212.   As a direct and proximate result of unscrupulous, unethical, and deceptive conduct of Epic, Epic has gained and/or will gain substantial profits in an amount presently unknown and to be determined at trial.

213.   PFP is entitled to injunctive relief and to recover from Epic its actual damages, treble damages, PFP's costs of this action, and PFP's attorneys' fees, pursuant to Louisiana law.

## Prayer for Relief

WHEREFORE, Plaintiff PFP prays for judgment in its favor and against the Defendants as follows:

(a)    For a permanent injunction enjoining all Defendants, their respective members, officers, principals, shareholders, agents, servants, employees, attorneys, successors, and assigns; their divisions, such divisions' respective members, officers, principals, shareholders, agents, servants, employees, attorneys, successors, and assigns; and those in privity with or in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise from any further acts of direct and/or indirect copyright infringement, any acts in violation of the rights accorded to Plaintiff PFP under 17 U.S.C. § 1202, false designation of origin, false advertising, and unfair trade practices;

(b)    For an award of monetary damages in an amount to be proven at trial;

(c)    For treble damages pursuant to the LUTPA;

(d)    For costs of this lawsuit;

(e)    For its attorneys' fees;

(f)    For interest as allowed by law; and

(g)    For such other relief as the Court deems just and proper.

**Jury Trial Demand**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and Local Civil Rule 38.1, Plaintiff Prepared Food Photos, Inc. hereby demands a trial by jury for all issues so triable in this case.

Respectfully submitted,

*/s/ Andrew T. Lilly*

**Andrew T. Lilly (La. 32559)**
Lilly PLLC
4907 Magazine Street
New Orleans, Louisiana 70115
t: (504) 812-6388
e: andrew@atlpllc.com

                    and

**David Leichtman (N.Y. 2824480)**[2]
dleichtman@leichtmanlaw.com
Leichtman Law PLLC
228 East 45th Street, Suite 605
New York, NY 10017
t: (212) 419-5210

*Attorneys for plaintiff*
        *Prepared Food Photos, Inc.*

---

[2] *Pro hac vice* application forthcoming.