UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**PREPARED FOOD PHOTOS INC**            **CASE NO.  3:22-CV-00037**

**VERSUS**                              **JUDGE TERRY A. DOUGHTY**

**EPIC SOLUTIONS L L C ET AL**          **MAG. JUDGE KAYLA D. MCCLUSKY**

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss Epic Cybernetics, LLC for lack of personal jurisdiction [doc. #39], filed by Defendants Epic Solutions, LLC and Epic Cybernetics, LLC.  The motion is opposed.  For reasons that follow, it is recommended that the motion to dismiss Epic Cybernetics, LLC for lack of personal jurisdiction be GRANTED.

**Background**

On January 5, 2022, Plaintiff Prepared Food Photos, Inc. ("Plaintiff") filed the instant suit for direct copyright infringement, distribution of false copyright management information, the alteration, removal, and falsification of copyright management information, and false designation of origin, false advertising, and unfair trade practices, pursuant to the Louisiana Unfair Trade Practices Act ("LUTPA"), against Defendants Epic Solutions, LLC; Epic Cybernetics, LLC; Adrien's Supermarket, Inc.; McDaniel Food Management, Inc.; McLawrence Foods, LLC; McDaniel Foods of Alexandria, Inc.; McDaniel Foods of Drew, LLC; McLawrence Foods of Swartz, Inc.; McLawrence Foods of Oak Grove, LLC; McLawrence Foods of Columbia, LLC; McLawrence Foods of W. Monroe, LLC; Piggly Wiggly South Opelousas, LLC; Sullivan's Grocery LA#2 Inc.; Sullivan's Inc. Grocery; and John Does 1-100.  [doc #1].

Plaintiff is an advertising and marketing company that specializes in creating original photographic works of food items for use in the food industry. *Id.* at pg. 8. Its business relies on licensing the photographs to third parties for use in advertisements, packaging, and product labels. *Id.* It does so by allowing customers to download copies of its copyrighted photographs from their library by purchasing a monthly subscription plan. *Id.*

Until March 1, 2017, Plaintiff had a contract (the "Agreement") with Multi-Ad,[1] a marketing organization that provided online photo libraries to its clients. *Id.* at 10. Under the agreement, Multi-Ad and its customers had access to Plaintiff's photo library for use in marketing materials. *Id.*

Plaintiff alleges that Defendant Epic Solutions, LLC ("Epic Solutions"),[2] a marketing company that provides print and advertising services to grocery stores, was a customer of Multi-Ad and obtained copies of Plaintiff's photographs through Multi-Ad's service. *Id.* at 11. [doc #28, p. 3]. According to Plaintiff, Epic Solutions subsequently provided those photographs to its clients, the Grocery Store Defendants,[3] for their use in marketing materials. *Id.*

Plaintiff claims that its agreement with Multi-Ad terminated on March 1, 2017, thus ending the right of Multi-Ad to provide Plaintiff's photographs to its customers, including Epic Solutions,

---

[1] Plaintiff's contract was with LSA Creative Outlet, doing business as Multi-Ad Ad-Builder or "Multi-Ad."

[2] Plaintiff alleges that Epic Solutions and Epic Cybernetics, LLC operate in concert. Compl. ¶ 5. [doc #1].

[3] The Grocery Store Defendants are Adrien's Supermarket, Inc.; McDaniel Food Management, Inc.; McLawrence Foods, LLC; McDaniel Foods of Alexandria, Inc.; McDaniel Foods of Drew, LLC; McLawrence Foods of Swartz, Inc.; McLawrence Foods of Oak Grove, LLC; McLawrence Foods of Columbia, LLC; McLawrence Foods of W. Monroe, LLC; Piggly Wiggly South Opelousas, LLC; Sullivan's Grocery LA#2 Inc.; Sullivan's Inc. Grocery; and John Does 1-100.

and, therefore, the Grocery Store Defendants. [doc. 1, p. 11]. Plaintiff further alleges that prior to March 1, 2017, Multi-Ad notified its customers, including Epic Solutions, that the Agreement with Plaintiff would be terminated and that none of its customers would be permitted to use Plaintiff's photographs as of March 1, 2017. *Id.* Epic Solutions, in turn, allegedly notified the Grocery Store Defendants that the Agreement was terminated and that they were no longer permitted to use Plaintiff's photographs as of March 1, 2017. *Id.*

Plaintiff claims that Epic Solutions and the Grocery Store Defendants continued to use its copyrighted photos after the Agreement was terminated. *Id.* In July of 2020, Plaintiff says it notified Epic Solutions as to the alleged infringements related to its photographs. *Id.* at 12. Plaintiff and Epic Solutions subsequently engaged in discussions towards a resolution but failed to reach an agreement at that time. *Id.* Plaintiff says it attempted to reengage discussions with Epic Solutions in the fall of 2021, to no avail. *Id.* at 15.

Plaintiff subsequently filed the instant action on January 5, 2022. [doc #1]. Plaintiff seeks a permanent injunction enjoining all Defendants from any acts of direct or indirect copyright infringement, any acts in violation of its rights under 17 U.S.C. § 1202, false designation of origin, false advertising, and unfair trade practices. *Id.* at p. 40. Plaintiff also seeks an award of monetary damages, treble damages pursuant to the LUTPA, costs of the lawsuit, attorneys' fees, and interest. *Id.*

On June 1, 2022, Defendants Epic Solutions and Epic Cybernetics, LLC ("Epic Cybernetics") filed the instant motion to dismiss Epic Cybernetics for lack of personal jurisdiction

3

pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[4]  [doc. #39].  Plaintiff filed its opposition to the motion to dismiss on June 22, 2022.  [doc. #45].  Defendants filed their reply on June 29, 2022.  [doc. #46].  Accordingly, the matter is ripe.

## Personal Jurisdiction

### I. General Principles

When a defendant timely questions a federal district court's *in personam* jurisdiction, the plaintiff has the burden of proving that the court has jurisdiction over the defendant.  *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831–32 (5th Cir. 1986), *on reh'g in part*, 836 F.2d 850 (5th Cir. 1988) (citations omitted); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018) (citation omitted) (plaintiff's burden to establish personal jurisdiction).

If the court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, then plaintiff only need make a prima facie showing of the jurisdictional facts.  *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).  In assessing whether plaintiff has made a prima facie showing, the court "must accept as true [the plaintiff's] uncontroverted allegations, and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation."  *Id*.  (citation and internal quotation marks omitted).[5]  However, the court need not credit plaintiff's conclusory

---

[4] Defendants Epic Solutions and Epic Cybernetics originally filed a motion to dismiss for lack of personal jurisdiction on May 27, 2022.  The motion was deficient and was modified as the instant motion on June 1, 2022.  [doc. #37].

[5]  Of course, even if the plaintiff were to defeat a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, then the plaintiff still must prove the jurisdictional facts at trial by a preponderance of the evidence.  *Travelers Indem. Co., supra*.

allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (citations omitted).

A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant as long as (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state does not transgress due process protections under the United States Constitution. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Louisiana's long-arm statute extends jurisdiction to the full limits of the United States Constitution. *See* La. R.S. § 13:3201(B); LA. CODE CIV. P. ART. 6(B). Therefore, the sole inquiry is whether exercising *in personam* jurisdiction over the defendant comports with federal due process. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (citation omitted).

For personal jurisdiction to satisfy due process requirements, the plaintiff must establish that the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923; 131 S.Ct. 2846, 2853 (2011) ("*Goodyear*") (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316; 66 S.Ct. 154 (1945)). In the years following its landmark decision in *International Shoe*, the Supreme Court has "differentiated between *general* or all-purpose jurisdiction, and *specific* or case-linked jurisdiction." *Goodyear, supra*; *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, ___ U.S. ___, 137 S.Ct. 1773, 1780 (2017) (emphasis added).

In this case, Plaintiff contends that the Court "most likely" has general jurisdiction, but even if the more exacting specific jurisdiction standard applies, Plaintiff argues that it still has

5

made the necessary prima facie showing. [doc. #45, p. 6]. The Court will address general and specific jurisdiction, separately.

## II. General Jurisdiction

a) <u>Law</u>

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, __ U.S. __, 137 S.Ct. 1549, 1558 (2017) ("BNSF") (citations omitted).[6] The "paradigm" forums where a corporate defendant is considered "at home," are the corporation's *place of incorporation* and its *principal place of business*. *Id*. (citing *inter alia*, *Daimler AG v. Bauman*, 571 U.S. 117, 137; 134 S.Ct. 746, 760 (2014) (emphasis added)). Further, in an "exceptional case, a corporate defendant's operations in another forum may be so substantial and of such a nature as to render the corporation at home in that State." *BNSF, supra* (citations and internal quotation marks omitted).

In *Daimler*, although the Supreme Court discussed where *corporations* could be deemed "at home" for purposes of general jurisdiction, one of the entities at issue in that case was a *limited liability company* ("LLC") -- Mercedes-Benz USA, L.L.C. ("MBUSA"). *Daimler, supra*. Nevertheless, the Supreme Court did not distinguish between these different entities. In fact, the Court ultimately concluded that it could not exercise general jurisdiction over Daimler because "neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there." *Daimler*, 134 S.Ct. at 761-62.

---

[6] "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . ." *Goodyear,* 564 U.S. at 924; 131 S.Ct. at 2853–54 (citation omitted).

Citing *Daimler*, other district courts have determined that LLCs may be considered "at home" for purposes of general jurisdiction in the states where they were organized and where they have their principal place of business. *See Duncanson v. Wine & Canvas IP Holdings LLC*, Civ. Action No. 16-0788, 2017 WL 6994541, at *4 (S.D. Ind. Apr. 20, 2017); *Miller v. Native Link Constr., LLC*, No. 15-1605, 2017 WL 3536175, at *30 (W.D. Pa. Aug. 17, 2017); *Blocker v. Black Entm't Television, LLC*, Civ. Action No. 17-1406, 2018 WL 3797568, at *6 (D. Or. June 26, 2018), *R&R* a*dopted*, 2018 WL 3795219 (D. Or. Aug. 8, 2018); *Garcia Hamilton & Associates, L.P. v. RBC Capital Markets, LLC*, 466 F.Supp.3d 692, 699 n5 (S.D. Tex. 2020).

Furthermore, in *Frank v. P N K (Lake Charles) L.L.C.*, the Fifth Circuit observed that

> neither the Supreme Court nor a sister circuit has directly addressed whether the type of artificial entity, *e.g.*, partnership or limited liability company, affects the "at home" analysis. Our circuit and several in-circuit district courts have applied the "at home" test to entities other than corporations, albeit without analyzing whether the entity type changes the outcome.
>
> Here, we are examining the corporate structure of a limited liability company whose physical corporate operations are domiciled in Louisiana. The rationale behind this test is to rely on a business's domicile or place of principal business as a guidepost in ascertaining where the business is "at home." Considering this premise, the entity type is not germane to this jurisdictional analysis; *instead it is the company's domicile that merits attention*.

*Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 338 n10 (5th Cir.2020) (emphasis added) (internal citations omitted). The Fifth Circuit traditionally has recognized that a corporation's domicile is determined by the place where it was organized, "which may bear no relation to the location of the company's business operations or its decision-making activities." *S. D'Antoni, Inc. v. Great Atl. & Pac. Tea Co., Inc.*, 496 F.2d 1378, 1383 (5th Cir.1974); *Simms Oil Co. v. Wolfe*, 6 F.2d 504, 506 (5th Cir.1925) ("a corporation's domicile is in the state where it was chartered . . .").

Once the court finds that a defendant has "continuous and systematic" contacts with the

7

forum such that the party may be considered "at home" in that state, case law suggests that the court also must find that the exercise of jurisdiction in the forum state would not transgress "traditional notions of fair play and substantial justice." *See, e.g.*, *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 615 (5th Cir. 2008). More recently, however, the Supreme Court clarified that the multi-consideration reasonableness check applied in *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cty*, 480 U.S. 102, 113; 107 S.Ct. 1026, 1033 (1987), was limited to personal jurisdiction on the basis of specific jurisdiction, and did not apply in the context of general jurisdiction. *Daimler*, 571 U.S. at 139 n20; 134 S.Ct. at 762. Indeed, if a corporate entity is "at home" in the forum state, then the second-step inquiry regarding the reasonableness of exercising jurisdiction in that forum is superfluous. *Id.*

    b) <u>Analysis</u>

Plaintiff's only contention regarding general jurisdiction is that is "most likely lies here." [doc. #45, p. 6]. Defendants, in turn, argue that because the suit arises out of or is related to Epic Cybernetics' alleged contacts with Louisiana, the only issue in the case is where specific jurisdiction exists. [doc #39, p. 7].

The parties do not dispute that Epic Cybernetics was not formed in Louisiana nor is its principal place of business in Louisiana. [doc. #39, p. 2; doc #1, p. 2]. Epic Cybernetics is not licensed to do business in Louisiana, nor does it conduct or solicit business in the State. Thus, the only inquiry for the Court into general jurisdiction is whether Epic Cybernetics has "continuous and systematic" contacts with Louisiana, such that it would be considered at home in the State. The only contacts that Plaintiff alleges Epic Cybernetics has with Louisiana are its logo's

appearance on a copyright notice on two of the Grocery Store Defendants' websites.[7] Such minimal contacts are not sufficient to find that Epic Cybernetics's contacts with Louisiana are "continuous and systematic." Accordingly, the undersigned finds that the Court does not have general jurisdiction.

## III. Specific Jurisdiction

a) Law

"Specific" jurisdiction exists when the "plaintiff's cause of action . . . arises out of or results from the defendant's forum-related contacts." *Willow Bend, L.L.C. v. Downtown ABQ Partners, L.L.C.*, 612 F.3d 390, 392 (5th Cir. 2010). Stated differently, "[s]pecific or case-linked jurisdiction depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115, 1125, n.6 (2014) (quoted source and internal quotation marks omitted). Specific jurisdiction is a claim-specific inquiry. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Def. Distributed v. Grewal,* 971 F.3d 485, 490 (5th Cir.2020) (quoting *Seiferth*, 472 F.3d

---

[7] Plaintiff alleges that Epic Cybernetics's logo and copyright notice appeared on Mac's Fresh Market and Sullivan's Grocery's respective websites. Compl. Exh. D, F [doc #1]. Both grocery stores are located in Louisiana. *Id.*

at 271). If the plaintiff can successfully establish the first two prongs, then the burden shifts to defendant to show that exercising jurisdiction would prove unfair or unreasonable. *Id.*

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden, supra*. The court must look to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id.* (citation omitted). In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden, supra* (citation omitted).

b) Facts

Epic Cybernetics formed on April 22, 2020, with a principal office located in Tennessee. [doc. #39, p. 4]. Steve Barnes—who serves as CEO of both Epic Cybernetics and Epic Solutions—created the company to develop software and programming to compliment his other businesses. *Id.* Since its creation, Epic Cybernetics has maintained a "dormancy/non-operational status." [doc. #46-1, Exh. C, ¶ 14]. Defendants allege that Epic Cybernetics remains in the infancy stage of development and is inactive. *Id.* It owns no assets, has no employees, has no contracts with the Grocery Store Defendants or any other business, and conducts no business in Louisiana or anywhere else. [doc. #39-3, Exh. B]; [doc. # 46-1, Exh. C]; [doc. #39, p. 4].

Notwithstanding its dormancy, the parties agree that Epic Cybernetics's name and logo appeared on a copyright notice on two of the Grocery Store Defendants' respective websites where

10

the alleged copyright infringement took place.[8] Plaintiff points to the copyright notice as evidence that Epic Cybernetics does business with those Grocery Store Defendants, and thus committed acts of infringement than can be adjudicated in Louisiana. [doc. #45, p. 3]. Defendants, however, maintain that the copyright notice appeared by mistake. [doc. #39, pp. 9-10]. According to Mr. Barnes, an employee of Epic Solutions mistakenly created a logo attributing copyright of the two Grocery Store Defendants' websites to Epic Cybernetics. [doc. #39-3, Decl. of Steve Barnes, ¶ 18-21, Exh. B]. Mr. Barnes maintains that the copyright notices should have contained a logo for Epic Solutions—not Epic Cybernetics. *Id.*

    c) <u>Analysis</u>

        a. *Minimum Contacts*

In response to Defendants' motion to dismiss, Plaintiff primarily argues that because Epic Cybernetics name and logo appeared on two of the Grocery Store Defendants' websites, that alone is sufficient to establish Epic Cybernetics's minimum contacts with this forum derived from Epic Cybernetics' alleged business with the Grocery Store Defendants in marketing and advertising using Plaintiff's copyrighted photographs in Louisiana. Thus, Plaintiff argues that Epic Cybernetics purposefully availed itself of Louisiana's laws by "benefit[ting] from the business of Louisiana clients." [doc .#45, p. 8].

Defendants, on the other hand, argue that there is no identifiable, purposeful act by which Epic Cybernetics availed itself of the forum state. [doc. #39, p. 8]. According to Barnes' declaration, Epic Cybernetics has no clients and no employees—and therefore no ability to

---

[8] The notice "© 2021 Epic Cybernetics LLC" appeared on websites for Mac's Fresh Market and Sullivan's Grocery around February of 2021. [doc. #1, Exh. D, at 2; Compl. Exh. F, at 2]. Plaintiff alleges that there are at least 113 infringing uses of its photographs on Mac's Fresh Market's website and another 11 infringing uses on Sullivan's Grocery's website. [doc. #45, p. 3].

11

purposefully avail itself of the benefits and protections of operating in Louisiana. [doc. #39, Decl. of Steve Barnes, ¶ 18-21, Exh. B]. The logo attributing copyright to Epic Cybernetics, Defendants contend, was a mistake made by an employee of Epic Solutions and should not be considered as Epic Cybernetics's act. *Id.*

The fact that Epic Cybernetics' logo and copyright notice appeared on two Grocery Store Defendants' websites is insufficient to show that Epic Cybernetics has minimum contacts with the forum state by purposeful availment or by purposefully directing its activities here. In *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 194 (5th Cir. 2019), the Fifth Circuit held that "'beyond the minimum requirement that the defendant have minimum contacts . . . with the forum,' we recognize[] the 'additional element that in every case . . . there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" (quoting *Elhart v. Engineering Corp. v. Dornier Werke*, 343 F.2d 861 (5th Cir. 1965)). Thus, "a defendant's contacts with a forum and the purposefulness of those contacts are distinct . . . inquiries." *Id.* at 196. Both are necessary for a court to exert specific jurisdiction. *See id.*

In this case, any contact that Epic Cybernetics had with Louisiana was not purposeful. It was an employee of Epic Solutions—not Epic Cybernetics—that placed Epic Cybernetics' logo and copyright notice on the Grocery Store Defendants' websites. The Fifth Circuit has held that "the unilateral activity of another party of third person" other than the defendant cannot be a basis for personal jurisdiction. *McFadin v. Gerber*, 587 F.3d 653, 759 (5th Cir. 2009).

Further, Plaintiff does not contravene Defendants' affidavits showing that Epic Cybernetics is dormant and has performed no acts in Louisiana or anywhere else. *Agape Broads. Inc. v. Est. of Sampson through Matrix*, 489 F. Supp. 550, 555 (W.D. La. 2020) ("if the defendant

12

controverts factual allegations in the complaint with affidavits or other evidence, the plaintiff cannot rest solely on the controverted allegations in the complaint but must counter the defendant's evidence with affidavits or other evidence"). Accordingly, Plaintiff failed to establish a prima facie showing that Epic Cybernetics has minimum contacts with the forum state by purposely directing its activities toward the forum state or purposefully availing itself of the privileges of conducting activities in Louisiana.

Because the undersigned finds that Epic Cybernetics lacks minimum contacts with the forum state, the Court need not reach the issues of whether Plaintiff's cause of action arises out of or results from Epic Cybernetics forum related contacts and whether the exercise of personal jurisdiction is fair and reasonable.

### b. Alter Ego Liability

Defendants also argue that because Epic Solutions and Epic Cybernetics are distinct entities, Epic Solutions' contacts with Louisiana cannot be attributed to Epic Cybernetics. [doc. #39, p. 11]. The undersigned agrees.

"As a general rule . . . the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *Freudensprung*, 379 F.3d at 346 (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335 (1925)). This "presumption of corporate separateness" for jurisdictional purposes may be overcome by clear evidence. *Diece-Lisa Indus., Inc. v. Disney Enterps. Inc.*, 943 F.3d 239, 251 (5th Cir. 2019).

To overcome the presumption, the plaintiff must provide clear evidence showing "something beyond" the mere existence of a corporate relationship. . . . *Id.* The factors that guide the court's inquiry include "'(1) the amount of stock owned by the parent of the subsidiary; (2)

13

whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities.'" *Id.* (quoting *Freudensprung*, 379 F.3d at 346). The maintenance of corporate formalities and separateness weighs against finding that the entities are alter egos, even when other factors support an alter ego relationship. *Id.* (citing *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 588 (5th Cir. 2010)).

Here, Plaintiff fails to provide clear evidence of something beyond the mere existence of a relationship between Epic Solutions and Epic Cybernetics. Plaintiff argues that Mr. Barnes's declaration goes "a long way towards proving" alter ego liability, suggesting common stock ownership, common officers, inadequate capitalization, and common operations. [doc. #45, p. 9]. Mr. Barnes, however, swore that Epic Cybernetics has no assets, no bank accounts, no employees, no contracts, and no business. [doc. #39, Decl. of Steve Barnes, ¶ 9-16, Exh. B]. Plaintiff fails to offer any other evidence of alter ego liability, apart from the conclusory allegation that Epic Solutions and Epic Cybernetics act in concert. [doc. #1, ¶ 5; doc. #45, p. 2]. Once again, Plaintiff cannot rest solely on the controverted allegations in the complaint but must counter the defendant's evidence with affidavits or other evidence. *Agape Broads. Inc.*, 489 F. Supp. at 555. While Epic Solutions and Epic Cybernetics are both owned by Mr. Barnes, Plaintiff provides no evidence showing any further ties between the entities.

Plaintiff also attacks the credibility of Steve Barnes affidavit as "post-hoc, non-contemporaneous, self-serving testimony . . . ." Plaintiff, however, offers no evidence to contravene Barnes' affidavit. While factual disputes between Plaintiff and Defendant are to be resolved in favor of Plaintiff, *Luv n'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006),

14

the Court need not credit Plaintiff's conclusory allegations. *Panda Brandywine Corp.*, 253 F.3d at 869.

Accordingly, the undersigned finds that the evidence is insufficient to overcome the presumption that Epic Cybernetics is operating as a separate entity and not as the alter ego of Epic Solutions.

The undersigned would note that Plaintiff has not requested jurisdictional discovery in this case. Further, if Plaintiff uncovers during discovery facts sufficient to support personal jurisdiction over Epic Cybernetics, then it may seek reconsideration of the Court's dismissal of Epic Cybernetics, together with a proposed amended complaint.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that Defendants' motion to dismiss for lack of personal jurisdiction [doc. #39] be GRANTED, and that Plaintiff's claims against Defendant, Epic Cybernetics, be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14)** days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL**

**BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 29th day of August, 2022.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE