UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| Prepared Food Photos, Inc., | Civil Action No. 22-cv-00037 |
| *plaintiff,* | District Judge Terry A. Doughty |
| versus | Magistrate Judge Kayla D. McClusky |
| Epic Solutions, LLC, et al., | **Jury Trial Demanded** |
| *defendants.* | |

**Memorandum in Support of
Motion for Rule 37(b) Sanctions**

**Andrew T. Lilly (La. 32559)**
Lilly PLLC
4907 Magazine Street
New Orleans, Louisiana 70115
t: (504) 812-6388
e: andrew@atlpllc.com

**and**

**David Leichtman (N.Y. 2824480)[1]**
e: dleichtman@leichtmanlaw.com
**Shane Wax (N.Y. 5347695)[2]**
e: swax@leichtmanlaw.com
**Alexander Katz (N.Y. 5922737)[3]**
e: akatz@leichtmanlaw.com
Leichtman Law PLLC
185 Madison Ave, Floor 15
New York, New York 10016
t: (212) 419-5210

***Attorneys for plaintiff
Prepared Food Photos, Inc.***

---

[1] Pro hac vice admission. R. Doc. 35.

[2] Pro hac vice admission. R. Doc. 85.

[3] Pro hac vice admission. R. Doc. 52.

# TABLE OF CONTENTS

**Background** ........................................................................................................................ 1

**The Rule 37(b) standards.** ........................................................................................... 6

**Contempt of Court Standards.** ................................................................................... 7

**I.   ARGUMENT** ........................................................................................................ 9

  **A.   The Grocer Defendants' Contempt of Court** ..................................... 9

  *i.   The Mac Defendants' Sanctionable Conduct* ................................... 10

  *ii.   The Sullivan Defendants' Sanctionable Conduct* ............................ 13

  *iii.   Adrien's and Piggly Wiggly's Contempt of Court* ......................... 15

  **B.   Epic's Contempt of Court** ......................................................................... 17

  **C.   Defendants' Counsel Should Be Sanctioned in Addition to the Party Defendants** ....................................................................................................... 22

  **D.   Summary of Proposed Sanctions on Defendants and their counsel** ........... 24

**II.   CONCLUSION** ................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

*ADP, LLC v. Ultimate Software Grp., Inc.*, No. 17-cv-61274, 2017 U.S. Dist. LEXIS 231044, 2017 WL 7794226 (S.D. Fla. Dec. 15, 2017) ........................................................................... 11, 16, 19, 24

*Am. Serv. Mktg. Corp. v. Bushnell*, No. 09–3097, 2009 WL 1870887 (E.D. La. June 25, 2009) .................. 8

*Brown v. City of Alexandria*, No. 1:20-CV-00541, 2022 U.S. Dist. LEXIS 57885 (W.D. La. Mar. 29, 2022) ........................................................................................................... 11, 13, 16, 19, 23

*CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314 (5th Cir. 2023) ......................................................... 8, 9

*Evans v. Thomas*, No. 6:19-CV-01485, 2020 U.S. Dist. LEXIS 182483, 2020 WL 5876775 (W.D. La. Oct. 1, 2020) ................................................................................................................ 11, 13, 16, 24

*Frieri v. Sysco Corp.*, No. 3:16-cv-01432, 2017 U.S. Dist. LEXIS 124425 (S.D. Cal. Aug. 4, 2017) .. 11, 13, 16, 19, 24

*Hornbeck Offshore Servs., L.L.C. v. Salazar*, 701 F.3d 810 (5th Cir. 2012) ......................................... 8

*Hornsby v. USAA Cas. Ins. Co.*, No. 1:19-CV-01430, 2021 U.S. Dist. LEXIS 66274 (W.D. La. Apr. 1, 2021) ........................................................................................................... 11, 13, 19, 23

*Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. 18-7889, 2023 U.S. Dist. LEXIS 92390 (E.D. La. May 26, 2023) ................................................................................................ 10, 13, 16, 19, 23

*In re Collier*, 582 F. App'x 419 (5th Cir. 2014) ....................................................................................... 7

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1993) ............................................ 7

*Johnson v. New Destiny Christian Ctr. Church*, No. 6:15-cv-1698, 2017 U.S. Dist. LEXIS 213861 (M.D. Fla Aug. 28, 2017) ....................................................................................... 10, 13, 16, 19, 24

*Jolivet v. Compass Grp. USA, Inc.*, No. 3:19-cv-2096-B, 2021 U.S. Dist. LEXIS 4492 (N.D. Tex. Jan. 11, 2021) ......................................................................................................... 10, 13, 16, 19, 24

*Kansas City S. Ry. Co. v. Shan of Monroe LLC*, 3:19-CV-01569, 2021 WL 1432916 (W.D. La. Jan. 14, 2021) ................................................................................................................................. 8

*Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir.1990) ............................................................ 8

*Louisiana Ed. Ass'n v. Richland Parish School Bd.*, 412 F.Supp. 973, 976 (W.D.La. 1976), *aff'd*, 585 F.2d 518 (5th Cir. 1976) ...................................................................................................................... 8

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282 (5th Cir. 2002) .............................................. 7

*Martin v. Trinity Indus., Inc.*, 959 F.2d 45 (5th Cir. 1992)........................................................... 8

*Moawad v. Childs*, No. 00-60365, 2001 WL 498491 (5th Cir. Apr. 9, 2001) .................................... 7

*Nat'l Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464 (5th Cir. 1996) ..................... 7

*Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380 (5th Cir. 1999) ................... 7

*Shell Offshore, Inc. v. Eni Petroleum*, No. 16-cv-15537, 2017 U.S. Dist. LEXIS 229719, 2017 WL
    11536165 (E.D. La. Aug. 28, 2017).....................................................................................11

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486 (5th Cir. 2012) ...........................7, 8

*Travelhost, Inc. v. Blandford*, 68 F.3d 958 (5th Cir. 1995) ......................................................... 7

*United States v. McGraw-Hill Cos., Inc.*, No. CV 13-0779, 2014 WL 8662657 (C.D. Cal. Sept. 25, 2014)
    ................................................................................................................. 11, 13, 16, 19, 24

*United States v. United Mine Workers*, 330 U.S. 258 (1947) ........................................................ 8

*Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987) ......................................................... 8

## STATUTES

17 U.S.C. § 1202 ......................................................................................................................... 2

## OTHER AUTHORITIES

Fed. R. Civ. P. 37(b)(2) ...............................................................................10, 12, 17, 21, 25, 26

**May it please the Court:**

Plaintiff Prepared Food Photos, Inc., ("PFP") demonstrates why the Court should enter an order sanctioning all of the Defendants,[4] and also their counsel of record,[5] under Fed. R. Civ. P. 37(b) for their combined, continuing defiance of multiple orders[6] ("*Discovery Orders*") that the Court made during its June 7, 2023 discovery motion hearing ("Conference").

The arguments below, the excerpted Hearing Transcript, and the *Wax Declaration* reveal that since PFP's discovery requests at issue were served (over a year ago), since PFP filed its motion to compel (six months ago), since the *Discovery Orders* (two months ago), and even since the Hearing Transcript was received by the parties (six weeks ago), and despite multiple Rule 37 conferences over the past year, Defendants refuse to make any meaningful production of documents.  Stated differently, for the better part of a year, Defendants almost entirely ignored the rules; now they flout the *Discovery Orders*.  As a practical matter, Defendants' disobedience of the *Discovery Orders* is as attributable to Defendants' Counsel as it is to each of the delinquent Defendants themselves.  Thus, the Court should sanction Defendants and their Counsel in a manner that will compel and ensure Defendants' compliance without further delay, and which will rectify the ongoing prejudice to PFP.

## Background

Because the *Discovery Orders* were made during the Conference, and in response to the parties' respective motions to compel,[7] PFP presumes the Court's familiarity with this

---

[4] Adrien's Supermarket, Inc., ("Adrien's"), McDaniel Food Management, Inc., McLawrence Foods, L.L.C., McDaniel Foods of Alexandria, Inc., McDaniel Foods of Drew, LLC, McLawrence Foods of Swartz, Inc., McLawrence Foods of Oak Grove, Inc., McLawrence Foods of Columbia, LLC, McLawrence Foods of W. Monroe, LLC, (the "Mac Defendants") Piggly Wiggly South Opelousas, LLC, ("Piggly Wiggly"), Sullivan's Grocery LA#2, and Sullivan's Inc Grocery, (the "Sullivan Defendants") (collectively, the "Grocer

Defendants"), Epic Solutions, LLC, ("Epic"), (together with the Grocer Defendants, "Defendants").

[5] Leake & Andersson, L.L.P. ("Defendants' Counsel").

[6] The transcript ("Hearing Transcript") of the motion hearing is Exhibit A to the Declaration of Shane Wax ("Wax Decl." and "Wax Ex.").

[7] PFP filed its Motion to Compel on February 22, 2023 [R. Doc. 62] ("PFP Compel Motion"); The Grocer Defendants filed their Motion to Compel on March 13, 2023 [R. Doc. 69] ("Grocers' Compel Motion").

dispute and will recite only the facts pertinent to Defendants' and their attorneys' defiance of the *Discovery Orders*.[8]

**PFP Compel Motion; background.** PFP served its initial document requests ("*PFP's RFPs*") on each of the Defendants in August 2022 - more than a year ago.[9]

For the next six months, Defendants failed to produce entire categories of responsive documents which are critical to PFP's ability to prove the damages resulting from Defendants' copyright infringement and violations of the Copyright Management Information integrity statute.[10] For example, *PFP's RFPs* sought (and still seek), *inter alia*:

1.     copies of Epic's advertisements since May 2019, whether provided to the named Grocer Defendants or to any third party (e.g., the "John Doe Defendants");

2.     documents evidencing Epic's source or sources of Plaintiff's Photographs, which are specifically identified in the Complaint and elsewhere;

3.     communications, including Defendants' internal communications, their communications with each other, and their communications with third parties, including but not limited to with Multi-Ad; and

4.     documents evidencing Defendants' sales and revenues.

The late-February *PFP Compel Motion* was the last resort after months of "meet and confer" talks, deficiency letters, and good faith communications failed to work.  Rather than responding to the *PFP Compel Motion* by partially cooperating, or justifying their reluctance to fully cooperate, Defendants did little more than file their own motion to compel.

**The June 7 Conference.** PFP requested oral argument or conference and the Court entertained the parties' competing arguments for over two hours on June 7, 2023.  The 84-page transcript[11] reveals the Court made numerous orders, some of PFP and some of the Defendants. Specifically, the Court ordered the following of Defendants:

---

[8] See *Wax Decl.* for a more exhaustive discovery timeline and certification of PFP's efforts to obtain documents and information from the defendants and their attorneys.

[9] Wax Decl. ¶4; Wax Ex. B (e-mails serving PFP's RFPs); *See* Exhibits A-1 – A-5 to February 22, 2023

Declaration and Certification of Alexander Katz, Esq., Pursuant to Local Rule 37.1 ("*February Katz Decl.*"), R. Doc. 62-2 – 62-6 (copies of all of PFP's RFPs).

[10] 17 U.S.C. § 1202.

[11] *Wax Ex. A.*

1.   "I am ordering that Epic do produce responsive photos that they have physically at their facility, and I'm ordering at this point to provide copies to PFP of what they have…I am going to give you guys one month to produce that. . . . Epic is to produce the physical copies of the picture that they can locate within 30 days."[12]

2.   "what I understood . . . is [Defendants] have done a search. They don't have anything that had the copyright management information on it. . . . I would expect . . . a response to the interrogatory saying exactly what you said [that "there was no identifying information, identifying these as Prepared Foods or any copyright management information altogether"]. . . . so to the extent the interrogatories need to be supplemented to make that clear, then that's what I would also expect…"[13]

3.   "obtain an affidavit from someone at Epic who is doing the search, what it is they are searching for, what they understand the parameters to be so that [Plaintiff] can then reasonably understand what it is, the search they have done. . . . obtain an affidavit on [] what their understanding of the copyright management information is, what search they did, how they came to the determination they didn't have anything responsive to [Plaintiff's] request. . . . provide an affidavit from the appropriate person for defendants who did the search and can explain what he or she did to attempt to locate the copyright management information."[14]

4.   "to the extent that there are email communications, not subject to some privilege, and of course, if they are subject to some privilege, you would need to provide a log on that, but if there are communications relevant to the subject of this lawsuit and subject of a discovery request by PFP . . . what I need is an affidavit provided to PFP that addresses what you guys have done, where you've searched, et cetera, and if there is anything responsive, because certainly I do think those kinds of email communications would be responsive and relevant to the lawsuit . . . any kind of communications via text or email, or I don't know what else it would be, but text or email."[15]

5.   "what I need from Epic . . .is if they can identify where they would have gotten the remaining -- the small percentage of photos that you mentioned, who the other source was for those from the time period March 1, 2017, to December 31st of 2022. . . . Identify any other sources for those photos, and characterize for -- I say characterize -- provide  . . . what you've indicated is a very small percentage. If they know for sure that it was three photos, identify what those three photos were, then provide that information…."[16]

6.   "what I need is the affidavit from [Defendant's] person telling us what they did, how they did it, and if they can't do anything more, I need to know why they can't do anything more. So what I want to see is an affidavit prepared by someone who

---

[12] *Id.* (Transcript, at 19:12-20:12, 26:08-09).

[13] *Wax Ex. A.* (Transcript, at 20:17-19, 21:06-11).

[14] *Id.* (at 24:12-19, 25:11-14, 26:10-12).

[15] *Id.* (at 25:15-20, 26:13-30:04).

[16] *Id.* (at 43:19-44:05).

can explain what they did and what they can do and what they can't do both on the CMI and the photos generally, everything that we've talked about here today."[17]

7.   "[T]he four named grocers, I am ordering that they produce the advertising materials to the extent they have them, going forward to the December 31st of 2022. . . . what I'm understanding is they have made productions of some of the advertisements. You may need to do a supplemental production through December 31st of 2022 . . . I want produced advertisements for the four grocers from March 1, 2017 through December 31, 2022. If they don't have them, then I want that information conveyed to [Plaintiff] in a discovery response . . . I'm going to order it as to any that fall under that corporate umbrella, if they are covered under that corporate umbrella. . .   So verify that the specific entities named in this lawsuit, if those include stores in Mississippi, Alabama, Arkansas, then certainly that would need to be produced as well. If the defendants who are named in this lawsuit are specifically Louisiana entities, as some of the -- the Macs Fresh Market that I was naming off, I recognize those names because I'm from here, as all being Louisiana entities. If some of those incorporations including locations in Alabama, Mississippi, Arkansas, wherever, then those would need to be included as well."[18]

8.   "I'm going to order, that . . . I want to know . . . how many [Epic] clients there are, what that number -- how would they be able to obtain that information and provide that information, and I understand what their concern is, but [Epic is] a named defendant in this lawsuit and they are alleged to have infringed by providing those advertisements."[19]

9.   "I want to come back to the request for information on the defendants' sales revenue and profits since 2017 . . . I do think plaintiffs are entitled to do a damages calculation, and I don't know how they can do a damages calculation without information from the defendants. . . I do think [Defendants] are going to have to produce information so that plaintiffs can calculate their damages. . . . two weeks from today, I want . . . either a joint protective order or your separately proposed protective orders . . . and I will look at them both, and I will pick one, and then I will order that the information be produced subject to that protective order."[20]

The Court gave the Defendants 30 days (until July 7) to comply with the *Discovery Orders*.[21]

The Court also ordered the parties to submit one or more proposed protective orders within 14 days (by June 20) of the Conference[22] to address Defendants' confidentiality concerns

---

[17] *Id.* (at 48:21- 49:08, 51:02-15).

[18] *Wax Ex. A* (Transcript, at 52:17-20, 53:15-19, 54:23-55:15).

[19] *Id.* (at 57:15-21).

[20] *Id.* (at 59:22-60:03, 61:19-62:05).

[21] The Court also Ordered Plaintiff to produce (1) within thirty (30) days of the Conference, (a) supplemental or amended discovery responses, and (b) an affidavit from Plaintiff attesting to various matters, and (2) within forty-five (45) days of the Conference, a privilege log for any responsive documents being with withheld by Plaintiff. *Id.* (at 62:23-63:04, 66:16-18, 77:24-78:22, 81:07-11, 82:12-25).

[22] *Id.* (at 61:19-62:05).

despite the fact that, the Court already entered a Protective Order last August,[23] which was drafted by Defendants.[24]  Since the Conference, however, Defendants have made practically no effort to comply with *Discovery Orders*.[25]

**Protective order delay and obfuscation.** Following the Conference, PFP's counsel requested Defendants produce a proposed protective order (to address Defendants' confidentiality concerns which were not shared by PFP).[26]  Defendants' Counsel did nothing, and the parties were needlessly forced to ask for additional time to submit draft protective order(s).[27]  After this waste of time, Defendants still could not agree on new protective order language, and submitted their own proposed orders asking the Court to permit production designated as "Confidential – Attorney's Eyes Only," but with different restrictions on that designation.[28]  The proposed protective order filed by Defendants [R. Doc. 90] was not the same proposal that Defendants' Counsel had e-mailed a week earlier, but a new proposed order which was never seen by Plaintiff before it was filed.  The Court adopted Defendants' draft language, which, significantly, <u>does not contain any provision authorizing any party to redact</u> or withhold any allegedly confidential information.[29]

**Refusal to produce under the *Discovery Orders*.**  Although PFP allowed multiple extensions of time for Defendants to comply with the *Discovery Orders*, Defendants still have not complied with any of the *Discovery Orders*.  Each has failed to make even a good faith

---

[23] R. Doc. 50; *See Wax Ex. A* (Transcript, at 60:05-11).

[24] Defendants have asserted that Epic is a competitor to Plaintiff, and therefore, Plaintiff's officers and employees should not be allowed to learn or receive any potentially confidential information, including Defendants' revenues and sales information. *Id.* (at 60:11-15, 61:20-22).

[25] To date, PFP has <u>completely and timely</u> complied with the Discovery Orders by (i) supplementing its discovery responses, (ii) producing an affidavit attesting to, inter alia, which photographs were provided to the U.S. Copyright Office and to Epic's prior counsel, and (iii) producing a privilege log of all documents and communications being withheld by Plaintiff. *Wax*

[26] *Wax Decl.* ¶ 19.

[27] R. Docs. 88 & 89; *Wax Decl.* ¶¶ 20-23.

[28] R. Docs. 90 & 91.

[29] R. Doc. 92.  The new Protective Order allows either party to designate materials as "Confidential – Attorneys' Eyes Only," but in effect, prevents PFP's principals and key employees from acquiring or learning valuable information about its claims, including any information related to PFP's recoverable damages, including defendants' revenues.

*Decl.* ¶¶ 17, 35, 38; *Wax Ex. A* (Transcript, at 62:23-63:04, 66:16-18, 77:24-78:22, 81:07-11, 82:12-25).

effort to comply.  None has offered a legitimate reason or excuse for what is now a month's long refusal to obey the *Discovery Orders*.  In particular, the Mac Defendants[30] have not produced *any* documents since the Conference; they have completely defied the *Discovery Orders* in *every* respect.  Likewise, the Sullivan Defendants, Adrien's, Piggly Wiggly and Epic have done nothing more than waste time and feign compliance with the *Discovery Order*, belatedly producing only a few incomplete or unusable documents and information, and otherwise failing to comply with the *Discovery Orders*.[31]

## The Rule 37(b) standards.

Rule 37(b)(2) provides, in pertinent part, as follows:

> (A) If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
>> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>>
>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>>
>> (iii) striking pleadings in whole or in part;
>>
>> . . .
>>
>> (vi) rendering a default judgment against the disobedient party; or
>>
>> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>>
>> . . .
>
> (C) Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

In addition to this broad range of sanctions, including contempt, Rule 37(b)(2)(C) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorneys' fees,

---

[30] Defendants McDaniel Food Management, Inc., McLawrence Foods, L.L.C., McDaniel Foods of Alexandria, Inc., McDaniel Foods of Drew, LLC, McLawrence Foods of Swartz, Inc., McLawrence Foods of Oak Grove, Inc., McLawrence Foods of Columbia, LLC, McLawrence Foods of W. Monroe, LLC.

[31] *Wax Decl.* ¶¶ 19-51.

caused by the failure to obey a discovery order, which may be levied against either or both the disobeying party and/or their counsel of record. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012).

### Contempt of Court Standards.

Federal courts also have inherent powers necessary to achieve the orderly and expeditious disposition of their docket, which includes the authority to punish for contempt in order to maintain obedience to court orders and the authority to impose reasonable and appropriate sanctions on errant lawyers practicing before the court. *Nat'l Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996) (citations omitted).

"The judicial contempt power is a potent weapon" that should not be used unless a specific aspect of the court's order has been "clearly violated." *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999)(internal quotations and citations omitted). "Contempt is characterized as either civil or criminal depending on its 'primary purpose.'" *In re Collier*, 582 F. App'x 419, 422 (5th Cir. 2014). Civil contempt is designed to compel compliance with court orders and may be imposed in ordinary civil proceedings upon notice and an opportunity to be heard. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–27 (1993). Civil contempt proceedings are coercive in nature and may be avoidable through obedience. *Id.* Civil contempt is remedial; the penalty serves to enforce compliance with a court order or to compensate or benefit the complainant. *Nat'l Gas Pipeline,* 86 F.3d at 467 (citations omitted); *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 290-91 (5th Cir. 2002)(citations omitted) ("A contempt order is civil in nature if the purpose of the order is (1) to coerce compliance with a court order or (2) to compensate a party for losses sustained as a result of the contemnor's actions.").

The movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence[32] that: (1) a court order was in effect; (2) the order required certain

---

[32] *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (internal quotation marks omitted); *see*   *also Moawad v. Childs*, No. 00-60365, 2001 WL 498491, at *1 (5th Cir. Apr. 9, 2001), (*quoting*

conduct by the respondent; and (3) the respondent failed to comply with the court order. *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992); *Whitfield v. Pennington*, 832 F.2d 909 (5th Cir. 1987). Intent is not an element of civil contempt; the issue is whether the alleged contemnor has complied with a court's order. Indeed, even an unintentional violation an order may lead to civil sanctions, but the court should consider the <u>degree of willfulness</u> in determining the appropriate sanction." *Louisiana Ed. Ass'n v. Richland Parish School Bd.*, 412 F.Supp. 973, 976 (W.D.La. 1976), *aff'd*, 585 F.2d 518 (5th Cir. 1976) (<u>emphasis added</u>).

Stated differently, although Rule 37(b) vests district courts with broad discretion to impose sanctions for discovery violations,[33] the sanction(s) imposed "must be both just and related to the particular claim which was at issue in the order to provide discovery." *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 325 (5th Cir. 2023). When a contempt showing is made, courts concurrently "order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

**Per-day contempt fines.** After notice and an opportunity to be heard on the issue of contempt, continued contempt may be punishable by a per-day fine in the Fifth Circuit so long as the court considers: (1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the party in contempt and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order. *Lamar Fin. Corp. v. Adams*, 918 F.2d 564 (5th Cir.1990), *citing United States v. United Mine Workers*, 330 U.S. 258 (1947).

---

*Travelhost*, 68 F.3d at 961) (characterizing clear and convincing evidence as "that 'weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to truth of the allegations sought to be established, evidence so clear, direct, weighty and convincing as to enable [the] fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.'");*accord Hornbeck Offshore Servs., L.L.C. v. Salazar*, 701 F.3d 810, 815 (5th Cir.

2012) (citation omitted); *Am. Serv. Mktg. Corp. v. Bushnell*, No. 09–3097, 2009 WL 1870887, at *2 (E.D. La. June 25, 2009) (Engelhardt, J.) (denying contempt order based on lack of clear and convincing evidence).

[33] *Kansas City S. Ry. Co. v. Shan of Monroe LLC*, 3:19-CV-01569, 2021 WL 1432916, at *2 (W.D. La. Jan. 14, 2021), citing Smith & Fuller, 685 F.3d at 488.

**Non-contempt sanctions.**  In some instances, courts strike defenses or claims, or impose "litigation-ending" or "death penalty" sanctions.  In the Fifth Circuit, district courts "must make four additional findings to impose a litigation-ending sanction: (1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation substantially prejudice[d] the opposing party; and (4) a lesser sanction would not substantially achieve the desired deterrent effect." *CEATS*, 71 F.4th at 324-25 (internal citations omitted).

## I.   ARGUMENT

The Court should sanction each of the Defendants and their counsel for willfully and substantially failing to comply with the June 7 *Discovery Orders*.  Specifically, the Court should impose harsh sanctions to compel obedience, including and up to "death penalty" sanctions by striking each Defendants' Answer and enter Default Judgment in favor of Plaintiff.  Further, the Court should hold Defendants and their attorney in contempt of court, impose monetary sanctions (including payment of Plaintiff's costs and attorneys' fees), preclude Defendants from relying on unproduced materials, direct any jury or fact finder to make adverse inferences.  At minimum, the Court should enter the foregoing sanctions to be conditionally imposed in the event Defendants continue to disobey Court Orders by failing to make a complete production with fourteen (14) days.

## A.   The Grocer Defendants' Contempt of Court

Each of the Grocer Defendants should be sanctioned because each of them has failed to comply with the *Discovery Order* in all or nearly all respects.

The Court ordered the Grocer Defendants to produce the following:

1.   A response to Plaintiff's interrogatory, stating that "there was no identifying information, identifying these as Prepared Foods or any copyright management information" in any of the photographs in the Grocer Defendants' possession (Transcript, 20:17-19, 21:06-11);

2.   "email communications . . . responsive and relevant to the lawsuit . . . any kind of communications via text or email" (Transcript, at 25:15-20, 26:13-30:04);

9

3. "advertising materials to the extent they have them . . . from March 1, 2017 through December 31, 2022. If they don't have them, then I want that information conveyed to [Plaintiff] in a discovery response . . . I'm going to order it as to any that fall under that corporate umbrella, if they are covered under that corporate umbrella," including any of the Grocer Defendants' locations outside of Louisiana (Transcript, at 52:17-20, 53:15-19, 54:23-55:15); and

4. "defendants' sales revenue and profits since 2017" (Transcript, at 59:22-60:03).

i.  *The Mac Defendants' Sanctionable Conduct*

The Court should impose "death penalty" sanctions against the Mac Defendants because they did not comply with the June 7, 2023 Order **in any respect**, thereby demonstrating willful disobedience and bad faith.

More than 60 days after the Conference, the Mac Defendants still have not provided any of these materials, which were first requested over one year ago, thereby disobeying the Court's June 7th Orders. Furthermore, Since the Conference and entry of the June 29 Protective Order [R. Doc. 92], the Mac Defendants have not produced unredacted copies of any documents previously produced by the Mac Defendants *with redactions*, nor have the Mac Defendants produced a privilege log addressing their redactions. *See Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. 18-7889, 2023 U.S. Dist. LEXIS 92390, at *32 (E.D. La. May 26, 2023) ("The Court agrees with Plaintiffs that the Protective Order is sufficient, and no redactions are necessary at this time. The Protective Order expressly contemplated the attorneys in this case would have access to documents designated as 'confidential' or 'confidential-outside counsel only.'"); *Jolivet v. Compass Grp. USA, Inc.*, No. 3:19-cv-2096-B, 2021 U.S. Dist. LEXIS 4492, at *34 (N.D. Tex. Jan. 11, 2021) ("a responding party cannot redact nonprivileged information from any responsive document"); *Johnson v. New Destiny Christian Ctr. Church*, No. 6:15-cv-1698, 2017 U.S. Dist. LEXIS 213861, at *14 (M.D. Fla Aug. 28, 2017) ("Defendant PMM failed to comply with its discovery obligations. PMM produced bank statements in response to the November 22 Order, but unilaterally redacted information from them."); *ADP,*

10

*LLC v. Ultimate Software Grp., Inc.*, No. 17-cv-61274, 2017 U.S. Dist. LEXIS 231044, 2017 WL 7794226, at *2 (S.D. Fla. Dec. 15, 2017) (ordering release of redacted information upon defendant's failure to show that the designation of Attorneys' Eyes Only designation was inadequate to protect the sensitive information in responsive, redacted documents); *Frieri v. Sysco Corp.*, No. 3:16-cv-01432, 2017 U.S. Dist. LEXIS 124425, at *14 (S.D. Cal. Aug. 4, 2017) ("where there is protective order in place, redaction of documents is generally not permitted"); *United States v. McGraw-Hill Cos., Inc.*, No. CV 13-0779, 2014 WL 8662657, at *4 (C.D. Cal. Sept. 25, 2014) ("unilateral redactions are inappropriate if they seek not to protect sensitive or protected information, but merely to keep non-responsive information out of an adversary's hands."); *Contrast Shell Offshore, Inc. v. Eni Petroleum*, No. 16-cv-15537, 2017 U.S. Dist. LEXIS 229719, 2017 WL 11536165, at *5 (E.D. La. Aug. 28, 2017) (citing parties' agreement to redact non-responsive confidential information, as defined by protective order); *see also Hornsby v. USAA Cas. Ins. Co.*, No. 1:19-CV-01430, 2021 U.S. Dist. LEXIS 66274, at *6 (W.D. La. Apr. 1, 2021), *quoting Evans v. Thomas*, No. 6:19-CV-01485, 2020 U.S. Dist. LEXIS 182483, 2020 WL 5876775 (W.D. La. Oct. 1, 2020) (When a party withholds or seeks to protect discoverable materials, they "must expressly make the claim and, in a privilege log, must 'describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'"); *Brown v. City of Alexandria*, No. 1:20-CV-00541, 2022 U.S. Dist. LEXIS 57885, at *21-22 (W.D. La. Mar. 29, 2022) ("any redactions . . . on the basis of privilege . . . should be reflected in a privilege log").

Given the amount of time that has passed – since Plaintiff's Requests were first served, since the Conference, and since the Court Ordered deadline to comply – the Court should find the Mac Defendants' failures to produce to be willful and in bad faith.  In fact, the Mac Defendants did not produce a single document in this case until June 2nd, just days before the Conference, and only produced a single year's worth of advertisements and some redacted

insurance policies. *See* Wax Decl. ¶ 14.[34]  Although Defendants' counsel arguably shoulders some fault, it is apparent that the Mac Defendants are responsible for these violations insofar as the documents and information are in their possession, but they have willfully refused to comply with the June 7th Order, and indeed, refused to produce *any* discoverable documents or information in a complete and timely manner.

Plaintiff is clearly prejudiced by the Mac Defendants' failures to produce.  Without the Ordered documents and information, Plaintiff cannot ascertain the full extent of the Mac Defendants' unlawful conduct, including how many of Plaintiff's photographs were used in their grocery ads and how many times each photograph was used, whether and to what extent the Mac Defendants are responsible, for or had knowledge or reason to know about, the removal, alteration and/or falsification of CMI, not to mention how much revenue the Mac Defendants received attributable to their uses of Plaintiff's photographs.  Given the magnitude of the Mac Defendants' discovery violations and the amount of time since Plaintiff first complained of the Mac Defendants' discovery deficiencies, it appears that the Mac Defendants have no intent to comply with *Discovery Orders*, and the harshest sanctions must be imposed to deter the Mac Defendants and similarly situated third parties.

Therefore, the Court should (a) strike the Mac Defendants' Answer; (b) enter Judgment that each of the Mac Defendants willfully infringed six (6) separate works owned by Plaintiff and (c) should award Plaintiff (i) statutory damages in the maximum amount of $150,000 per work, i.e., $900,000 in total (to be paid jointly and severally by Epic and the Mac Defendants), together with (ii) Plaintiff's costs and reasonable attorneys' fees in prosecuting this action against the Mac Defendants. *See* 17 U.S.C. §§ 504(c) & 505.At the very least, the Court should enter a Second Discovery Order, which should require the Mac Defendants

---

[34] *See also February Katz Decl.*, R. Doc. 62-1, ¶ 9: "No Defendants other than Adrien's, Piggly Wiggly, and Epic have produced any responsive documents to date."; Plaintiff's March 22, 2023 Reply Brief, R. Doc. 73 at 1: "neither the 'Mac Defendants' nor the

'Sullivan Defendants' have produced a single document nor provided an explanation via Affidavit for their inability to provide any documents."

to produce *all* outstanding documents within fourteen (14) days, subject to the foregoing "death penalty" sanctions in the event that the Mac Defendants continue their contempt of this Court.[35]  In either case, the Mac Defendants should be Ordered to pay PFP's costs and attorneys' fees in connection with all of PFP's efforts to obtain discovery in this case, including the costs and fees incurred in connection with *PFP's Compel Motion* and the instant motion. *See* Fed. R. Civ. P. 37(b)(2)(C).

    *ii.*    *The Sullivan Defendants' Sanctionable Conduct*

Likewise, the Court should impose similarly harsh sanctions against Sullivan Defendants because the Sullivan Defendants did not comply with *Discovery Orders* in any meaningful respect, thereby demonstrating willful disobedience and bad faith.

More than 60 days after the Conference, the Sullivan Defendants still have not provided any of these materials, which were first requested over one year ago, thereby disobeying the Court's June 7th Orders.  Since the Conference, the Sullivan Defendants have only produced unredacted copies of the redacted insurance policies belatedly produced on June 2nd, but have not produced unredacted copies of their redacted grocery advertisements (which redact relevant and public information) and have not provided any of the materials specifically Ordered by the Court.  *See Ictech-Bendeck*, 2023 U.S. Dist. LEXIS 92390, at *32; *Brown*, 2022 U.S. Dist. LEXIS 57885, at *21-22; *Hornsby*, 2021 U.S. Dist. LEXIS 66274, at *6;  *Jolivet*, 2021 U.S. Dist. LEXIS 4492, at *34;  *Evans*, 2020 WL 5876775, at *2; *ADP*, 2017 WL 7794226, at *2; *Johnson*, 2017 U.S. Dist. LEXIS 213861, at *14; *Frieri*, 2017 U.S. Dist. LEXIS 124425, at *14; *McGraw-Hill*, 2014 WL 8662657, at *4.

Given the amount of time that has passed – since Plaintiff's Requests were first served, since the Conference, and since the Court Ordered deadline to comply – the Court should find

---

[35] Any Second Discovery Order should also compel the Mac Defendants to produce its tax records and profit & loss statements for each year, 2017-2022, as the Court should enter an adverse inference that all of the Mac Defendants' revenues during this time were attributable to their infringing and unlawful activities, and preclude the Mac Defendants from asserting or offering proof of any deductible costs or offsets.

the Sullivan Defendants' failures to produce to be willful and in bad faith.  In fact, like the Mac Defendants, the Sullivan Defendants did not produce a single document in this case until June 2nd, just days before the Conference, and only produced a single year's worth of advertisements and some redacted insurance policies.[36]  It is apparent that the Sullivan Defendants are responsible for these violations as the documents and information are in their possession, but they have willfully refused to comply with the *Discovery Orders*, and indeed, refused to produce *any* discoverable documents or information in a complete and timely manner.

Plaintiff is clearly prejudiced by the Sullivan Defendants' failures to produce.  Without the Ordered documents and information, Plaintiff cannot ascertain the full extent of the Sullivan Defendants' unlawful conduct, including how many of Plaintiff's photographs were used in their grocery ads and how many times each photograph was used, whether and to what extent the Sullivan Defendants are responsible, for or had knowledge or reason to know about, the removal, alteration and/or falsification of CMI, not to mention how much revenue the Sullivan Defendants received attributable to their uses of Plaintiff's photographs.  Given the magnitude of the Sullivan Defendants' discovery violations and the amount of time since Plaintiff first complained of the Sullivan Defendants' discovery deficiencies, it appears that the Sullivan Defendants have no intent to comply with Discovery Orders, and the harshest sanctions must be imposed to deter the Sullivan Defendants and similarly situated third parties.

Therefore, the Court should (a) strike the Sullivan Defendants' Answer; (b) enter Judgment that each of the Sullivan Defendants' willfully infringed six (6) separate works owned by Plaintiff and (c) should award Plaintiff (i) statutory damages in the maximum amount of $150,000 per work, i.e., $900,000 in total (to be paid jointly and severally by Epic and the

---

[36] *Wax Decl.* ¶ 14; *See also February Katz Decl.*, R. Doc. 62-1, ¶ 9 ("No Defendants other than Adrien's, Piggly Wiggly, and Epic have produced any responsive documents to date."; Plaintiff's March 22, 2023 Reply Brief, R. Doc. 73 at 1: "neither the 'Mac Defendants'

nor the 'Sullivan Defendants' have produced a single document nor provided an explanation via Affidavit for their inability to provide any documents.").

Sullivan Defendants), together with (ii) Plaintiff's costs and reasonable attorneys' fees in prosecuting this action against the Sullivan Defendants. *See* 17 U.S.C. §§ 504(c) & 505.  At the very least, the Court should enter a Second Discovery Order, which should require the Sullivan Defendants.

     iii.    *Adrien's and Piggly Wiggly's Contempt of Court*

Likewise, the Court should impose similarly harsh sanctions against Adrien's' and Piggly Wiggly's because neither of them complied with the June 7, 2023 Order in any meaningful respect, thereby demonstrating their willful disobedience and bad faith.

More than 60 days after the Conference, Adrien's and Piggly Wiggly still have not provided any of these materials in proper form, which were first requested over one year ago, thereby disobeying the Court's June 7th *Discovery Orders*.  Since the Conference, Adrien's has only produced one document consisting of just a single page, which is entitled "Adriens Supermarket, Inc. Profit & Loss March 2017 through December 2022."; similarly, Piggly Wiggly's has only produced one document consisting of just three pages, which is entitled "Piggly Wiggly South Profit & Loss March 2017 through December 2022."[37]  However, both of these documents, which were not produced until July 28th, 52 days after the Conference, are *heavily* redacted despite being marked "Confidential – Attorneys' Eyes Only." Neither Adrien's nor Piggly Wiggly have produced a log addressing the redactions in their documents, despite Plaintiff's request for a privilege log, and Defendants' Counsel has explicitly represented that none of the Defendants will be producing a privilege log because Defendants have no privileged documents.[38]

The Court Ordered the Defendants to produce their revenue and sales information subject to the terms of the June 29th Protective Order [R. Doc. 92].[39] The June 29th Protective Order was drafted by Defendants' Counsel, and does not include any provisions authorizing

---

[37] *Wax Decl.* ¶ 39; *See Wax Ex.* E.

[38] *Wax Decl.* ¶ 37.

[39] Wax Ex. A (Transcript, at 59:22-60:03).

any party to redact or withhold information.  Indeed, the whole point of a new Protective Order was to mitigate Defendants' concerns about confidentiality, and to promote a complete and unredacted exchange of financial information.  What is the purpose of providing redacting information to Plaintiff's counsel when, even without redactions, the underlying information cannot be shared by Plaintiff's counsel with the client?  Furthermore, neither Adrien's nor Piggly Wiggly has produced unredacted copies of documents previously produced with redactions despite the Court's entry of the June 29 Protective Order [R. Doc. 92], and neither of them has produced a privilege log. *See Ictech-Bendeck*, 2023 U.S. Dist. LEXIS 92390, at *32; *Brown*, 2022 U.S. Dist. LEXIS 57885, at *21-22; *Hornsby*, 2021 U.S. Dist. LEXIS 66274, at *6; *Jolivet*, 2021 U.S. Dist. LEXIS 4492, at *34;  *Evans*, 2020 WL 5876775, at *2; *ADP*, 2017 WL 7794226, at *2; *Johnson*, 2017 U.S. Dist. LEXIS 213861, at *14; *Frieri*, 2017 U.S. Dist. LEXIS 124425, at *14; *McGraw-Hill*, 2014 WL 8662657, at *4.

Since Adrien's' and Piggly Wiggly's have each only produced a single heavily redacted document after the Conference in violation of the *Discovery Orders*, and further, given the amount of time that has passed – since Plaintiff's Requests were first served, since the Conference, and since the Court Ordered deadline to comply – the Court should find that both of Adrien's and Piggly Wiggly's failures have been willful and in bad faith.  Although Defendants' counsel bears responsibility for these impermissible redactions, and counsel should therefore be sanctioned as well, it is apparent that Adrien's and Piggly Wiggly's are each responsible for failing to provide any remaining the documents and information in their respective possessions, which were to be produced pursuant to the June 7th Order.

Plaintiff is clearly prejudiced by Adrien's and Piggly Wiggly's respective failures to produce.  Without the Ordered documents and information, Plaintiff cannot ascertain the full extent of their unlawful conduct, including how many of Plaintiff's photographs were used in their grocery ads and how many times each photograph was used, whether and to what extent they are responsible for, or had knowledge or reason to know about, the removal, alteration and/or falsification of CMI, not to mention how much revenue they received

16

attributable to their uses of Plaintiff's photographs.  Given the magnitude of Adrien's and Piggly Wiggly's discovery violations and the amount of time since Plaintiff first complained of their discovery deficiencies, it appears that these Grocer Defendants have no intent to comply with *Discovery Orders*, and harsh sanctions must be imposed to deter Adrien's, Piggly Wiggly's and similarly situated third parties.

Therefore, the Court should enter Orders of Preclusion and Adverse Inferences against Adrien's and Piggly Wiggly's in addition to Ordering monetary sanctions.  Specifically, the Court should (a) enter adverse inferences that (i) both Adrien's and Piggly Wiggly's infringements of Plaintiff's photographs were all willful, and (ii) that all of Adrien's and Piggly Wiggly's revenues from 2017-2021 were attributable to their respective infringing and unlawful activities; and (b) preclude Adrien's and Piggly Wiggly's from asserting or offering proof of any deductible costs or offsets.  Furthermore, the Court should Order Adrien's and Piggly Wiggly's to produce all remaining documents not yet produced by them pursuant to the June 7th Orders, within fourteen (14) days, subject to conditional "death penalty" sanctions and default statutory damages in the event that Adrien's and Piggly Wiggly's continue to exhibit contempt of this Court.[40]  Furthermore, Adrien's and Piggly Wiggly's should be Ordered to pay PFP's costs and attorneys' fees in connection with all of PFP's efforts to obtain discovery in this case, including the costs and fees incurred in connection with *PFP's Compel Motion* and the instant motion. *See* Fed. R. Civ. P. 37(b)(2)(C).

**B.    Epic's Contempt of Court**

In addition, the Court should impose similarly harsh sanctions against Epic because, like the Grocer Defendants, Epic did not comply with the June 7, 2023 Order in any meaningful respect, thereby demonstrating its willful disobedience and bad faith.

---

[40] Any Second Discovery Order should also compel Adrien's and Piggly Wiggly to each produce their respective tax records and profit & loss statements for each year, 2017-2022, as the Court should enter an adverse inference that all of their revenues during this time were attributable to their infringing and unlawful activities, and preclude the each of them from asserting or offering proof of any deductible costs or offsets.

The Court ordered Epic to produce the following:

1. "physical copies of" any Plaintiff's Photographs located in Epic's possession;[41]

2. A response to Plaintiff's interrogatory, stating that "there was no identifying information, identifying these as Prepared Foods or any copyright management information" in any of the photographs in Epic's possession;[42]

3. "an affidavit from someone at Epic who is doing the search," which sets forth "what it is they are searching for, what they understand the parameters to be so . . . what their understanding of the copyright management information is, what search they did, how they came to the determination they didn't have anything responsive to [Plaintiff's] request";[43]

4. "email communications . . . responsive and relevant to the lawsuit . . . any kind of communications via text or email";[44]

5. Information about where Epic "would have gotten the remaining -- the small percentage of photos that you mentioned, who the other source was for those from the time period March 1, 2017, to December 31st of 2022," including by identifying the number of photos obtained from a third-party source and identifying the source for each such photo;[45]

6. Information about how many clients Epic has and where they are there are located, particularly to the extent that Epic has provided Plaintiff's photographs to any of its clients which are not named as the Grocer Defendants;[46] and

7. "defendants' sales revenue and profits since 2017".[47]

More than 60 days after the Conference, Epic still has not provided most of these materials, which were first requested over one year ago, thereby disobeying the Court's June 7th Orders.  Since the Conference and entry of the June 29 Protective Order [R. Doc. 92], Epic has not produced unredacted copies of any documents previously produced by Epic *with*

---

[41] *Wax Ex. A* (Transcript, at 19:12-20:12, 26:08-09).

[42] *Id.* (at 20:17-19, 21:06-11).

[43] *Id.* (at 24:12-19, 25:11-14, 26:10-12).

[44] *Id.* (at 25:15-20, 26:13-30:04).

[45] *Id.* (at 43:19-44:05).

[46] *Wax Ex. A* (Transcript, at 57:15-21).

[47] *Id.* (at 59:22-60:03)

*redactions*, nor has Epic produced a privilege log addressing its redactions.  *See Ictech-Bendeck*, 2023 U.S. Dist. LEXIS 92390, at *32; *Jolivet*, 2021 U.S. Dist. LEXIS 4492, at *34; *Johnson*, 2017 U.S. Dist. LEXIS 213861, at *14; *ADP*, 2017 WL 7794226, at *2; *Frieri*, 2017 U.S. Dist. LEXIS 124425, at *14; *McGraw-Hill*, 2014 WL 8662657, at *4; *Hornsby*, 2021 U.S. Dist. LEXIS 66274, at *6; *Brown*, 2022 U.S. Dist. LEXIS 57885, at *21-22.

Furthermore, Epic did not even attempt to comply with the *Discovery Orders* until August 14th – more than two months after the June 7th Conference, and weeks after both the stipulated extended deadline and Epic's unilaterally imposed self-extension.  On August 14th, Epic finally produced an affidavit from Rick Malone, V.P. of Technology for Epic, (the "Malone Aff."), but this affidavit was not only late, it also fails to address numerous components of Epic's discovery obligations under the Court's Order.  (*See* Wax Decl., ¶¶ 41, 42).[48]  Despite the *Discovery Orders*, the Malone Affidavit **does not**: (i) identify the third parties Epic sourced its photographs from, identify the number of photographs obtained by Epic from its third-party sources, or identify the photographs it obtained from each third-party source; (ii) identify how many clients Epic has had at other points in time between March 1, 2019, and the present, does not identify any of Epic's clients by name or where they are located, and does not state how many of Epic's clients were provided advertisements that use Plaintiff's photographs; (iii) state what search efforts, if any, Epic used to identify or locate other forms of CMI besides metadata, nor what metadata or other CMI was conveyed by Epic to its customers.  (*See id.*, ¶¶ 44, 45).  Moreover, the Malone Affidavit identifies certain documents and information relevant to Plaintiff's requests and the *Discovery Orders*, which are in Epic's possession, custody or control, but which they have not produced, including copies of photographs in Epic's library that Epic has determined are "similar" to Plaintiff's Photographs. (*Id.* ¶ 47; *See* Malone Aff., at ¶ 15).

---

[48] The Mallone Affidavit is also replete with speculation and assumptions about facts over which he lacks personal knowledge, and contains numerous legal conclusions though he is not a lawyer. (*See* Wax Decl. ¶ 42).

In other cases, Epic denies the existence of documents that ought to be in its possession, custody or control.  For example, Mr. Malone states that Epic "does not communicate with customers . . . via text message." (*Id.*, at ¶ 31).  This stands in contrast to the documents produced by Epic which evidence the existence of text message communications between Epic and the Grocer Defendants. (*See* Wax Decl., at Ex. H; *see also id.* at ¶ 48 & Ex. A (Transcript, at 21:17-21, 29:24-30:01).  Epic admits destroying nearly every single responsive document from before 2021, despite being explicitly notified that it should "reasonably anticipate litigation" in July 2020, including but not limited to advertising proofs, printed circulars, communications with clients, and photographs in its library for which Epic could not definitely identify the source. (*See* Malone Aff., at ¶¶ 26, 29, 30, 32; Exhibit F to *PFP's Compel Motion*, R. Doc. 62-17 to 62-19).  From the Malone Affidavit, it is clear that Epic has been continuously and systematically destroying or otherwise withholding documents relevant to this litigation, and responsive to *PFP's RFP's* and the *Discovery Orders*, with Epic' purge beginning as early as August 2020, just one month after Epic was warned ***to not delete or destroy*** documents. (*Compare id. with* Malone Aff., at ¶11).

Moreover, Epic included seven documents in this August 14th production at Bates Nos. Epic Solutions 417 – 523, but the majority of those 107 pages are not responsive to Plaintiff's RFPs, but instead were produced to purportedly show the differences in metadata information contained in different photographs stored in Epic's photo library."[49]  (*See* Wax Decl., ¶42). Epic's August 14th production did not include: (i) any financial or revenue documents, (ii) any communications between Epic and any third party, including Multi-Ad, the Grocer Defendants, or any other Epic clients, nor (iii) unredacted versions of documents previously produced with redactions. (*Id.* ¶50).

---

[49] Notably, the Malone Aff. does not specify what Mr. Malone understands the 'relevant timeframe' to be. Therefore, to the extent that Mr. Malone's affidavit complies with Defendants' obligations under the *Discovery Orders*, it is unclear whether Mr. Malone's affidavit relates to Defendants' actions during the full timeframe of 2017 – 2021, or for an abrogated timeframe in defiance of the *Discovery Orders*.

Given the amount of time that has passed – since Plaintiff's Requests were first served, since the Conference, and since the Court Ordered deadline to comply – the Court should find Epic's failures to produce to be willful and in bad faith.  In fact, the *only* documents produced by Epic before the Conference, (in January 2023), largely consist of just one year's worth of advertisements, and Epic has not produced any relevant communications or financial information to date.  Although Defendants' counsel arguably shoulders some fault, given Defendants' counsel's routine and frequent delays since this litigation began, it is apparent that Epic is responsible for these violations insofar as the documents and information are in Epic's possession, but Epic has willfully refused to comply with the June 7th Order.  Plaintiff is clearly prejudiced by Epic's failures to produce.  Without the Ordered documents and information, Plaintiff cannot ascertain the full extent of Epic's unlawful conduct, including how many photographs it infringed, how many clients Epic sent infringing photographs, whether and to what extent Epic is responsible for removing, altering and/or falsifying CMI, not to mention how much revenue Epic received attributable to its misconduct.  Given the magnitude of Epic's discovery violations and the lengthy time since Plaintiff first complained of Epic's discovery deficiencies – with multiple meet and confers held in 2022 and 2023 – it appears that Epic has no intent to comply with Discovery Orders, and harsh sanctions must be imposed to deter Epic and third parties from behaving similarly in the future.

Therefore, the Court should enter Orders of Preclusion and Adverse Inferences against Epic in addition to Ordering monetary sanctions.  Specifically, the Court should (a) enter adverse inferences that Epic infringed at least twice as many photographs as identified in the Complaint, to wit, at least 42 separate works (the Complaint identifies 21 works), and that Epic's infringements of each of those works was willful, and (b) preclude Epic from asserting or offering proof of any deductible costs or offsets.

Furthermore, the Court should Order Epic to produce all remaining documents not yet produced by them pursuant to the June 7th Orders, within fourteen (14) days, subject to conditional "death penalty" sanctions and default statutory damages in the event that Epic

continues to exhibit contempt of this Court.  Furthermore, Adrien's and Piggly Wiggly's should be Ordered to pay PFP's costs and attorneys' fees in connection with all of PFP's efforts to obtain discovery in this case, including the costs and fees incurred in connection with *PFP's Compel Motion* and the instant motion. *See* Fed. R. Civ. P. 37(b)(2)(C).

For the foregoing reasons, each of the Defendants should be sanctioned.

## C.   <u>Defendants' Counsel Should Be Sanctioned in Addition to the Party Defendants</u>

Under Rule 37(b)(2)(C), the Court is authorized to "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure."  In this case, the Court should hold Defendants *and* Defendants' counsel in Contempt of Court and Order them to collectively pay Plaintiff's costs and attorney's fees.

Since this litigation began over one year ago, Defendants' counsel has repeatedly refused, rebuffed and otherwise actively inhibited Plaintiff's attempts to promptly obtain complete information from her clients.  Below is just a sample of opposing counsel's delays, unprofessionalism, and refusal to comply with court rules and orders:

- Defendants' counsel has repeatedly missed deadlines and has been dilatory for numerous inexcusable reasons – for example, opposing counsel once blamed Mardi Gras for being AWOL and tardy, and more recently has faulted the quality of the Internet at her own law office for her client's failure to provide documents, which still have not been produced;[50]

- The Grocer Defendants' Motion to Compel requested a new protective order over Plaintiff's objections (in part because the original Protective Order, R. Doc. 50, was drafted by Defendants' counsel), but when the Court granted Defendants' request, Defendants' counsel evidently forgot about her request.  On June

---

[50] *Wax Decl.* ¶¶ 3, 5-9, 19-24, 31-34; *See e.g., Wax Exs.* B, C & D. Ironically, Ms. Futch represented in February 2023 that she could not meet deadlines at the time because she was working remotely from home due to Mardi Gras. Last month, she subsequently represented that she could not meet July deadlines in July 2022 because she was unable to work outside of her office, despite supposed problems with "office systems." *Wax Exs.* B & D; *Wax Decl.* ¶¶ 8, 9, 34. In other words, Ms. Futch has the capabilities to work from home, if necessary, but does not feel compelled to work to meet deadlines under Rules and Orders.

11th, Plaintiff's counsel requested that Defendants' counsel circulate their proposed revisions to the protective order by the end of that week, to no avail. On June 16th, Plaintiff's counsel again requested opposing counsel's proposed revisions, but did not receive the same until June 20th, the same day as the Court Ordered deadline to submit the new order. Therefore, the parties had to request an extension of time solely due to Defendants' counsel's delays;[51]

- On multiple occasions in the past year, Defendants' counsel has promised to produce certain materials by a date certain, only to walk back and falsely claim that she never made any promises. In the past two months alone, Defendants' counsel agreed to produce documents on or before July 21st, only to request an additional week and then took until August 14th to make the production.[52]

- Defendants' counsel has been advised on multiple occasions that it is improper for her to be redacting her client's documents and that redactions are not permitted under any Protective Order entered in this case.[53] The Court Ordered the Defendants to produce all documents subject to the terms of the June 29th Protective Order that Defendants' counsel drafted [R. Doc. 92], but opposing counsel again decided to completely disregard her own language, which does not permit redactions;[54]

- Despite refusing to produce unredacted copies of documents already in Defendants' Counsel's possession and now producing newly redacted documents on behalf of Adrien's and Piggly Wiggly's, Defendants have not produced any privilege log. When Plaintiff's counsel inquired whether a privilege log would be produced, Defendants' counsel falsely represented that there were no privileged or withheld documents to be logged.[55] Moreover, Defendants' Counsel has represented that many redactions are based on their objections to relevance even though courts have repeatedly held this to be impermissible, particularly after entry of a Protective Order.[56] *See Ictech-Bendeck*, 2023 U.S. Dist. LEXIS 92390, at *32; *Brown*, 2022 U.S. Dist. LEXIS 57885, at *21-22; *Hornsby*,

---

[51] *Wax Decl.* ¶¶ 19-24.

[52] *Id.* ¶ 5, 19-20, 27-30; See, e.g., Wax Exs. B & C.

[53] *Wax Decl.* ¶ 5, *quoting February Katz Decl.*, R. Doc. 62-1, ¶ 25, *quoting* Defendants' counsel's February 10, 2023 e-mail, which stated, among other things, that Defendants "decline to provide unredacted copies of the insurance policies," and "we decline at this

time to produce unredacted copies of invoices at this time."

[54] *February Katz Decl.*, R. Doc. 62-1, ¶ 25, *quoting* Defendants' counsel's February 10, 2023 e-mail; Wax Exhibit E; Wax Decl. ¶¶ 26, 33)

[55] *Wax Ex. E; Wax Decl.* ¶¶ 37, 40, 41.

[56] *Wax Ex. B, Wax Decl.* ¶ 8.

2021 U.S. Dist. LEXIS 66274, at *6;  *Jolivet*, 2021 U.S. Dist. LEXIS 4492, at *34; *Evans*, 2020 WL 5876775, at *2; *ADP*, 2017 WL 7794226, at *2; *Johnson*, 2017 U.S. Dist. LEXIS 213861, at *14; *Frieri*, 2017 U.S. Dist. LEXIS 124425, at *14; *McGraw-Hill*, 2014 WL 8662657, at *4;

In view of the numerous violations of Court rules and orders that are or ought to be attributed to opposing counsel, as opposed to the Defendants themselves, the Court should Order the law firm of Leake & Andersson, L.L.P. to pay Plaintiff's reasonable expenses and attorney's fees, jointly and severally with opposing counsel's clients.

### D.   Summary of Proposed Sanctions on Defendants and their counsel

Plaintiff submits that the Court should enter the harshest sanctions against at least the Mac Defendants, including and up to Death Penalty sanctions, in addition to Ordering Defendants and their Counsel to pay Plaintiff's costs and attorneys' fees.  If, however, the Court deems that Death Penalty sanctions are not yet ripe, despite the Defendants' numerous violations of the *Discovery Orders*, the Court should, at minimum, Order the following relief:

1.   Requiring each of the Defendants to produce, within fourteen (14) days, (a) all materials to be produced by Defendants under the June 7th *Discovery Orders*, without redactions, and (b) their respective tax returns and profit & loss statements for each year, 2017-2022, also without redactions;

2.   Requiring each Defendant to file a notice with the Court, within fourteen (14) days, certifying their respective compliance therewith;

3.   In the event that any Defendant fails to produce outstanding discovery and fails to file a notice of compliance, each such non-compliant be required to pay $500 per day into the registry of the Court until compliance;

4.   In the event such non-compliance continues an additional twenty (20) days such that the total fine reaches $10,000, that the Court consider, upon motion by Plaintiff, whether to impose more severe sanctions, including up to the entry of Death Penalty Sanctions, against any or all non-compliant Defendants; and

5.   Such other and further relief as the Court deems just and proper in order to compel obedience and deter future transgressions.

## II.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should enter sanctions against each of the Defendants as the Court deems just and proper under Rule 37(b)(2)(A), or alternatively, enter an Order pursuant to Plaintiff's proposed terms set forth in the foregoing subparagraphs D(1) – D(5), and including an Order that Defendants and their counsel jointly pay Plaintiff's reasonable expenses and attorneys' fees pursuant to Rule 37(b)(2)(C), together with such other relief as the Court deems appropriate.

Dated: August 24, 2023                    *Respectfully submitted*,

                                          */s/ Andrew T. Lilly*
                                          **Andrew T. Lilly (La. 32559)**
                                          Lilly PLLC
                                          4907 Magazine Street
                                          New Orleans, Louisiana 70115
                                          t: (504) 812-6388
                                          e: andrew@atlpllc.com

                                          and

                                          */s/ Alexander B. Katz*

                                          **David Leichtman (N.Y. 2824480)**[57]
                                          dleichtman@leichtmanlaw.com
                                          **Shane Wax (N.Y. 5347695)**[58]
                                          swax@leichtmanlaw.com
                                          **Alexander Katz (N.Y. 5922737)**[59]
                                          akatz@leichtmanlaw.com
                                          Leichtman Law PLLC
                                          185 Madison Ave, Floor 15
                                          New York, New York 10016
                                          Tel: (212) 419-5210

                                          ***Attorneys for Plaintiff***
                                          ***Prepared Food Photos, Inc.***

---

[57] Pro hac vice admission. Doc. 35.                    [59] Pro hac vice admission. Doc. 52.

[58] Pro hac vice admission. Doc. 85.

25