UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Prepared Food Photos, Inc., | No. 3:22-cv-37-TAD-KDM |
| *plaintiff,* | Judge Terry A. Doughty |
| versus | Magistrate Judge Kayla D. McClusky |
| Epic Solutions, LLC, et al., | |
| *defendants.* | |

### DEFENDANT EPIC SOLUTIONS' *CORRECTED* OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant Epic Solutions, LLC ("Epic"), files this response to Prepared Food's Motion to Compel. Before addressing the substantive arguments, Epic would like to address some, but not all, of Plaintiff's assertions made within its motion which do not accurately reflect Epic's representations in this litigation or document productions. Undersigned counsel assumes those contentions are due to a misunderstanding or a result of miscommunication between the parties. Some of those representations are as follows:

Plaintiff accuses Epic of failing to produce documentation identifying the source of the subject photographs and a limited number of advertisements.[1] [R. Doc. 134-45 at 6]. However, Epic provided two affidavits identifying the source of its photograph collection, and later confirmed in discovery responses that ShoptoCook ('STC") provided webhosting services for all

---

[1] Prepared Food's assertions are flawed because it misunderstands the nature of accepted stock photo house practice. Stock photo houses have two licensing models. One is "royalty free" images and the other is "rights manage" images. Creators of advertising often use royalty free images for commercial purposes. The reality is that when a royalty free user is using hundreds of images through a subscription there is no compelling reason to keep precise records because the nature of the royalty free license relieves the subscriber from having to track each individual image. As long as the subscriber pays the monthly fee to a subscription service it can use any images on the website, and as a practical matter, there is little incentive to keep records of images from a royalty free stock house because of the perpetual and unlimited nature of the license.



Defendants, as well as photographs coupled with recipes to be incorporated into advertising. [R. Doc 134-19, para. 10 and R. Doc. 140-3 and Exhibit 1 (Defendant Epic's Supplemental Answers to Plaintiff's First Set of Interrogatories). Epic explained that it routinely deleted its ad proofing after one year and only saved the ad proofing for the named Grocer Defendants in 2021 when it received notice of the alleged copyright infringements. [R. Doc. 134-19 at para. 29.].

Plaintiff maintains that Epic claims it had no copies of advertisements it produced for its customers from 2017-2022 [R. Doc. 134-45, at 9 citing Wax Decl., at 5, n.2]. However, Epic has consistently acknowledged that it did have responsive documents that only it could produce, being the ad proofing created for and on behalf of each of the Grocer Defendants because it was contained within Epic's proprietary software. [R. Doc. 134-19, paras. 16 and 21 and Exhibit 2. To clarify that point, Epic provided supplemental discovery responses. *Id.* There is no evidence to support Prepared Food's allegations that these productions were designed to be deceptive, as all Defendants have consistently maintained in hearings and in writing that Epic had the sole capability to produce copies of the advertising via their proprietary ad proofing software.

### A. <u>Plaintiff's Motion to Compel Should be Denied</u>

#### 1. <u>Financial Documents Related to Infringing Activity</u>

Plaintiff seeks additional financial documents from Epic created in the ordinary course of business, from 2017 to the present date. [R. Doc. 165 at 20]. Epic acknowledges that this Court previously ordered documents showing Epic's revenue and profits earned, both directly and indirectly, from its use and distribution of the subject Photographs to any of Epic's clients. … [R. Doc. 122 at 3]. However, this Court limited production of financial information to the years 2017-2022 and limited responsive financial documents to those revenue and profits earned *from it use and distribution of the subject Photographs.*" *Id.*

Plaintiff previously identified the subject Photographs in advertising created on behalf of the Grocer Defendants, but alleged there might be more infringements. Thus, Epic worked to compile this information as it related to each of those clients, whom Plaintiff alleges Epic profited from in using and/or distributing the subject Photographs. In response to that February 2024 Order, Epic produced in discovery more detailed financial information, related to the revenue and profits earned directly and indirectly from each of the Grocer Defendants. Epic 007725-007748. This information provides Plaintiff information sufficient to calculate its damages, while recognizing the need to keep discovery "proportional to the needs of the case" by balancing Epic's need to protect proprietary information that is not relevant to this litigation. Fed. R. Civ. P. 26(b)(1). In fact, "a court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 225–26 (N.D. Tex. 2016). Here, Epic maintains that the wholesale production of Epic's revenue and profits for all clients, regardless of whether those clients received the subject photographs, far exceeds the proportionality test. Likewise, this Court has never previously ordered financial documents to be produced to present day, and this request also exceeds the proportionality requirement. Epic has numerous clients who are not involved in this suit and to require production of all its financial records would far exceed the needs of Plaintiff.

### 2. Relevant Agreements and Communications

Plaintiff alleges that Epic has not produced any relevant unredacted agreements and communications, including agreements with Metro or ShoptoCook ("STC"). [R. Doc. 134-45 at

10]. Plaintiff seeks agreements related to any entities from which Epic received photographs. Epic previously promised to produce and did produce in May 2024 responsive documents between Epic and STC. Epic previously produced Epic 7784-7791, which contains the STC Umbrella Agreement and Retailer Program. Epic continues to search for any additional responsive documents related to STC and will produce those documents if additional searches locate responsive information. Epic previously produced Epic 249-262, consisting of the agreement between Epic and Metro Creative Graphics, the welcome letter from LSA Creative, along with invoices from LSA to Epic. Further, Epic previously produced the subscription agreement between Metro Creative Graphics and Epic without redactions. Epic 263-264. Finally, Epic previously produced the terms and conditions related to Epic's subscription with LSA Creative Outlet. Epic 7685-7689. Epic acknowledges that it may no longer have some documents directly responsive to these requests, but Epic is checking for additional documents which may establish the payments for subscription photograph services Epic used in connection with its advertising during the relevant period and will provide those documents if they can be located.

Epic acknowledges that it has separate indemnification agreements with each of the Grocer Defendants. However, Epic objects to the production of these agreements as they are not relevant to any issue in this litigation, whether direct copyright infringement or contributory copyright infringement, nor proportional to the needs of the case, as required by Fed. R. Civ. P. 26(b)(1). Epic admits it created the advertising at issue in this litigation for each of the named Grocer Defendants and admits it has separate indemnification agreements for each Grocer Defendant for advertisements Epic creates on behalf of each Grocer Defendant. However, these agreements are not relevant to claims of direct or contributory copyright infringement. These agreements likewise contain standard boilerplate language and do not reference this litigation, thus are not relevant nor

discoverable. See *BPP Retail Properties, LLC v. N. Am. Roofing Servs., Inc.*, 300 F.R.D. 59, 62 (D.P.R. 2014); See also *In re Zicam Cold Remedy Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 09-MD-2096-PHX-FJM, 2010 WL 4715951, at *1 (D. Ariz. Nov. 15, 2010).

Plaintiff seeks all agreements or financial arrangements with any of the Third-Party Intermediaries [R. Doc. 165 at 23]. Epic objects to the wholesale production of these agreements or financial arrangements, to the extent that they even exist, as these requests far exceed the scope of this litigation and are not proportional to the needs of this case, which only involves Epic and four Grocer Defendants. Wholesale production of financial documents, without allowing any redactions, would identify every customer of Epic and provide detailed confidential information related to Epic's entire business model about so much more than the advertising fees and profits earned by Epic directly and indirectly from allegedly using the subject photographs. This Court must strike a balance to allow Plaintiff to obtain needed documents, while also recognizing certain limits to protect Defendant Epic. Thus, Epic asks this Court to balance the needs of both parties when address this discovery dispute.

Plaintiff suggests that Epic has only produced "self-selected communications that relate to specific photographs" in violation of this Court's previous orders, but this assertion is not true [R. Doc. 165 at 15-16]. Instead, Epic previously produced communications responsive to this lawsuit, in that it produced the entire ad proofing communications between Epic and each Grocer Defendant, discussing the creation of advertising and marketing. Further, Rick Malone's affidavits confirm that Epic has a policy of generally communicating with all customers through the ad proofing software or by telephone and confirming Epic does not have additional responsive communications to produce. R. Doc 140-3, at paras. 30-31 and R. Doc. 134-19, at paras. 18-22, 30-31-33. This Court's October 31, 2023, order mandated that "Defendant Grocers are ORDERED

to produce all communications discussing use of the subject photographs-be they via email, text, vendor interface, or otherwise-between (a) Defendant Grocers and Defendant Epic; (b) Defendants Grocers and Multi-Ad and (c) between Defendant Grocers and any thirty parties….” [R. Doc. 111 at 5] This Court went on to state that "Defendant Epic is ORDERED to make productions of communications in line with the comparable production Defendant Grocers have been ordered to undertake above." *Id*. at 15. Epic has complied with this Court's orders to the best of its ability. While the parties have interpreted this Court's order differently, it is also evident that Epic has made considerable efforts to comply with this Court's previous orders to the best of its ability.

Plaintiff asserts that Epic's email search as ordered by this Court were "obviously perfunctory and insufficient." [R. Doc. 165 at 16]. This Court specifically ordered Epic "to conduct a search term review of emails from November 1, 2016 to June 1, 2017 for terms "AdLife," "Prepared Foods," "terminate," "cancel," "end," as well as any abbreviations that may have been used for AdLife or Prepared Foods, and other related phrases." [R. Doc. 120 at 4.]. Epic complied with this Court's January 25, 2024 Order, using the Court's search terms to conduct a complete search for communications and provide supplemental discovery responses related to those searches and described how they were performed. Exhibit 3.

Undersigned counsel acknowledges that our office agreed to request that Epic perform additional searches for several additional terms on March 25, 2024 and made a request to Epic on the same date. Undersigned counsel will offer to provide these attorney client privileged emails for in camera inspection, to preserve the privilege, but to establish this information was requested, if this Court would find those documents instructive. However, because Epic maintains the searches already performed complied with this Court's order, going far beyond what the Court ordered regarding search terms, Epic declined to voluntarily conduct additional searches as

requested by Plaintiff. If this Court finds that additional searches are necessary, Epic will comply with any Order of this Court related to new search terms.

Addressing the alleged failure to provide verified responses to Plaintiff's Interrogatories, undersigned counsel explained that it is customary in our practice for the party issuing discovery to provide a verified response page for the responding party to complete. Because Plaintiff did not provide a verified response page, verified response were not offered. In response, Prepared Food's counsel demanded Defendants draft and complete verified responses. Undersigned counsel agreed and requested consent to allow Defendants to sign a verified responses at each of their depositions. Counsel for Prepared Food agreed to submit our request to their colleagues, and only confirmed during a phone conference on May 21, 2024, after this motion was filed, that they would demand each verified response be provided as soon as possible. Since that date Defendants have completed all but one verified response and will submit the final response imminently.

### 3. Other Documents

In Plaintiff's Motion to Compel, Plaintiff improperly seeks an order from this Court to expand and compel production of numerous discovery documents that this Court previously limited to the time frame of March 1, 2017 through December 31, 2022, finding "Prepared Foods is not entitled to use discovery in this matter to pursue a fishing expedition." [R. Doc. 122 at 3]. For instance, regarding Prepared Food's demand that Epic provide copies of all grocery advertising circulars created *for any of its customers* between 2017 and present, this Court has previously denied this request. *Id.* at 2-3. Further, Epic has represented to this Court that it does not retain the advertising proofs created for each customer for more than one year. *Id.* at 3. Beginning in 2021 when Epic received the letters addressing the named Grocer Defendants, Epic began preserving the advertising proofs *for those Grocer Defendant customers only*. Thus, Plaintiff is acutely aware

there are no additional advertising documents to produce dating back to 2017.

Plaintiff contends that this Court ordered production of all 2023 ad proofs in the October 2023 order. [R. Doc. 111]. However, in March 2024, undersigned counsel first addressed this assertion through an email exchange with opposing counsel, as the parties do not agree. Undersigned counsel's review of the Court's June 6, 2023 transcript confirms that the Court has consistently limited the responsive period as being from March 1, 2017 through December 2022 and was unable to locate anything ordering production of 2023 ad proofs in the hearing transcript. Further, on page 10 of the Court's October 31st order, it indicates that it is discussing compliance with the Court's June 6th order, addressing "physical copies of photographs" and goes on to discuss at length both Epic and Plaintiff's photo image libraries. *Id.* The Court goes on to say, on page 12, that "to avoid any question as to what should be produced Defendant Epic is ordered to produce the entirety of its photo library in use from January 1, 2021 to December 31, 2022." *Id.* This photo library was produced. From undersigned counsel's review of the Court's order, that portion of the order appears to be addressing the photo library in use from January 1, 2021 to December 31, 2022 and not copies of Epic's ad proofing software from 2023. Finally, until March 21, 2024, undersigned counsel does not recall being asked to produce Epic's advertising proofs from 2023 or the Court addressing that issue in the most recent hearings. Epic previously produced all ad proofs within Epic's possession, from March 1, 2017 through December 31, 2022. If undersigned counsel has misunderstood this Court's ruling, it was due to a genuine dispute as to the meaning of the Court's order and is not the result of willful conduct.

### B. Plaintiff's Request for Rule 37(b) Sanctions Should be Denied

For the second time during this litigation, Prepared Food has leapt to advocating the most draconian sanctions against both Epic and their counsel but has not demonstrated any of the

behavior that permits those sanctions. [R. Doc. 94].

In addressing litigation ending sanctions (or death penalty sanctions), "[t]he United States Court of Appeals for the Fifth Circuit has explained that its 'case law imposes a heighted standard … .'" *Keplar v. Google, LLC*, No. 3:22-CV-2281-B, 2024 WL 1018525, at *9 (N.D. Tex. Mar. 8, 2024). Further, to impose "a lesser sanction, we broadly require the district court to determine the sanctions are 'just' and 'related to the particular 'claim' which was at issue in the order to provide discovery." *Id.* (quoting *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019)). Importantly, "[t]he sanction imposed should be the least severe sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances." *Id.* See *Smith*, 685 F.3d at 488-90."

This court must make four findings to "to levy a litigation-ending sanction for a discovery violation". *Keplar,* WL 1018525, at *9. Those four findings, as discussed in *Keplar,* are as follows:

> First, the violation reflects bad faith or willfulness. Second, the client, not counsel, is responsible for the violation. Third, the violation substantially prejudiced the opposing party. Fourth, a lesser sanction would not substantially achieve the desired deterrent effect." *Vikas WSP, Ltd. v. Econ. Mud Prod. Co.*, 23 F.4th 442, 454 (5th Cir. 2022) (cleaned up); accord *Nissho-Iwai Am. Corp. v. Kline,* 845 F.2d 1300, 1304 (5th Cir. 1988) ("We have repeatedly emphasized that a dismissal with prejudice is a 'draconian' remedy, or a 'remedy of the last resort,' to be employed only when the failure to comply with the court's order results from willfulness or bad faith rather than from an inability to comply." *Id.*

In the present case, Prepared Food accuses but does not provide substantive evidence of Epic's bad faith or willfulness. Second, Prepared Food has attacked Epic's counsel personally as being responsible for any alleged deficiencies, which Epic denies. As previously offered above, undersigned counsel can provide to this Court, for in camera inspection, privileged emails and other documentation demonstrating good faith efforts on the part of both Epic and Epic's counsel to comply with all orders of this Court. Third, Prepared Food has not been substantially prejudiced

by Epic and has not presented any tangible evidence of prejudice. Finally, if this Court determines that Epic's actions have been sanctionable, which Epic has argued against, the Fifth Circuit instructs the Court should apply "the least severe sanction adequate to achieve the proper functions of Rule 37…" *Keplar* at 9.

## Conclusion

For the reasons set forth in opposition to the motion to compel, in addition to the attached exhibits, Defendant Epic Solutions asks this Court to deny Plaintiff's Motion to Compel, finding it is not well founded.

Respectfully submitted:

*s/ Karen E. Futch*

**GEORGE D. FAGAN (#14260)**
**KAREN E. FUTCH (#31164)**
**Leake & Andersson LLP**
1100 Poydras Street, Suite 1700
New Orleans, Louisiana 70163
Main:  (504) 585-7500
Fax:   (504) 585-7775
Email: *gfagan@leakeandersson.com*
       *kfutch@leakeandersson.com*
***Attorneys for Defendant, Epic Solutions***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been delivered to all counsel of record, by depositing a copy of same in the United States mail, first class postage prepaid at their last known address of record, or by electronic mail, or by ECF Notice, or by facsimile transmission or by hand delivery today, **May 30, 2024**.

*s/Karen E. Futch*

KAREN E. FUTCH