UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| Prepared Food Photos, Inc., <br>                 *plaintiff,* <br> versus <br> Epic Solutions, LLC, et al., <br>                 *defendants.* | Civil Action No. 22-cv-00037 <br><br> District Judge Terry A. Doughty <br><br> Magistrate Judge Kayla D. McClusky <br><br> **Jury Trial Demanded** |

**<u>Reply Memorandum in Further Support of Plaintiff's Motion to Compel
and for Sanctions Under Fed. R. Civ. P. Rule 37</u>**

**Andrew T. Lilly (La. 32559)**
Lilly PLLC
4907 Magazine Street
New Orleans, Louisiana 70115
t: (504) 812-6388
e: andrew@atlpllc.com

**and**

**David Leichtman (N.Y. 2824480)**
e: dleichtman@leichtmanlaw.com
**Shane Wax (N.Y. 5347695)**
e: swax@leichtmanlaw.com
**Devin Newman (N.Y. 5813316)**
e: dnewman@leichtmanlaw.com
Leichtman Law PLLC
185 Madison Ave, Floor 15
New York, New York 10016
t: (212) 419-5210

*Attorneys for Plaintiff
Prepared Food Photos, Inc.*

i

# **TABLE OF CONTENTS**

I. Issues Defendant Fail to Address or Contest and Therefore Concedes ................. 1

    a. Documents Concerning Epic's Financial Relationship with AWG Are Relevant ........ 1

    b. Epic Must Produce the Documents Underlying its Made-for-Litigation Financial Summaries ................................................................ 2

    c. Epic Must Produce All Missing Communications ................................ 3

II. Issues Addressed by Epic Fail to Excuse Its Deleterious Discovery Conduct ....... 4

    a. Epic's Source of PFP's Photographs ........................................... 4

    b. Advertisements Created by Epic ................................................ 5

    c. Financial Documents ............................................................ 6

    d. Relevant Agreements ........................................................... 6

    e. Third-Party Intermediaries ..................................................... 8

III. Epic Should be Sanctioned for its Continued Non-Compliance ............................. 9

IV. Conclusion ..................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*C&C Jewelry Mfg. v. West*, Case No. 09-CV-01303, 2011 U.S. Dist. LEXIS 63688,
   2011 WL 2433817 (N.D. Cal. June 13, 2011) .................................................................................. 7

*Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 562 F. App'x 182 (5th Cir. 2014),
   *cert. denied*, 134 S. Ct. 2733 (2014) ................................................................................................. 3

*Hackett v. Hous. Auth. Of San Antonio*, 750 F.2d 1308 (5th Cir. 1985),
   *cert. denied*, 474 U.S. 850 (1985) ..................................................................................................... 3

*Hermosilla v. Coca-Cola Co.*, Case No. 10-CV-21418, 2010 U.S. Dist. LEXIS 139020
   (S.D. Fla. Dec. 27, 2010) ..................................................................................................................... 7

*Kaplan v. S.A.C. Capital Advisors, L.P.*, Case No. 12-CV-9350, 2015 U.S. Dist. LEXIS 135031
   (S.D.N.Y. Sept. 10, 2015) .................................................................................................................... 8

*Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220 (N.D. Tex. 2016) ....................................... 9

*U.S. v Smith*, 822 F.3d 755 (5th Cir. 2016). ............................................................................................... 3

**Rules**

Fed. R. Evid. 106 ............................................................................................................................................ 6

Fed. R. Evid. 1006 ................................................................................................................................ 2, 3, 9

**May it please the Court:**

Plaintiff Prepared Food Photos, Inc., ("PFP") respectfully submits this Reply in further support of its Third Motion to Compel and Second Motion for Sanctions (R. Doc. 134).

## Preliminary Statement

Epic has produced little more than made for litigation financial documents and incomplete agreements between itself and selected parties. Epic continues to tell inconsistent stories about the source of PFP's photographs in Epic's library. Plaintiff has not received any agreements or documents between Epic and AWG who is supposedly responsible for billing the Grocer Defendants on Epic's behalf for the services Epic provides that are at the crux of this litigation. Agreements between Epic and any third party which supposedly gave Epic a license to use PFP's photographs have also either not been produced, have been produced only in redacted form, or are incomplete or illegible. As Epic continues to create infringing advertisements for its clients and itself to this day, Epic's protests over its continuing obligation to produce relevant documents is meritless. (*See* 5/2/24 Wax Decl., ¶¶ 72, and Ex. 44, R. Doc. 134-44).

Additionally, Epic's production of communications is woefully incomplete. It has not produced responsive communications between Epic and any of the Grocer Defendants, Infringing Non-Party Epic Customers, Multi-Ad, STC, Third-Party Intermediaries (such as AWG or AGI), and between Epic and representatives of the Grocer Defendants, such as their insurers.

## Argument on Reply

**I. Issues Defendant Fail to Address or Contest and Therefore Concedes**

As a threshold matter, in its opposition, Epic fails to respond on a number of issues and therefore has conceded the documents are relevant and should be produced.

a. Documents Concerning Epic's Financial Relationship with AWG Are Relevant

Epic's Opposition fails to address its relationship with AWG. Epic makes a blanket objection to the production of any agreements or financial documents between itself and any

1

of the Third-Party Intermediaries, claiming that "these requests far exceed the scope of this litigation and are not proportional to the needs of this case which only involves Epic and four Grocer Defendants." Not so. Counsel for Defendants has asserted that the financial relationship between Epic and the Grocer Defendants is processed through AWG. (*See* 5/2/24 Wax Decl., R. Doc. 134-1 at ¶ 51, and Exs. 32 and 33, R Doc. 134-33, R. Doc. 134-34). Epic cannot claim that the agreements and financial documents between Epic and AWG are not relevant when it admits that Epic bills the Grocer Defendants through AWG. Without receiving these documents, Plaintiff has been, and will continue to be, prejudiced in calculating its damages.

    b. <u>Epic Must Produce the Documents Underlying its Made-for-Litigation Financial Summaries</u>

Epic also fails to address or explain the inconsistencies in its incomplete production of financial documents. Epic has provided no reason for why it continues to produce made for litigation financial summaries instead of its ordinary course of business records. (Fed. R. Evid. 1006). Specifically, Epic's Opposition makes no effort to reconcile the differences between its "Exhibit G," filed with the Court on September 23, 2023, estimating Epic's income from the Grocer Defendants, and the 24 single pages of documents it produced supposedly showing the revenue and costs attributed its sales to each Grocer Defendant. (*See* Epic's "Exhibit G" R. Doc. 107-7; 5/2/24 Wax Decl., R. Doc. 134-1 at ¶ 61, and Ex. 40, R. Doc. 159-2). Epic fails to address how these two sets of documents – which both claim to show the revenue of the Defendants – can be so wildly inconsistent. No underlying business record documents have ever been produced. Epic should be ordered once again to produce "sales revenue information in line with the comparable production Defendant Grocers have been ordered to undertake," namely "all records" of Epic's "total sales and income from March 2017 through December 31, 2022," meaning "complete documents, data, and related information concerning potential damages in this case." (Oct. 31, 2023 Order, R. Doc. 111, at 8-9, 17). It should be sanctioned for not complying with the Court's clear directive on this point.

2

Furthermore, as Plaintiff has now discovered both additional infringements through to the present and infringements by Epic's other customers these records should be produced for <u>all</u> Epic customers – not just the Grocer Defendants – and for all time periods from March 2017 through the present. (Plaintiff's First Amended Complaint ("FAC"), R. Doc. 154 ¶ 129 and Ex. 3-C, 8-E, 12-C, 20-D, 31-C, R. Docs. 147-6 at 17-20, 147-1 at 18-21, 147-15 at 17-20, 147- 23 at 15-16, 147-31 at 19-24); *see also* Declaration of Shane Wax, dated June 5, 2024 ("Wax 6/5/24 Decl."), at Exs. B-1–B-2 (showing continuing infringement by Epic for purposes of marketing its own advertising services).

Instead of producing its actual business records, Epic states that it "**worked to compile**" information related to just the Grocer Defendants. (R. Doc. 171 at 3) (emphasis added). But the Court did not order Epic to "compile" anything. It ordered Epic to produce its actual business records. (R. Doc. 122 at 3). Epic continues to thwart its obligations to produce its actual records, including with third party customers. Epic cannot produce a summary without the underlying records. Rule 1006 requires the proponent of a summary to "make the originals or duplicates available for examination or copying, or both." The rule "conditions admissibility of such summaries on the proponent's making available the material underlying the exhibit." *Hackett v. Hous. Auth. Of San Antonio*, 750 F.2d 1308, 1312 (5th Cir. 1985), *cert. denied*, 474 U.S. 850 (1985); *see also Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 562 F. App'x 182, 186 (5th Cir. 2014), *cert. denied*, 134 S. Ct. 2733 (2014); *U.S. v. Smith*, 822 F.3d 755, 759 (5th Cir. 2016).

    c. <u>Epic Must Produce All Missing Communications</u>

Likewise, Epic does not adequately address the incompleteness of its communications or the inadequacy of its methods for locating the missing communications. Epic claims its production of ad proofs as to only the Grocer Defendants satisfied its burden to produce "any kind of communications" that were "responsive and relevant to the lawsuit," regardless of medium, including, specifically, internal communications, communications with the Grocer Defendants and communications with Multi-Ad or STC. (*See* Hearing Tr., R. Doc. 94-3 at 25-

3

30). Communications between Epic and the Grocer Defendants clearly took place outside of Epic's ad proofing platform. For example, the deposition of Adrien's principal owner revealed that communications between Epic and Adrien's regarding Plaintiff's April 23, 2021 letter do in fact exist, but none have never been produced by either Adrien's or Epic. (Palombo Tr., 5/2/24 Wax Decl., Ex. 43, R. Doc. 159-3, at 84:2-84:16).

Epic claims to have complied with the Court's Order to produce the results of its search terms, but fails to address Plaintiff's concerns. The searches conducted by Epic were extremely narrow in scope and only conducted on a *single* email of *one* employee. (*See* Epic's 2nd Supp. Responses to First RFPs, R. Doc. 134-8 at 3-4). The Court's October 2023 Order, required Epic to search "any abbreviations that may have been used for AdLife or Prepared Foods, and other related phrases." (*Id.* at 3-4). Epic did not perform a complete search for the predecessor names of Adlife or Prepared Foods, or other abbreviations of relevant entities.[1] Plaintiff also requested the search terms and method Epic used to search for all communications related to its unproduced communications with Third-Party Intermediaries such as "STC," "AWG," "AGI" and all related aliases in compliance with the Court's previous orders to describe the results, search method utilized, and individuals conducting the search. (*See* Oct. 31, 2023 Order, R. Doc. 111, at 5, and Jan. 25, 2024 Order; R. Doc. 120, at 4).

II. **Issues Addressed by Epic Fail to Excuse Its Deleterious Discovery Conduct**

   a. Epic's Source of PFP's Photographs

Epic intentionally conflates Plaintiff's request for it to identify the source of PFP's photographs in Epic's library. Epic has not described with any specificity where it got each of Plaintiff's photographs. Initially, Epic made vague assertions by initially claiming it got all of PFP's photographs from Multi-Ad. (Aug. 11, 2023 Affidavit of Rick Malone ("2023 Malone Affidavit"), R. Doc. 140-3). Now it claims that STC may have offered PFP's photographs to

---

[1] This includes: "Bad-Adz;" "PFP;" "MultiAd;" "LSA;" "Local Search;" "Metro;" "Creative;" "Graphics;" "MCG; "MCC;" "Kwikee;" "cease;" "conclude;" "cut off;" "discontinue; "expire;" and "restrict." (*See* 5/2/24 Wax Decl., R. Doc. 134-1 ¶ 39, Ex. 25, R. Doc. 134-26 at 3).

4

Epic, but STC refutes that it ever gave PFP's photographs to Epic. (*See* Epic's Letter to Plaintiff, R. Doc 134-27 at 2 and 5/2/24 Wax Decl., R. Doc. 134-1 at ¶ 46, Ex. 29, R. Doc. 134-30). Vague assertions that Epic received PFP's photographs pursuant to a license, which Epic has never produced, are insufficient. To the extent that Epic knows from where it received <u>each</u> of PFP's photographs Epic should be forced to produce all documents that support or refute its position. Moreover, Epic's claim it destroyed its previous library is obviously false, since it continues to use PFP's photographs to this day in both its advertisements for its customers and on its own behalf. (Wax 6/5/24 Decl. at ¶ 7 and Exs. B-1–B-2).

Epic also continues to conflate advertising proofs and actual physical advertisements with Epic's photo library. Specifically, in response to Plaintiff's document request for "all proofs from 2021, 2022, and 2023," as well as 2024 (now that the continuing infringements have been discovered), for all of Epic's customers (Oct. 2023 Order, R. Doc. 111, at 12), Epic points to a later Court Order where Epic was "ordered to produce the entirety of its photo library in use from January 1, 2021 to December 31, 2022." Epic's response relates to a different issue and Epic is being far "too cute" because an order to produce ad proofs and an order to produce Epic's photo library at a particular time (which was based on Epic's own conflicting affidavits) are completely different things. Regardless of previous Orders, Plaintiff now has asserted infringements of advertisements created by Epic in 2023 and 2024 containing PFP's photographs, therefore necessitating document production through to the present. (Plaintiff's FAC, R. Doc. 154 at ¶ 129 and Ex. 3-C, 8-E, 12-C, 20-D, 31-C, R. Docs. 147-6 at 17-20, 147-1 at 18-21, 147-15 at 17-20, 147- 23 at 15-16, 147-31 at 19-24 and Wax 6/5/24 Decl. at ¶ 7 and Exs. B-1–B-2).

b. <u>Advertisements Created by Epic</u>

While Epic has produced certain advertising proofs, PFP has always and continues to seek the actual advertisements Epic created for its customers. In response to Plaintiff's demand for advertisements from 2017 to present, Epic's claim that "it routinely deleted its ad proofing after one year and only saved the ad proofing for the named Grocer Defendants

5

in 2021 when it received notice of the alleged copyright infringements." (R. Doc. 171 at 2 and 2023 Malone Affidavit, R. Doc. 134-19 at ¶ 34.) This does not answer the question of whether Epic possesses copies of any other grocery advertising circulars Epic created for any of its customers between 2017 and the present. Epic has acknowledged, as early as November 25, 2019, that it was put on notice of PFP's claims of copyright infringement. (Letter from Epic's counsel, R. Doc. 166-8). Epic therefore had a duty starting in 2019 to keep the advertisements it created. Epic must either produce or make a statement in writing declaring once and for all that it does not have a single advertisement it created for any of the Grocer Defendants or any other customer.

    c. <u>Financial Documents</u>

Epics claims it understood the Court's February 8, 2024 Order, but in fact, has ignored what the Court ordered it to produce. Epic's Opposition quotes the Court as saying, "Epic acknowledges that this Court previously ordered documents showing Epic's revenue and profits earned, both directly and indirectly, from its use and distribution of the subject Photographs to any of Epic's clients.... [R. Doc. 122 at 3]." (R. Doc. 171 at 2). However, that is a misleading use of ellipses, as the full quote from the Court continues: ". . . including non-party grocers, would be relevant to Prepared Foods claims against Epic." (Feb. 8, 2024 Order, R. Doc. 122 at 3).

In addition to the point made above about the inadequacy of Epic's "compiled" summaries, Plaintiff alleges Epic profited off of many more clients using Plaintiff's photographs than just the Grocer Defendants. The FAC includes many examples showing Epic was made aware of problems with its library since 2019, and its claim that it preserved documents "for those Grocer Defendant customers only" is thus made in bad faith. (*See* FAC R. Doc. 154 ¶¶ 113, 116 and R. Doc. 171 at 7).

    d. <u>Relevant Agreements</u>

Epic's production of agreements also fails to comply with Fed. R. Evid. 106. Epic points to the documents it produced regarding STC as an example of its compliance. But

6

those documents are, at best, incomplete, redacted and fail to address in what way Epic is a so-called licensee under its agreement with STC. Epic's documents produced related to its relationship with Multi-Ad and LSA are similarly insufficient. In addition to being improperly redacted, the documents it points to – Epic 249-262, Epic 263-264 and Epic 7685-7689 – are in some cases illegible, are from random monthly dates, and do not contain any reference to being able to use PFP's photographs beyond the term of the license. (Wax 6/5/24 Decl. at Exs. C-1–C-3).

"Epic acknowledges that it has separate indemnification agreements with each of the Grocer Defendants," but it refuses to produce them, arguing that "they are not relevant to any issue in this litigation, whether direct copyright infringement or contributory copyright infringement." (R. Doc. 171, at 4). Epic relies on two cases that are inapposite as they do not deal with claims of infringement. (*Id.*, at 5). Epic does not attempt to address *C&C Jewelry Mfg. v. West*, Case No. 09-CV-01303, 2011 U.S. Dist. LEXIS 63688, 2011 WL 2433817 (N.D. Cal. June 13, 2011), which held that indemnification agreements are relevant to infringement claims because they bear on the question of willfulness. (*See* Pl.'s Brief, R. Doc. 137-1, at 20). *See also Hermosilla v. Coca-Cola Co.*, Case No. 10-CV-21418, 2010 U.S. Dist. LEXIS 139020, at *14 (S.D. Fla. Dec. 27, 2010) (copyright infringement defendant ordered to produce indemnification agreements).

Moreover, the cases cited by Epic did not involve the same defenses at issue here, and do not involve downstream customers (Grocer Defendants) blaming their supplier (Epic) and asserting affirmative defenses based on Epic's primary liability and its duty to indemnify. The Grocer Defendants all assert the exact same affirmative defenses, including, as relevant here:

- **Nineteenth:** alleging that Plaintiff's damages "should be barred or alternatively reduced by the percentage of fault, negligence and /or breach of duties on the part of any person whose acts, conduct, errors or omissions caused or contributed to the damages, losses or relief sought herein…"

7

- **Twentieth:** alleging that Plaintiff's "damages were proximately or predominantly caused or sustained because of intervening and/or superseding acts, negligence and/or fault of" third parties over whom the Grocer Defendants have "no right of control."

- **Twenty-First:** alleging that any damages "were caused by parties or non-parties for whose actions, conduct, fault, negligence and/or omissions the [Grocer] Defendants are not responsible nor liable, whether in whole or in part."

- **Twenty-Second:** Asserting "all rights to indemnity, contribution and/or offset against any other entity or individual not named as a defendant in Plaintiff's Complaint."

(Piggly Wiggly's Answer, R. Doc. 26, at 12-13; Mac's' Answer, R. Doc. 27, at 11-13; Sullivan's' Answer, R. Doc. 29, at 12-13). Courts usually grant discovery into indemnification agreements between co-defendants. *See Kaplan v. S.A.C. Capital Advisors, L.P.*, Case No. 12-CV-9350, 2015 U.S. Dist. LEXIS 135031, at *8 (S.D.N.Y. Sept. 10, 2015) (collecting cases).

  e. Third-Party Intermediaries

Epic asserts that its agreements and financial documents with Third-Party Intermediaries are not relevant. Epic itself has claimed that it bills the Grocer Defendants for its services through third parties, therefore these agreements are directly related to Plaintiff's damages. (*See* 5/2/24 Wax Decl., R. Doc 134-1 at ¶ 51, Ex. 32, R. Doc 134-33 at 3-4, and Ex. 33, R. Doc 134-34 at 3). Without supporting documents, Plaintiff cannot be expected to accept the word of Epic's counsel. Plaintiff, having been forced to serve subpoenas on AWG, AGI and STC because of Defendants' intransigence, has reason to believe based on information from counsel for AGI and STC, that AGI does not offer centralized billing services for Epic's advertising, that STC did not provide Epic with any of Plaintiff's photographs, and that certain Grocer Defendants might be paying Epic directly despite Epic's assertions to the contrary. (*See* Wax 6/5/24 Decl. at Ex. A (Email from AGI's counsel disavowing what Epic's counsel said); 5/2/24 Wax Decl., at ¶ 46 and Ex. 29, R. Doc. 138-1 at 2; *id.*, at ¶ 51 and Ex. 32, R. Doc 134-33 at 3-4, and Ex. 33, R. Doc 134-34 at 3).

Additionally, Epic's assertion that "Wholesale production of financial documents, without allowing any redactions," would somehow compromise its business model is

8

baseless. (R. Doc. 171 at 5). Aside from the fact that Epic has never even offered to produce its agreements or financial records with any Third-Party Intermediaries with redactions, any concerns Epic has about its confidential information are adequately addressed and covered by the Protective Order, which specifically permits Epic to designate such documents as "Attorney's Eyes Only," (Amended Protective Order, R. Doc. 93 at 2).[2] Therefore, Epic does not meet its burden for resisting this discovery. *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 225–26 (N.D. Tex. 2016). Epic should not be permitted to get away with making vague and unsupported statements that its proprietary information is at risk, without identifying any true risk, in order to avoid its discovery obligations.

### III.    Epic Should be Sanctioned for its Continued Non-Compliance

Epic's bad faith is demonstrated by: (1) its continued production of made for litigation financial documents without producing underlying documents, data or information as required under Federal Rule of Evidence 1006 despite multiple Court Orders to do so; (2) making assertions such as AWG is responsible for billing the Grocer Defendants and that STC provided Epic with a license but not producing the agreements and financial documentation between AWG and Epic or any purported license agreement Epic has with STC; and (3) refusing to provide "any kind of communications" that were "responsive and relevant to the lawsuit" as ordered in the Court's June 2023 Orders. Without these documents, Plaintiff has been and continues to be substantially prejudiced from fully ascertaining its damages and recovering from the harm caused by Epic's infringing activities. All of this has imposed large amounts of unnecessary costs to Plaintiff and deprived the Court of time and resources which should not have been necessary. Epic should be sanctioned for its willful non-compliance with the Court's Orders and the discovery rules in a manner that will eradicate such behavior in the future.

---

[2] The Amended Protective Order (R. Doc. 93) was drafted by Defendants' Counsel after Defendants unilaterally decided that the original Protective Order (R. Doc. 50) was inadequate, even though that was also drafted by Defendants' Counsel. (*See* R. Docs. 90-93; June 7, 2023 Hearing Tr., R. Doc. 94-3, at 59-62).

**Conclusion**

For the reasons set forth above and in PFP's moving papers, the Court should enter severe substantive sanctions against Epic under Rule 37(b)(2)(A), order it to pay PFP's expenses and attorneys' fees under Rule 37(b)(2)(C), and should order Epic to produce all documents referenced in Plaintiff's opening and reply papers on this motion.

Dated: June 5, 2024

*Respectfully submitted*,

 /s/ Andrew T. Lilly
**Andrew T. Lilly (La. 32559)**
Lilly PLLC
4907 Magazine Street
New Orleans, Louisiana 70115
t: (504) 812-6388
e: andrew@atlpllc.com

and

**David Leichtman (N.Y. 2824480)**[3]
dleichtman@leichtmanlaw.com
**Shane Wax (N.Y. 5347695)**[4]
swax@leichtmanlaw.com
**Devin Newman (N.Y. 5813316)**[5]
dnewman@leichtmanlaw.com
Leichtman Law PLLC
185 Madison Ave, Floor 15
New York, New York 10016
Tel: (212) 419-5210

*Attorneys for Plaintiff*
*Prepared Food Photos, Inc.*

---

[3] Pro hac vice admission. Doc. 35.

[4] Pro hac vice admission. Doc. 85.

[5] Pro hac vice admission. Doc. 124.