# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **PREPARED FOOD PHOTOS INC** | **CIV. ACTION NO. 3:22-00037** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **EPIC SOLUTIONS L L C ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM ORDER

Before the Court is a motion to compel and for sanctions [doc. #134] filed by Plaintiff Prepared Food Photos, Inc. The motion is opposed. [doc. #171]. For the following reasons, the motion to compel and for sanctions is GRANTED IN PART and DENIED IN PART, and Defendant Epic Solutions, LLC, is ORDERED to make the productions and pay the sanctions described herein.

## Background

This suit arises from alleged copyright infringement of photographs of food. First Amended Complaint [doc. #190]. Plaintiff Prepared Foods Photos Inc. ("Plaintiff") creates and licenses photographs of food. *Id.* Copyrights of these photos were allegedly infringed when the images were improperly used in advertisements by Epic Solutions LLC ("Defendant Epic"), various named grocery stores ("Defendant Grocers"),[1] and several "Infringing Non-Party Epic Customers" ("INPECs").[2] *See generally id.* Plaintiff filed an initial Complaint in this Court on

---

[1] These include Adrien's Supermarket, Inc., McDaniel Food Management and its affiliates, Piggly Wiggly South Opelousas, and Sullivan's Inc. *Id.* at pp. 4-5.

[2] These include Bill's Cash Saver, Naifeh's Cash Saver, Nocona Market Place LLC, Shopper Value Foods, Triple V, Inc., and Food Giant. *Id.* at p. 5.

January 5, 2022, Complaint [doc. #1], which it subsequently amended on June 12, 2024 ("the Amended Complaint"). First Amended Complaint [doc. #195].

There have been several discovery-related events in this case, including an initial motion to compel filed on February 22, 2023, M/Compel [doc. #64], and a hearing regarding that motion on June 6, 2023. June 6 Conference Minutes [doc. #87]. Plaintiff filed a second motion to compel and motion for sanctions on August 24, 2023 ("the Second Motion to Compel"), Second M/Compel [doc. #94], which this Court addressed on October 31, 2023 ("the October 31 Order"). October 31 Order [doc. #111]. The undersigned also held a discovery conference with the parties on January 25, 2024, which resulted in verbal orders for various productions ("the January 25 Conference"), January 25 Conference Minutes [doc. #120], and further orders for productions on February 7, 2024 ("the February 7 Order"). February 7 Order [doc. #122].

On May 2, 2024, Plaintiff filed a third motion to compel and second motion for sanctions seeking to compel various productions from Defendant Epic and impose sanctions for alleged failure to comply with this Court's previous orders. Third M/Compel [doc. #134]. Defendant Epic filed an opposition to the motion on May 28, 2024, [doc. #167], which it amended on May 31, 2024. Opposition to Third M/Compel [doc. #171]. Plaintiff replied to the opposition on June 6, 2024. Reply to Opposition to Third M/Compel [doc. #174]. After receiving leave of court to do so, Defendant Epic filed a sur-reply on June 11, 2024. Sur-Reply to Third M/Compel [doc. #183]. Pursuant to further leave of court, Plaintiff filed a sur-sur-reply on June 17, 2024. Sur-Sur-Reply to Third M/Compel [doc. #194].

Briefing is complete. Accordingly, the motion is ripe.

2

**Discussion**

I.   **Applicable Law**

The Federal Rules of Civil Procedure empower courts to sanction parties for failing to comply with discovery orders. FED. R. CIV. P. 37(b)(2). District courts have "broad discretion" in determining both whether to impose sanctions under Rule 37 and what form such sanctions may take.[3] *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 324 (5th Cir. 2023) (quotation omitted). Sanctions must be "just" and "related to the particular 'claim'" at issue in the discovery order. *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019).

II.  **Analysis**

Plaintiff's motion was initially filed on May 2, 2024. Third M/Compel [doc. #134]. It is apparent from the parties' briefings that some productions were made after the motion's filing. Furthermore, Plaintiff filed its Amended Complaint on June 12, 2024. To ensure the Court was up to date on the state of the relevant discovery requests, the undersigned gave Plaintiff leave to file a sur-sur-reply "to identify discovery requests **addressed in the instant Motion to Compel** which it contends remain outstanding." [doc. #182] (emphasis in original). As Plaintiff filed a sur-sur-reply, the undersigned refers to that document to determine which discovery requests necessitate review.

---

[3] Rule 37(b)(2) includes a non-exhaustive list of potential sanctions, which includes, *inter alia*, rendering default judgment against the disobedient party and treating the failure to obey the orders as contempt of court. *Id.*

*a. Invoices*

Plaintiff's first request is for production of Defendant Epic's "invoices to Mac's (2021-2024) and other customers (including Grocer Defendants and nonparties; 2017-present)." Sur-Sur-Reply to Third M/Compel [doc. #194, p. 4].[4]

The October 31 Order directed Defendant Epic to "make productions of sales revenue information" including "all records of their total sales and income from March 1, 2017, through December 31, 2022." October 31 Order [doc. #111, pp. 9, 17]. At the January 25 Conference, Plaintiff indicated that Defendant Epic billed Defendant Grocers "through one or more third-party intermediaries rather than directly." Memo in Support of Third M/Compel [doc. #165, p. 2]. These third-party intermediaries were identified as Associated Wholesale Grocers, Inc. ("AWG") and Associated Grocers Inc. ("AGI"). *Id.* at p. 3 n.5. At the conference, Defendant Epic was ordered to "produce documentation in pdf format showing total sales for all clients from March 1, 2017, to December 31, 2022, with sales and associated costs *attributed to specific buyers' associations and individual customers* to the extent such attribution is possible." January 25 Conference Minutes [doc. #120, p. 2] (emphasis added). The Court reiterated these directives in the February 17 Order, wherein the undersigned wrote that "documents showing Epic's revenue and profits earned, both directly and indirectly, from its use and distribution of [relevant images] to any of Epic's clients, including non-party grocers, would be relevant to Prepared Foods['] claims against Epic." February 17 Order [doc. #122, p. 3].

---

[4] While the identity of "nonparties" is left unspecified by Plaintiff in the sur-sur-reply, the undersigned understands this to mean Associated Wholesale Grocers, Inc. ("AWG"), Associated Grocers Inc. ("AGI"), and the INPECs. Application of this generalized label to further unnamed nonparties would exceed the reasonable needs of this litigation.

While production of invoices was never explicitly ordered, the information contained in invoices presumably relates directly to the information that *was* ordered produced. Accordingly, Defendant Epic is obligated to produce the information contained in any putative invoices or similar documents.[5] Furthermore, Defendant Epic has produced only a portion of the ordered material pertaining to Grocer Defendants and has not explained why it has failed to produce the remaining materials.[6] Defendant Epic has thus failed to complete the ordered production.

Defendant Epic is ORDERED to produce all invoices[7] submitted to Grocer Defendants, AWG, AGI, and the INPECs from March 1, 2017, through present within thirty (30) days of entry of this order.[8] If any documents are privileged or otherwise redacted, a privilege log will be submitted along with the production explaining the reason for withholding production of specific documents or redacting certain passages.[9] To the extent Defendant Epic does not

---

[5] This information may be produced in summary format, but Defendant Epic must make the original documents available for review and copying. *See* FED. R. EVID. 1006.

[6] Defendant Epic produced "invoices from 2018-2022" between Defendants Epic and Mac's on June 6, 2024. Sur-Reply to Third M/Compel [doc. #183, p. 2]. This production only partially complies with the October 31 Order as it does not include documents dating back to March 1, 2017. Defendant Epic has not indicated that documents from that date are unavailable, so they need to be produced or provide an explicit statement that they are unavailable. Moreover, the June 6 production addressed only two of the Defendant Grocers.

[7] During depositions, deponents for Defendants Adrien's and Piggly Wiggly's referred to "weekly statement[s]" provided by AWG. To avoid any confusion, the undersigned notes that the documentation contemplated by this order may not be labeled or referred to as an "invoice" in the regular course of business. However, any document serving the function of an invoice is subject to this order.

[8] The Amended Complaint alleges that Defendant Epic's infringing conduct continues into present. *See, e.g.*, First Amended Complaint [doc. #190, p. 27]. It is thus appropriate to order production of documents and information dating to the present.

[9] Documents and information produced pursuant to this memorandum order are subject to this Court's June 29, 2023, protective order. *See* June 29, 2023, Protective Order [doc. #93].

possess this information, it must indicate so in a discovery response that also describes its relevant document retention practices from March 1, 2017, to present.

Defendant Epic is FURTHER ORDERED to pay $3,500.00 into the Court's registry within fourteen (14) days of entry of this order.[10] This remedy is designed to enforce compliance with this Court's previous orders and provide Plaintiff with discoverable material to which it is entitled, all in a manner proportionate to the needs of this litigation.

b. *Documents Related to Non-Party Customers*

Plaintiff next requests production of Defendant Epic's "advertising circulars and financial documents related to its non-party customers." Sur-Sur-Reply to Third M/Compel [doc. #194, p. 4].

The undersigned first analyzes the request concerning advertising circulars before turning to the financial documents. Defendant Epic previously indicated that it has "access to all proofs from 2021, 2022, 2023." Malone Affidavit [doc. #94-9, p. 9]. Accordingly, the undersigned ordered Defendant Epic "to produce the entirety of its photo library in use from January 1, 2021, to December 31, 2022," in the October 31 Order. October 31 Order [doc. #111, p. 12]. Defendant Epic has maintained that "it routinely deletes all advertising after one year" and that it does not hold responsive advertisements produced for clients other than the Grocer Defendants. February 17 Order [doc. #122, p. 3]. As such, the undersigned previously denied Plaintiff's attempt to order production of the materials like those requested here. *Id.* New allegations of

---

[10] This Court indicated that, if Defendant Epic did not comply with the ordered production of sales revenue information in the October 31 Order, it must pay $300 per day into the Court's registry until it complied. October 31 Order [doc. #111, pp. 9, 17]. The Court recognizes Defendant Epic's partial compliance with this order. Additionally, the Court recognizes and acknowledges the substantial discovery demands of this matter, including numerous Rule 30(b)(6) depositions and productions by several entities.

ongoing infringement alter this assessment. Plaintiff is entitled to discover evidence of the alleged ongoing infringement in 2023 and 2024. Based upon Defendant Epic's representations to this Court, it would seem that the 2023 and 2024 proofs would also be available. The undersigned will thus order productions of 2023 and 2024 proofs but declines to impose sanctions as this production is ordered because of a material change in circumstances, not due to a failure to abide by a previous order. This production is limited to the Grocer Defendants and the INPECs named in the Amended Complaint. To order a larger production would not be proportionate to the needs of this litigation.

The undersigned now turns to the request for financial documents from non-party defendants. As discussed *supra*, the October 31 Order directed Defendant Epic to produce information concerning sales and revenue dating back to March 1, 2017. October 31 Order [doc. #111, p. 17]. The February 17 Order clarified that this directive included "documents showing [Defendant] Epic's revenue and profits earned . . . from its use and distribution of the subject Photographs [from clients] *including non-party grocers*." February 17 Order [doc. #122, p. 3]. However, no further productions concerning unnamed non-party grocers was ordered. As the INPECs are now identified, Plaintiff is entitled to information concerning revenue and profits Defendant Epic may have obtained from those entities through the alleged infringement. Again, this order is a result of new circumstances in this case and, thus, does not merit sanctions.

Defendant Epic is ORDERED to produce all advertising circulars produced for the INPECs between March 1, 2017, through present within thirty (30) days of entry of this order. Defendant Epic is FURTHER ORDERED to produce financial documents related to the INPECs, including but not limited to those pertaining to revenue and profits, from March 1, 2017, to present within thirty (30) days of entry of this order. To the extent Defendant Epic does not

maintain or no longer holds such materials, it must produce a discovery response indicating as much and describing its relevant retention policies for such materials.

    *c.*    *Business Documents Supporting Financial Summaries*

Plaintiff's third request is for "all business documents supporting its made-for-litigation summaries." Sur-Sur-Reply to Third M/Compel [doc. #194, p. 4]. The undersigned understands the "made-for-litigation summaries" to encompass "Exhibit G" produced in response to the Second Motion to Compel and the twenty-four-page summary produced in March 2024. *See* Memo in Support of Third M/Compel [doc. #165, p. 18]; *see also* Exhibit 38 [doc. #134-38].

Federal Rule of Evidence 1006 allows parties to use "a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court." FED. R. EVID. 1006. The rule also requires the proponent of such summaries to "make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." *Id.* Defendant Epic is obligated to comply with this rule.

Defendant Epic is ORDERED to make available original or duplicate versions of all documents used to create "Exhibit G" and the twenty-four-page summary produced in March 2024, for examination and copying by Plaintiff within thirty (30) days of entry of this order. The parties should confer among themselves to arrange this process. [11]

---

[11] In the past, the parties have been quick to request the Court's assistance in organizing basic discovery events such as depositions. The parties are reminded that they are expected to exhaust all reasonable efforts to organize the review process before turning to the Court for assistance. That said, a motion for *in camera* review of these documents is currently pending before the Court. The undersigned acknowledges that the specifics of compliance with this order will turn, in part, on resolution of that motion.

    *d.*    *Credit Card Statements*

Plaintiff next requests "complete credit card statements back to March 2017." Sur-Sur-Reply to Third M/Compel [doc. #194, p. 4]. Plaintiff does not point to any of this Court's previous orders as directing production of such documents. *See generally* October 31 Order [doc. #111]; January 25 Conference Minutes [doc. #120]; February 17 Order [doc. #122]. Nor does Plaintiff appear to establish why production of such documents is necessary. *See generally* Memo in Support of Third M/Compel [doc. #165]; Reply to Opposition to Third M/Compel [doc. #174]; Sur-Sur-Reply to Third M/Compel [doc. #194]. The undersigned declines to order the requested production absent presentation of a meaningful rationale for such action.

    *e.*    *ShopToCook Agreements*

Plaintiff's fifth request is for production of "ShopToCook [("STC")] agreements with Adrien's, Piggly Wiggly, and non-party customers." Sur-Sur-Reply to Third M/Compel [doc. #194, p. 5]. STC is a third-party to this lawsuit. Plaintiff has moved to compel production from Defendant Epic, not STC. If Plaintiff seeks production of agreements between STC and Adrien's, Piggly Wiggly, and non-party customers, it must pursue production from STC. The Court sees no basis to order production of these agreements at present.

    *f.*    *Proof of Photograph Sourcing*

Plaintiff also seeks "proof of which photographs (including PFP's) Epic sourced from ShopToCook." *Id.*

The requested production is relevant as Defendant Epic has recently asserted that "they may have received [relevant] photographs from" STC. Memo in Support of Third M/Compel [doc. #165, p. 3 .6]; *see also* Opposition to Third M/Compel [doc. #171, pp. 1-2] (Defendant

9

Epic "confirmed in discovery responses that [STC] provided webhosting services for all Defendants."). The Court has not previously ordered production of this information.

Defendant Epic is ORDERED to produce proof of which photographs it sourced from ShopToCook within thirty (30) days of entry of this order. Such proof should include a supplemental discovery response detailing the process by which the proof was obtained and, if proof is unavailable, explaining in detail why this is the case.

g. *Email Communications with ShopToCook*

Plaintiff's seventh request is for production of "email communications with or about ShopToCook." Sur-Sur-Reply to Third M/Compel [doc. #194, p. 5].

As described *supra*, Defendant Epic has indicated that it sourced photographs from STC. These photographs may include allegedly infringing photos. Agreements between Defendant Epic and STC, as well as potential discussion of the allegedly infringing photos, may be contained in communications between the two entities. The same may be the case for emails internal to Defendant Epic concerning STC. However, there are certainly communications between the entities, and communications within Defendant Epic concerning STC, that do not contain responsive material. Accordingly, Defendant Epic is not obligated to produce *all* email communications with or about STC. Finally, the undersigned notes that the Court has not previously ordered production of these specific communications.

Defendant Epic is ORDERED to produce all relevant email communications with or about ShopToCook from March 1, 2017, to present within thirty (30) days of entry of this order. If any communications are privileged or otherwise redacted, a privilege log will be submitted along with the production explaining the reason for withholding production of specific communications or redacting specific passages. To the extent Defendant Epic does not possess

these communications, it must indicate so in a discovery response that also describes its relevant document retention practices from March 1, 2017, to present.

    h.    *Third Party Intermediary Documents*

Plaintiff next seeks "documents related to 'Third Party Intermediaries'" AWG and AGI. *Id.* A request for "documents related to" certain entities is exceedingly broad. The undersigned declines to order production in line with such a request as it would be patently incommensurate with the needs of this litigation. However, agreements with, and invoices to, AWG and AGI are relevant to this case. The undersigned ordered production of such invoices *supra*. The Court has not specifically ordered production of these agreements previously.

Defendant Epic is ORDERED to produce all agreements with AWG and AGI from March 1, 2017, to present within thirty (30) days of entry of this order. If any documents are privileged or otherwise redacted, a privilege log will be submitted along with the production explaining the reason for withholding production of specific documents or redacting specific passages. To the extent Defendant Epic does not possess these materials, it must indicate so in a discovery response that also describes its relevant document retention practices from March 1, 2017, to present.

    i.    *Proof of Multi-Ad Communications Search*

Plaintiff's ninth request is for "proof [Defendant Epic] conducted a complete search for communications with Multi-Ad." *Id.*

In the October 31 Order, Defendant Epic was ordered to "produce all communications discussing use of the subject photographs" between itself and Multi-Ad. October 31 Order [doc. #111, pp. 5, 15]. Defendant Epic was further ordered to supplement this production with a description of "the search methods utilized to identify these communications" and "the results of

11

those searches." *Id.*  At the January 25 Conference, Defendant Epic was ordered to "conduct a search term review of emails from November 1, 2016, to June 1, 2017" for terms "AdLife," "Prepared Foods," "terminate," cancel, "end," "abbreviations that may have been used for AdLife or Prepared Foods," and "other related phrases."  January 25 Conference Minutes [doc. #120, p. 4].  Defendant Epic was further ordered "to produce a supplemental discovery response presenting the results of this search, describing the search terms and process utilized, and identifying the individual(s) responsible for conducting the search."  *Id.*  On February 15, 2024, Defendant Epic produced its Second Supplemental Responses to the First Request for Production indicating that it conducted searches in line with those ordered at the January 25 Conference, which yielded no results.  Second Supplemental Responses to First RFP [doc. #134-8, pp. 4-5].  This search was only conducted on the emails held by Rick Malone, the designated "administrator of record with Multi-Ad."  *Id.*  The undersigned finds that Defendant Epic has complied with the word of this Court's previous orders.  Not for the first time in this matter, the undersigned reminds Plaintiff that merely wishing for documents, such as the sought-after emails, will not manifest them into existence.  Plaintiff expresses frustration that the search was not conducted on emails held by "Mr. Barnes or the late Mr. Black" and did not utilize several additional search terms that this Court did not order used.  Memo in Support of Third M/Compel [doc. #165, p. 16].  The undersigned is reticent to expand the scope of the previously ordered production , but will allow a very limited expansion within the proportionate needs of the litigation.

     Defendant Epic is ORDERED to conduct a search term review of emails dated from March 1, 2017, to present held by Barnes and previously held by Black.  This search is to utilize search terms "AdLife," "AL," "Bad-Adz," BadAdz," "Bad-Ads," "BadAds," "Creative Outlet,"

"LSA," "Metro," "Metro Creative," "Mutli," "MultiAd," "Multi-Ad," "Prepared," "Prepared Foods," "agreement," "cancel," "cancelled," "cancellation," "cease," "conclude," "contract," "cut off," "discontinue," "end," "expire," "Kwikee," "library," "photography," "peoria," "restrict," and related and derivative terms.  Emails held by Malone are to be searched using terms listed above that have not previously been used to review his communications.  Relevant communications identified by this search are to be produced, along with a supplemental discovery response (1) presenting the results of this search, (2) describing the search terms and processes utilized, and (3) identifying the individual(s) responsible for conducting the search within thirty (30) days of entry of this order.  If any documents are privileged or otherwise redacted, a privilege log will be submitted along with the production explaining the reason for withholding production of specific documents or redacting specific passages.

j.   *Unredacted Copies of Previously Produced Documents*

Plaintiff next requests "unredacted copies of previously produced documents, including insurance agreements and [Defendant Epic's] agreements with Multi-Ad/LSA."  Sur-Sur-Reply [doc. #194, p. 5].

Defendant Epic is entitled to redact materials covered by attorney-client privilege and other related privileges.  It is also entitled to protect trade secrets and the like.  However, Plaintiff is equally entitled to all relevant discoverable, non-privileged, unprotected materials.  In ordering the production described below, the undersigned will not impose sanctions at this time but has increased the level of potential sanctions should Defendant Epic fail to comply with this order.

Defendant Epic is ORDERED to produce unredacted versions of all previously produced documents, including but not limited to insurance agreements and agreements between Defendant Epic and Multi-Ad and its predecessor entities, within thirty (30) days of entry of this

order. If any documents are privileged or otherwise redacted, a privilege log will be submitted along with the production explaining the reason for withholding production of specific documents or redacting specific passages.

k. *Indemnification Agreements*

Plaintiff also seeks "indemnification agreements with the Grocer Defendants and any communications relating to this dispute between Epic and any [Grocer Defendants] or their agents, including between Epic and the Grocer's [sic] insurers." *Id.*

The undersigned finds that indemnification agreements bear on both Defendant Epic's affirmative defenses and potential liability for the alleged infringement. This Court has not previously ordered production of these specific documents. Concerning "communications relating to this dispute," these materials may contain relevant discoverable information. This request is similar to an ordered production of "all communications discussing use of the subject photographs" contained in the October 31 Order. October 31 Order [doc. #111, pp. 5-6, 14-15]. While the Court did not specifically order production of "communications relating to this dispute" at that time, it seems evident that discussion of the subject photographs partially overlaps with "communications relating to this dispute." The undersigned will not impose sanctions at this time.

Defendant Epic is ORDERED to produce all indemnification agreements with the Grocer Defendants from March 1, 2017, to present. Defendant Epic is FURTHER ORDERED to produce all communications between Defendant Epic and Defendant Grocers or their agents relating to this litigation from March 1, 2017, to present. If any documents in either production are privileged or otherwise redacted, a privilege log will be submitted along with the productions explaining the reason for withholding production of specific documents or redacting specific

passages. To the extent Defendant Epic does not possess these materials, it must indicate so in a discovery response that also describes its relevant document retention practices from March 1, 2017, to present.

l. "Recently Discovered" Documents

Plaintiff's twelfth request is for "documents [Defendant Epic] 'recently discovered.'" Sur-Sur-Reply to Third M/Compel [doc. #194]. The undersigned declines to grant a request for such a generalized and unspecific document production. The parties should work together to facilitate production of any relevant material that may have been recently discovered. Not until all reasonable efforts have been exhausted should the parties turn to this Court for assistance with discrete requests.

m. Third Party Documents

Plaintiff next requests "documents [Defendant Epic] obtained from third parties." *Id.* As with Plaintiff's previous request, the undersigned will not order production based upon a generalized and unspecific entreaty for production. The parties are again directed to work together to facilitate production of relevant material and to turn to this Court for assistance only when all reasonable efforts have been exhausted.

n. Documents Supporting Affirmative Defenses

Plaintiff's fourteenth and final request is for "documents which support any of [Defendant Epic's] affirmative defenses." *Id.* The undersigned has ordered production of various documents related to Defendant Epic's affirmative defenses *supra*. Absent a more specific request, the undersigned is unable to assess whether additional productions are merited. Plaintiff is reminded that it is responsible for clearly and efficiently presenting the Court with the information it requires a ruling on. This request does not fit that bill.

### III. Admonitions

The undersigned takes this opportunity to – once again[12] – remind the parties that they are expected to seek mutual resolution of discovery disputes and exhaust all reasonable means of doing so prior to turning to the Court. When the parties are left with no choice but to file requests before this Court, they are further expected to exercise discretion and restraint in their briefing. Such discretion applies to both the tenor of those filings and the substantive content. The ability to write lengthy briefs and include multitudinous exhibits does not necessitate exercise of that ability. Furthermore, given the Court's busy docket, voluminous filings serve to make it harder – not easier – for this Court to assist the parties in resolving their ongoing disputes. If future filings continue to exhibit a lack of economy, the Court will impose page and filing limits to ease the unique pressures this case has increasingly presented to its docket. While the undersigned respects the desire of the lawyers in this case to zealously represent their clients, they are not required to fight tooth and nail for every inch of ground.[13]

### Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion to compel and for sanctions [doc. #134] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant Epic make the above-described productions within thirty (30) days of entry of this order.

---

[12] *See, e.g.*, [doc. #127].

[13] *See* MODEL RULES OF PRO. CONDUCT r. 1.3, cmt. 1 (AM. BAR ASS'N 2023) ("A lawyer is not bound, however, to press for every advantage that might be realized for a client."); NEW YORK R. PROF. CONDUCT r. 1.3, cmt. 1 (NEW YORK STATE BAR ASS'N 2022) (same); LOUISIANA R. PROF. CONDUCT r. 1.3 (LOUISIANA STATE BAR ASS'N 2018) (this rule is based upon the ABA Model Rule 1.3).

**IT IS FURTHER ORDERED** that Defendant Epic make payment of $3,500.00 into the registry of the Court within fourteen (14) days of entry of this order.

In Chambers, at Monroe, Louisiana, on this 28th day of June, 2024.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE