# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| Prepared Food Photos, Inc., | No. 3:22-cv-37-TAD-KDM |
| *plaintiff,* | Judge Terry A. Doughty |
| versus | Magistrate Judge Kayla D. McClusky |
| Epic Solutions, LLC, ET AL., | Jury Trial Demanded |
| *defendants.* | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSE COPYRIGHT MISUSE

**LILLY PLLC**
Andrew T. Lilly (La. 32559)
4907 Magazine Street
New Orleans,
70115
Tel: (504) 812-6388
andrew@atlpllc.com

**LEICHTMAN LAW PLLC**
David Leichtman (N.Y. 2824480)[1]
Sherli Furst (N.Y. 4783577)
Shane Wax (N.Y. 5347695)
Devin Newman (N.Y. 5813316)
Zoe Neefe (N.Y.  6123830)
185 Madison Ave, Floor 15
New York, New York 10016
Tel: (212) 419-5210
dleichtman@leichtmanlaw.com
sfurst@leichtmanlaw.com
swax@leichtmanlaw.com
dnewman@leichtmanlaw.com
zneefe@leichtmanlaw.com

*Attorneys for Plaintiff*
*Prepared Food Photos, Inc.*

---

[1]  Pro hac vice admission.  Dkts. 35, 255, 85, 124, 181.

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................II

TABLE OF AUTHORITIES ......................................................................................... III

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 1

LEGAL STANDARD...................................................................................................... 3

        A.      Summary Judgment .................................................................. 3

        B.      Copyright Misuse ..................................................................... 4

ARGUMENT .................................................................................................................. 7

I.      Defendants Offer No Evidence That Any Of PFP's Conduct Exceeded The Grant Of Copyright............................................................................... 8

II.     PFP's Enforcement Of Its Copyrights Does Not Violate The Public Policy Embodied In The Grant Of Its Copyrights ................................. 11

        A.      Defendants Rely Upon A Small Group Of Incorrectly Decided And Inapposite Out-Of-District Cases............................................ 11

        B.      The District Court Cases Relied On By Defendants Are Inapplicable..... 13

                1.      The Harrington Case ................................................... 13

                2.      The Home Design Case ............................................... 14

                3.      The Oppenheimer Cases .............................................. 15

                4.      The Malibu Media Cases ............................................. 16

        C.      Fifth Circuit District Court Decisions Support Denying Defendants' Motion.......................................................................... 17

CONCLUSION.............................................................................................................. 18

TABLE OF AUTHORITIES

**Cases**

*Alcatel USA, Inc. v. DGI Techs.*, Inc.,
   166 F.3d 772, 793 (5th Cir. 1999) ................................................................................. 5, 6

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...................................................... 4

*AP v. Meltwater U.S. Holdings, Inc.*,
   931 F. Supp. 2d 537 (S.D.N.Y. 2013) ................................................................................. 4

*Apple Inc. v. Psystar Corp.*,
   658 F.3d 1150 (9th Cir. 2011) ............................................................................................. 4

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
   350 F.3d 640 (7th Cir. 2003); ............................................................................................. 7

*Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*,
   300 F. Supp. 3d 1356 (D. Kan. 2018) ................................................................... 6, 9, 10, 17

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*,
   No. 3:17-cv-42, 2019 U.S. Dist. LEXIS 163383 (S.D. Ohio Sep. 24, 2019)....................... 9

*Frerck v. John Wiley & Sons, Inc.*,
   Civ. No. 11-cv-2727, 2014 U.S. Dist. LEXIS 95099 (N.D. Ill. July 14, 2014) ................ 12

*Harrington v. 360 ABQ, LLC*, No. 1:22-cv-00063-KWR-JHR,
   2022 U.S. Dist. LEXIS 89884 (D.N.M. May 18, 2022)............................................. 13, 14

*Harrington v. Dugar*, No. 2:22-cv-08230-HDV(Ex),
   2024 U.S. Dist. LEXIS 87439 (C.D. Cal. May 14, 2024)................................................. 14

*Harrington v. Dugar*, No. 2:22-cv-08230-HDV-E,
   2024 U.S. Dist. LEXIS 155470 (C.D. Cal. Aug. 27, 2024) ............................................. 14

*Home Design Servs. v. B&B Custom Homes, LLC*, Civ. No. 06-cv-00249-WYD-GJR,
   2008 U.S. Dist. LEXIS 55980 (D. Colo. May 30, 2008) ............................................ 14, 15

*Hyatt v. Thomas*,
    843F.3d 172 (5th Cir. 2016) ........................................................................... 4

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
    Civ. No. SA-21-CV-00673-XR, 2023 U.S. Dist. LEXIS 92 (W.D. Tex. Jan. 2, 2023)..... 18

*Lasercomb Am., Inc. v. Reynolds*,
    911 F.2d 970 (4th Cir. 1990) ................................................................... passim

*Malibu Media, LLC v. Cuddy*, Civ. No. 13-cv-02385-WYD-MEH,
    2014 U.S. Dist. LEXIS 163236 (D. Colo. Apr. 24, 2014) ......................... 16, 17

*Malibu Media, LLC v. Cuddy*, Civ. No. 13-cv-02385-WYD-MEH,
    2015 U.S. Dist. LEXIS 33451 (D. Colo. Mar. 18, 2015) ................................ 16

*Malibu Media, LLC v. Doe, No. 13 C 3648*,
    2014 U.S. Dist. LEXIS 77929 (N.D. Ill. June 9, 2014)................................... 10

*Malibu Media, LLC v. Miller*, Civ. No. 13-cv-02691-WYD-MEH,
    2014 U.S. Dist. LEXIS 80803 (D. Colo. May 20, 2014) ......................... 16, 17

*Malibu Media, LLC v. Miller*, Civ. No. 13-cv-02691-WYD-MEH,
    2014 U.S. Dist. LEXIS 80804 (D. Colo. June 12, 2014) ................................ 16

*Marvel Entm't, Inc. v. Kellytoy (USA), Inc.*,
    769 F. Supp. 2d 520 (S.D.N.Y. Feb. 18, 2011) ................................................ 12

*Oppenheimer v. ACL LLC*,
    504 F. Supp.3d 503 (W.D.N.C. 2020)............................................................. 15

*Oppenheimer v. Scarafile*, Civ. No. 2:19-cv-3590,
    2022 U.S. Dist. LEXIS 123782 (D.S.C. July 12, 2022)............................. 15, 16

*PaySys Int'l, Inc. v. Atos SE*, Civ. No. 14-cv-10105(DLC),
    2019 U.S. Dist. LEXIS 79150 (S.D.N.Y. May 9, 2019) ................................ 12

*PFP v. Clydes Chicken King, Inc.*,
    Civ. No. 6:24-00351 (W.D. La. Mar. 20, 2025)................................................. 8

*Philpot v. WOS, Inc.*, No. 1:18-CV-339-RP,
    2019 U.S. Dist. LEXIS 67978 (W.D. Tex. Apr. 22, 2019) ......................... 6, 18

*Practice Mgmt. Info. Corp. v. AMA*,
    121 F.3d 516 (9th Cir. 1997)........................................................................ 6, 11

iv

*Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*,
 689 F.3d 29 (1st Cir. 2012) ................................................................ 6

*Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.*,
 719 F.3d 424 (5th Cir. 2013) .............................................................. 4

*Veeck v. S. Bldg. Code Cong. Int'l*,
 293 F.3d 791 (5th Cir. 2002) ...................................................... 7, 8, 9

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*,
 241 F.3d 398 ....................................................................................... 7

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
 342 F.3d 191 (3d Cir. 2003) ................................................................ 6

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................ 3

MAY IT PLEASE THE COURT:

Plaintiff Prepared Food Photos, Inc. ("PFP" or "Plaintiff") respectfully submits this memorandum of law in opposition to Defendants' Motion for Summary Judgment on Affirmative Defense Copyright Misuse ("Defendants' Motion"). Defendants misapply the copyright misuse doctrine and identify no evidence to support their contentions that PFP abused the legal system in a manner contrary to the public policy embodied in copyright law. Defendants' motion should therefore be denied.

## PRELIMINARY STATEMENT

The Court should deny Defendants' Motion because, with fact discovery now closed, no reasonable jury considering only the documents and testimony that have been produced in discovery and which can be placed in the trial record could reach the conclusion that PFP has misused its copyrights.

## FACTUAL BACKGROUND

This action concerns forty (40) photographs authored and owned by Plaintiff that were registered with the U.S. Copyright Office between 2016 and May 2017, and which were thereafter used by the defendants in advertising and marketing materials between November 2018 and June 2024 without authorization from the Plaintiff. (*See generally* Motion for Summary Judgment on Liability, "Pl.'s Liability Motion," Dkt. 275-1 *et seq*.). Defendants expend great effort re-characterizing a litany of facts pertaining to PFP's business and pre-litigation conduct in cases other than this one, most of which are irrelevant, and false. (*See* Declaration of Joel Albrizio, PFP's sole owner, dated March 24, 2025 ("Albrizio Decl."), *passim*). The facts alleged have no bearing on this case because they do not establish that PFP engaged in copyright misuse. Defendants' Motion is twenty-four pages in length, with the "Overview" and "Facts and

Background" taking up sixteen of those pages, only offering *three* pages of discussion of copyright misuse caselaw, and a single paragraph that misapplies the applicable law. Defendants fall short of providing legal support for their assertion that the behavior complained of in their lengthy recitation amounts to copyright misuse. Plaintiff's conduct is well within its rights as a copyright owner and falls far short of the kind of conduct required to satisfy the elements for copyright misuse. Plaintiff does not address every asserted fact set forth in Defendants' Motion bu,t suffice it to say, disputes Defendants' characterization of the facts. (*See* Albrizio Decl., *passim*). Below, Plaintiff focuses on why the asserted facts do not amount to copyright misuse.

A few things, however, need to be pointed out because Defendants' recitation is so misleading.[2] First, Defendants claim they intend to contest the ownership of PFP's copyright registrations at trial (*see* Dkt. 281-1 at 1, n. 2), but their own expert has conceded that ownership of the registrations at issue in this case is proper and not in dispute. (Declaration of Devin Newman, dated March 25, 2025 "Newman Decl.", at Ex. 1, deposition of Defendants' purported photography expert Fagan, at 121:21 – 122:9). Defendants spend a large amount of space in their brief addressing Mr. Albrizio's history with PFP and his experience taking the photographs (Dkt. 281-1 at 7-11), but Defendants never once mention any dispute regarding PFP's ownership of a single photograph that is actually at issue in this case. As discussed more fully in PFP's summary judgment motion for infringement, the Copyright Office does not require that a photographer employed as a W-2 employee be listed on a copyright registration for it to be valid. (Plaintiff's Motion for Summary Judgment on Defendants' Liability for Copyright Infringement, Dkt. 275-1,

---

[2] On page 7 of its brief, at footnote 20, Defendants claim to have filed a Local Rule 56.1 Statement, but they neither did so, nor do the current rules require it.

at 3).

Next, Defendants complain that other courts on default judgment motions have accepted damages arguments from PFP relating to its standard license terms (Dkt. 281-1 at 15-16 and 21-24). Those courts, of course, had an obligation to conduct an inquest on damages (see F.R.C.P. 55(b)(2)), and Defendants not only insult those courts, but provide no basis whatsoever on which to conclude that such courts abdicated their responsibility. Moreover, any complaint about PFP's citation to default judgments in cease & desist letters (Dkt. 281-1 at 16) is nonsensical – there is no obligation to make any such disclosure, and in any event, of course the recipients of those letters can simply look the cases up. If it matters that the judgments were obtained on default matters (which it doesn't), prospective licensees are free to raise it in their negotiations with PFP. Defendants' more general arguments about the credibility of PFP's damages claims (Dkt. 281-1, at 12-15 and 21-24), of course, have absolutely nothing to do with copyright misuse (as explained more fully below) – it is just a transparent excuse in an attempt to assassinate PFP's character with this Court. It will not surprise the Court that nearly every statement made in Defendants' brief citing to declarations or motions in other proceedings are either taken out of context or are not supported by a close review of the citations in their footnotes. Moreover, most of the information relied on by Defendants is inadmissible either under Rule 403 or the hearsay rules, and thus cannot be considered on summary judgment.

<u>LEGAL STANDARD</u>

A.    *Summary Judgment*

Summary judgment is appropriate only when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the summary judgment evidence is such that a reasonable

3

jury could return a verdict for the [non-movant]." *Hyatt v. Thomas*, 843 F.3d 172, 178 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013).

B.      *Copyright Misuse*

Copyright misuse is a judicially created potential affirmative defense to copyright infringement, appropriate only in very limited circumstances not present here.  *AP v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp.2d 537, 567-68 (S.D.N.Y. 2013) ("Although copyright misuse has been acknowledged as a potential affirmative defense to an action for copyright infringement in at least five circuits, only a handful of decisions have ever applied it to bar an otherwise successful claim of copyright infringement.") (collecting cases and reviewing the history of copyright misuse doctrine); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150 (9th Cir. 2011) ("We have thus applied the doctrine sparingly.") (collecting cases).

The Fourth Circuit was the first appellate court to recognize the defense.  Noting the lack of precedent on the issue, it looked to the historical development of intellectual property law, the U.S. Constitution's Patent and Copyright Clause, and case law surrounding the patent misuse defense, in order to answer the question whether a copyright misuse defense even exists. *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 974-79 (4th Cir. 1990).  There, in what has become the leading copyright misuse case, the Fourth Circuit recognized that such a defense exists in very limited circumstances, and that it is analogous to the defense of patent misuse, from which it originates.  *Id.*, at 977.  The Fourth Circuit held that copyright misuse requires that the copyright be used in a manner violative of the public policy embodied in the grant of a copyright, *when the*

4

copyright owner tries to extend the copyright monopoly to non-copyrightable items. *Id.*, at 978. Although the *Lasercomb* court found misuse in that case, that was because the copyright owner tried to tie a copyrighted software license to an agreement that the licensees not develop a competing software product. *Id.*, at 978 ("Each time Lasercomb sells its Interact program to a company and obtains that company's agreement to the noncompete language, the company is required to forego utilization of the creative abilities of all its officers, directors and employees in the area of CAD/CAM die-making software."); *see also Id.*, at 979 ("The misuse arises from Lasercomb's attempt to use its copyright in a particular expression, the Interact software, to control competition in an area outside the copyright[.]").

In interpreting the meaning of a "manner violative of the public policy" the numerous other circuit courts that have considered this affirmative defense have joined in holding that copyright misuse applies only when a copyright holder attempts to use the power of the granted copyright to constrain other actions not covered by the copyright itself.

The Fifth Circuit has expressly adopted *Lasercomb. See DSC Communications Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 601 (5th Cir. 1996) ("We concur with the Fourth Circuit's characterization of the copyright misuse defense."). Indeed, the Fifth Circuit and its district courts have been consistent in limiting the application of the copyright misuse defense to circumstances where there is an attempt to use copyright to control an element not covered by that copyright. *Id.*, at 601 ("DGI may well prevail on the defense of copyright misuse, because DSC seems to be attempting to use its copyright to obtain a patent-like monopoly over unpatented microprocessor cards."); *Alcatel USA, Inc. v. DGI Techs.*, Inc., 166 F.3d 772, 793 (5th Cir. 1999) ("Under these facts, DSC's assertion that its licensing agreement does not prohibit the independent development of compatible software is simply irrelevant[…] without the freedom to test its cards in conjunction

5

with DSC's software, DGI was effectively prevented from developing its product, thereby securing for DSC *a limited monopoly over its uncopyrighted microprocessor cards*.") (emphasis added); *Energy Intel. Grp. Inc. v. Kirby Inland Marine LP*, Civ. No. 4:19-cv-03520, 2022 U.S. Dist. LEXIS 175805, at *11 (S.D. Tex. Sept. 28, 2022) (granting summary judgment dismissing a copyright misuse defense when the plaintiff only sought to "secure its duly granted monopoly rights over its copyrighted works—not to extend its monopoly over uncopyrighted information."); *Philpot v. WOS, Inc.*, No. 1:18-CV-339-RP, 2019 U.S. Dist. LEXIS 67978, at *31 (W.D. Tex. Apr. 22, 2019) (granting summary judgment against a copyright misuse defense because "Whatever WOS thinks of Philpot's litigation practices, he is in this case seeking to secure his monopoly rights over his own copyrighted works but is not seeking to extend that monopoly power to any other property not covered by his copyrights.") (citing *Alcatel*, 166 F.3d at 792-93).

Other Circuits agree that the defense is extremely limited. *Soc'y of the Holy Transfiguration Monastery, Inc. v. Gregory*, 689 F.3d 29, 65-66 (1st Cir. 2012) (affirming a grant of summary judgment in favor of plaintiff copyright holder monastery against defendant archbishop who did not allege an extension beyond the copyright owner's copyright); *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516 (9th Cir. 1997) (expressly adopting the *Lasercomb* and the *DSC* Courts' construction of the copyright misuse defense, reversing the district court's finding on copyright misuse and holding that plaintiff AMA misused its copyright by requiring that licensees not use an uncopyrighted competing code system); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191 (3d Cir. 2003) (expressly adopting the defense of copyright misuse as constructed by the *Lasercomb* and *Practice Mgmt* courts, and finding that it did not apply where Disney refused to license its movie trailers to websites without attached constraints controlling the nature of the materials published alongside the trailers, noting that it was an

extension of its own copyright into an area not covered, but not one that is offensive to the public policies underlying copyright); *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 641 (7th Cir. 2003) (holding that "this case is about the attempt of a copyright owner to use copyright law to block access to data that not only are neither copyrightable nor copyrighted, but were not created or obtained by the copyright owner" where plaintiff used its copyright to prohibit licensees from disclosing noncopyrighted data, reversing the district court's injunction and dismissing the copyright claim).

Defendants' motion does not even address the requisite element that the copyright holder must have attempted to extend its monopoly, and instead focuses solely on the irrelevant facts that do not even support the "manner violative of the public policy" prong. Notably, Defendants do not cite to a single case where a copyright holder was found to engage in copyright misuse based on the conduct alleged in Defendants' Motion, the enforcement of copyright rights and nothing else.

<u>ARGUMENT</u>

The dispositive question on this summary judgment motion is whether Plaintiff exceeded the boundaries of its copyrights. *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 241 F.3d 398, 409 (5th Cir. 2001) ("The equity-based defense of copyright misuse […] forbids the [copyright holder's] use of the copyright to secure an exclusive right or limited monopoly not granted by the Copyright Office and which is contrary to public policy to grant.") (quotations omitted) (*rev'd en banc* on other grounds not relevant to copyright misuse *Veeck v. S. Bldg. Code Cong. Int'l*, 293 F.3d 791, 794 (5th Cir. 2002)). Here, Defendants have not offered any evidence that PFP used its copyrights to enforce any rights beyond the scope of what was granted in the copyrights. Without any evidence that PFP attempted such an extension of its copyrights, the question of how PFP behaved

in other matters in a "manner violative of the public policy" need not be reached. In any event, Defendants do not satisfy their burden pursuant to that prong either.

Indeed, in a recent decision from Judge Summerhays of this district denying defendant its legal fees in a case where PFP dismissed the action once it realized the claim was time barred, the Court wrote: "There is further no evidence in the record to reflect any motivation by Plaintiff other than the alleged attempt to protect its copyright." *PFP v. Clydes Chicken King, Inc.*, Civ. No. 6:24-00351 (W.D. La. Mar. 20, 2025), slip op., at 3 (attached to the Newman Decl. at Ex. 2). And, the Court further noted that it is not appropriate to consider litigation conduct from other cases not before the Court: "The Court's focus here, however, is the facts and claims of this case. (Id., at 2) (emphasis in original).

Interestingly enough, Defendants do not make any allegation that there has been any misconduct by PFP in this case. Nor could it, since all that PFP has done is "attempt to protect its copyright(s)." Doing so is neither copyright misuse nor does it give rise to fee shifting: it is just ordinary course for protecting one's hard earned intellectual property.

I.    <u>Defendants Offer No Evidence That Any Of PFP's Conduct Exceeded The Grant Of Copyright</u>

In *Veeck*, the Fifth Circuit was tasked with determining whether defendant SBCCI had misused its copyright when it sent plaintiff Veeck a cease-and-desist letter, asserting that Veeck had infringed SBCCI's copyrights in its building codes, which were adopted into law by several towns in Northern Texas. *Veeck*, 241 F.3d 398, 401-02. The Fifth Circuit expressly held that to find copyright misuse, the summary judgment record must present evidence that "the organization mandates the exclusive use of its codes or any of its other services when a governmental subdivision adopts one of the codes[,]" *i.e.* the *exact* kind of constraint in excess of the granted

monopoly right *Lasercomb* prohibits. *See Veeck*, 241 F.3d 398, 409. No such conduct is alleged by Defendants here.

In this case, Defendants point to no evidence that PFP has exceeded its copyright, that PFP ties the licensing of its photographs to the exclusive use of other services provided by PFP, its sister companies, nor anyone else. Indeed, PFP does not require a potential licensee maintain any kind of exclusivity with PFP. (*See* Albrizio Decl., at ¶ 24). Such licensees are free to license photographs from stock photo agencies, library providers, or other third-party photographers. (*Id.*). Defendants push for an extension of this doctrine (addressed in full in Section II below) that goes beyond the limits of the copyright misuse defense as set forth by the Fifth Circuit and described above. This extension is not supported by the case law. Defendants make no allegations that can be construed to "secure an exclusive right or limited monopoly not granted by the Copyright Office and which is contrary to public policy to grant." *DSC Communications Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 601 (5th Cir. 1996) (quoting *Lasercomb*, 911 F.2d 970, 977).

Defendants argue that PFP's business model is a copyright "enforcement scheme" that is "completely divorced from the policy purpose of copyright law." (Dkt. 281-1, at 23). Yet Defendants only describe behaviors that are consistent with the regular enforcement of copyrights – behavior which courts do not consider violative of the public policy underlying copyright. *See Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 3:17-cv-42, 2019 U.S. Dist. LEXIS 163383, at *38 (S.D. Ohio Sept. 24, 2019) ("Standing alone, initiating multiple copyright infringement actions and attempting to negotiate settlements does not indicate copyright misuse or copyright trolling.") (quoting *Energy Intelligence Grp., Inc. v. CHS McPherson Refinery, Inc.*, 300 F. Supp.3d 1356, 1374 (D. Kan. 2018)). Indeed, when faced with large numbers of copyright infringers in the first place, this is what holders of intellectual property rights are supposed to do,

lest they lose their rights. *Malibu Media, LLC v. Doe, No. 13 C 3648*, 2014 U.S. Dist. LEXIS 77929, at *6 (N.D. Ill. June 9, 2014) ("It is certainly true that Malibu has filed a very large number of infringement suits in this district and in others. But that is what the holders of intellectual property rights do when they are faced with mass infringement."). In *Malibu Media*, the court looked to the frequency and volume of other litigants, concluding that the "predicate for a misuse defense is an attempt to use the copyright monopoly to control something the monopoly does not protect." *Id.* at *8. Defendants have failed to show PFP's alleged conduct would qualify for this doctrine, because they simply cannot.

In *Energy Intelligence*, the court considered a copyright holder accused of "filing multiple copyright lawsuits against its clients, paying its employees bonuses for finding and reporting potential copyright infringement claims, engaging in efforts to 'entrap' its largest clients into admitting that they are engaging in copyright infringement, and by pushing the Refinery into purchasing a costly Global Enterprise License to avoid this lawsuit." *Energy Intelligence*, 300 F. Supp.3d 1356, 1373. There, the Court rejected a misuse defense because the allegations lacked the one key element: the copyright holder did not "attempt[] to assert rights beyond those granted in their copyright registration." *Id.* The Court also doubted whether the alleged "abusive litigation tactics" existed, noting that attempts to negotiate a settlement prior to filing a copyright suit, or filing numerous copyright suits, do not satisfy the requirement that the defendant "come forward with any evidence that EIG misused its copyrights by attempting to extend its copyright monopoly to rights its registrations do not protect." *Id.*, at 1374. Defendants do not cite to a single case where a copyright holder was found to have misused their copyrights based upon their litigation strategy, number of lawsuits, attempts to settle, or other kinds of conduct that *did not* involve a copyright owner's attempt to control conduct beyond the scope of their copyright. Defendants have failed

to show that any of PFP"s conduct exceeded the grant of copyright.

II.    <u>PFP's Enforcement Of Its Copyrights Does Not Violate The Public Policy Embodied In The Grant Of Its Copyrights</u>

    A.    *Defendants Rely Upon A Small Group Of Incorrectly Decided And Inapposite Out-Of-District Cases*

Defendants rely upon a small number of district court cases, from outside the Fifth Circuit, that get the crux of copyright misuse wrong or turn on different facts not present here. Defendants do not provide a single case where a copyright holder was found to have committed copyright misuse based upon the theories that Defendants argue make PFP's copyrights unenforceable as a matter of law.

Defendants misleadingly state that "Courts have denied copyright owners the right to enforce their copyright on grounds of copyright misuse based on licensing, litigation and other tactics of the copyright owner." (Dkt. 281-1, at 19). In fact, no Court has ever found copyright misuse based on licensing or litigating actual copyright infringement allegations, which is the entire basis for this case. Instead, in the remainder of the same paragraph, Defendants discuss the *Practice Mgmt.* case from the Ninth Circuit, which turned not on licensing or litigating copyrights, but on license terms that tied the license to non-copyrighted items, as discussed above.

To the extent Defendants rely on statements in *Practice Mgmt.* and *Lasercomb* to the show that an antitrust violation is not necessary to prove copyright misuse (Dkt. 281-1, at 19-20), that is true, but also misleading. As an initial matter, *Lasercomb's* discussion of parallel anti-trust claims pertains only to the Fourth Circuit's criticism of the district court's reliance on using anti-trust principles to determine if there was anticompetitive behavior that would support a finding of copyright misuse. *See Lasercomb*, 911 F.2d 970, 978 ("The question is not whether the copyright is being used in a manner violative of antitrust law (such as whether the licensing agreement is

11

'reasonable')[.]"). In *Lasercomb* the Court only found copyright misuse because the plaintiff restrained activities beyond the rights granted by copyright *and* in a way that was violative of the public policies underlying copyright. *Id.* It had nothing to do with a license for the copyright itself or litigating copyright claims. Rather, it was because the license was tied to a restraint on the copyrightable expression of others, beyond the boundaries of expression covered by Lasercomb's copyright. There, the plaintiff, a manufacturer of steel rule dies (cutting tools, used to cut sheet materials such as paper or cardboard), also sold software used to assist in the creation of new steel rule dies.

Lasercomb tied the licensing of that software to a restriction that did not allow any licensee to "develop or assist in developing *any* kind of computer-assisted die-making software." *Id.*, at 978. The Court went on to note that each licensee company would be required to "forego utilization of the creative abilities of all its officers, directors and employees in the area of CAD/CAM die-making software." *Id.* The Court found it even more concerning that "these creative abilities are withdrawn from the public," and for a period of ninety-nine years, beyond the life of a copyright itself. *Id.* The fundamental issue in *Lasercomb* was that Lasercomb was using its copyright to prevent *others* from making *new creative* works.

In contrast, PFP refuses to restrict or stifle the creative efforts of its licensees. Therefore, Defendants' criticism of PFP's business model, which it mischaracterizes in any event, could never amount to copyright misuse. (Albrizio Decl. ¶¶ 1-24). [3]

---

[3] Lest Defendants attempt to confuse the issues, licenses to copyrighted material that contain geographic restrictions are routinely upheld. *See PaySys Int'l, Inc. v. Atos SE*, Civ. No. 14-cv-10105(DLC), 2019 U.S. Dist. LEXIS 79150 (S.D.N.Y. May 9, 2019); *Frerck v. John Wiley & Sons, Inc.*, Civ. No. 11-cv-2727, 2014 U.S. Dist. LEXIS 95099 (N.D. Ill. July 14, 2014); *Marvel Entm't, Inc. v. Kellytoy (USA), Inc.*, 769 F. Supp. 2d 520 (S.D.N.Y. Feb. 18, 2011). Thus, when PFP promises certain customers of its ad-creation business, or the ad-creation business of its co-owned company, Bad-Adz (*See* Albrizio Decl., at ¶ 13), it does not commit any act of misuse.

B.      *The District Court Cases Relied On By Defendants Are Inapplicable*

Nor do any of the district court cases relied on by Defendants assist them here.  Aside from getting the law of copyright misuse wrong, each of those cases arises in a completely different posture: they were all decided on motions by the copyright owners for summary judgment or to strike pleadings alleging copyright misuse.  None of the decisions granted summary judgment to a copyright infringement defendant.  Thus, whatever those courts said in allowing claims to proceed, does not support granting summary judgment to *Defendants*.  It bears repeating that no allegations have been made in this case accusing PFP of trying to extend the copyright monopoly to non-copyrighted items.

1.      The Harrington Case

Defendants first point to *Harrington v. 360 ABQ, LLC*, No. 1:22-cv-00063-KWR-JHR, 2022 U.S. Dist. LEXIS 89884 (D.N.M. May 18, 2022) for the proposition that PFP's "litigation business model" is purportedly copyright misuse.  However, *Harrington's* analysis of the issue is minimal, merely denying a summary judgment motion seeking to strike the affirmative defense. There the defendant asserted unproven allegations that "Mr. Harrington intentionally allows his images to be posted online without copyright notice and uses a service to track who uses or downloads the images so that he can sue or 'extort' money from these 'unwitting' users." *Harrington*, 2022 U.S. Dist. LEXIS 89884, at *7.  Thus, that case involved facts not at issue here – namely that the plaintiff was alleged to have put his photographs onto the Internet to purposefully ensnare infringers.  There is no such conduct alleged here, nor could there be.

And, the *Harrington* court recognizes that the filing of numerous cases does not evidence copyright misuse.  Indeed, the defense was ultimately unsuccessful.  While the New Mexico case settled, the same Plaintiff, Plaintiff's counsel and Defendant's counsel litigated a highly similar

case in the Central District of California wherein evidence pertaining to the exact same allegations was excluded from trial on a motion in limine. *Harrington v. Dugar*, No. 2:22-cv-08230-HDV(Ex), 2024 U.S. Dist. LEXIS 87439 (C.D. Cal. May 14, 2024). In the California case, the Court eventually found the defense frivolous in granting the plaintiff's attorneys' fees motion. *Harrington v. Dugar*, No. 2:22-cv-08230-HDV-E, 2024 U.S. Dist. LEXIS 155470 (C.D. Cal. Aug. 27, 2024).

The *Harrington* court, however, does incorrectly suggest that "demanding settlements well in excess of the damages" could be copyright misuse. To support that argument, the *Harrington* court cites to four district court cases, none of which found a copyright holder's copyrights unenforceable for copyright misuse. Not surprisingly, Defendants rely on these same exact four cases to come to an incorrect assessment like the *Harrington* court.

    2. <u>The Home Design Case</u>

Defendants and the *Harrington* court both point to *Home Design Servs. v. B&B Custom Homes, LLC*, Civ. No. 06-cv-00249-WYD-GJR, 2008 U.S. Dist. LEXIS 55980 (D. Colo. May 30, 2008) for the proposition that copyright misuse includes demanding settlements "well in excess of the damages." Defendants' reliance on this is misguided, because this case does not stand for this proposition. The *Home Design* decision does not support the *Harrington* court's read on the relevance of settlements to copyright misuse, which the *Harrington* court extrapolated on its own. *See Harrington*, 2022 U.S. Dist. LEXIS 89884, at *8. *Home Design*, does not even involve a finding of misuse. Rather, it related to a discovery dispute where the defendants sought discovery of the plaintiff's litigation and settlement revenue, under the guise of evidencing copyright misuse. And, the court actually *denied* the defendant's request for relief. The *Home Design* court rejected the theory argued by Defendants and the *Harrington* court, holding that that the defendants "must

14

establish that the plaintiff extended its purported monopoly beyond the scope of the copyright" and that the plaintiff's success in generating revenue through litigation, even, if in excess of the value of the copyrighted works, *did not* evidence a subversion of copyright law public policy.  *See Home Design*, 2008 U.S. Dist. LEXIS 55980, at *13-15 (emphasis added).  Thus neither the *Home Design*, nor the mischaracterization of it in *Harrington* support Defendants' motion.

### 3.    The Oppenheimer Cases

Both Defendants and the *Harrington* court also rely on *Oppenheimer v. ACL LLC*, 504 F. Supp.3d 503 (W.D.N.C. 2020) for the proposition that a "litigation business model[,]" is a relevant factor in a copyright misuse analysis.  That is wrong.  Here, again, this unsupported expansion of copyright misuse is made without any reference to appellate authority or any case where a copyright holder was held liable under such a theory.  *See Oppenheimer*, 504 F. Supp.3d 503, 511-12.  In an order denying the Plaintiff's motion for summary judgment, *Oppenheimer* offers only one throwaway line: "[y]et, a reasonable jury could find Plaintiff is using copyrights to derive an income from infringement suits and this issue is one of fact that the Court should not decide."  *Id.*, at 512.  As discussed above, every appellate court to consider copyright misuse has expressly held that litigiousness is *not* a factor in a copyright misuse analysis. The *Oppenheimer* decision simply does not address whether or not the copyright holder exceeded the bounds of its copyright.

Defendants also rely on a second case filed by Oppenheimer, styled *Oppenheimer v. Scarafile*, Civ. No. 2:19-cv-3590, 2022 U.S. Dist. LEXIS 123782 (D.S.C. July 12, 2022) ("Oppenheimer II"), where a similar fact pattern was present also on a motion by Plaintiff to reject the defense.  In *Oppenheimer II*, the district court incorrectly decided that there were genuine disputes of material facts with regards to the copyright misuse factors because a jury should decide "why Plaintiff copyrights his work, whether Plaintiff is more focused on the business of litigation

15

than licensing or selling his work, and whether Plaintiff employs abusive litigation tactics." *Oppenheimer II*, 2022 U.S. Dist. LEXIS 123782, at \*9-10. This is simply incorrect. There is no appellate authority for the proposition that any of those facts, even if proven, pertain to a copyright misuse analysis. But even more crucially, the court in *Oppenheimer II* does not address whether or not the copyright holder exceeded its copyright by engaging in any of the complained of activities. Similarly, here, none of the activities alleged from other amount to copyright misuse.

### 4.    The Malibu Media Cases

The remaining decisions cited by Defendants are the two Malibu Media cases. *Malibu Media, LLC v. Cuddy*, Civ. No. 13-cv-02385-WYD-MEH, 2015 U.S. Dist. LEXIS 33451 (D. Colo. Mar. 18, 2015), and *Malibu Media, LLC v. Miller*, Civ. No. 13-cv-02691-WYD-MEH, 2014 U.S. Dist. LEXIS 80804 (D. Colo. June 12, 2014). Neither of these decisions engage in a copyright misuse analysis.

In both cases, the same district court incorrectly adopted the same Magistrate Judge's recommendation to deny the plaintiff's motion to strike the defendant's copyright misuse defenses., *Cuddy*, 2015 U.S. Dist. LEXIS 3345 at \*7 (adopting *Malibu Media, LLC v. Cuddy*, Civ. No. 13-cv-02385-WYD-MEH, 2014 U.S. Dist. LEXIS 163236 (D. Colo. Apr. 24, 2014) (the "Cuddy Report")); *Miller*, 2014 U.S. Dist. LEXIS 80804 at \*2-4 (adopting *Malibu Media, LLC v. Miller*, Civ. No. 13-cv-02691-WYD-MEH, 2014 U.S. Dist. LEXIS 80803 (D. Colo. May 20, 2014) (the "Miller Report").

In the *Cuddy* Report, in a short and incorrect analysis, the Magistrate found that, even assuming the plaintiff was correct, the defendant's allegations were not proper to strike because they rested on "motivation" and that it was sufficient to allege, at the pleading stage, that the plaintiff was a pornographer, which tracked and sued individuals who pirated and consumed its

pornographic videos via BitTorrent. *Cuddy Report*, 2014 U.S. Dist. LEXIS 163236 at 19-20. There, the defendant's allegations were sufficient to survive a motion to strike because the Court incorrectly decided that such tactics could be abusive, without first considering whether or not the plaintiff exceeded the boundaries of its copyright interests. *Id.*

In the *Miller Report*, the defendant's copyright misuse defense was allowed to remain based upon similar allegations, that Malibu Media monitored BitTorrent pirates and then sued them. *Miller Report*, 2014 U.S. Dist. LEXIS 80803 at 11-12. These decisions are incorrect because there is no authority to support the notion that suing a copyright infringer is violative of copyright policy. Only the opposite is true. The only citations to these Malibu Media cases are the same small subset of incorrect district court cases that Defendants rely upon in their brief.

C.       *Fifth Circuit District Court Decisions Support Denying Defendants' Motion*

Defendants argue that their characterization of PFP's business model is violative of the public policies underlying copyright, and is therefore copyright misuse. Even if the allegations of misconduct were not false, as discussed in the Albrizio Declaration, Defendants are wrong as a matter of law because such conduct is not copyright misuse. As discussed above, Defendants rely solely on a small subset of incorrectly decided and inapposite cases from district courts outside the Fifth Circuit, none of which found misuse. By contrast, the few district courts within the Fifth Circuit have been consistent in rejecting a copyright misuse defense under similar facts. *See Energy Intel. Grp.*, 2022 U.S. Dist. LEXIS 175805, at *11 (granting summary judgment to plaintiff publisher EIG against licensee Kirby on copyright misuse because "EIG doesn't base its claim for relief on Kirby's use of information not subject to its copyright, such as industry-related information published in Oil Daily. It instead alleges that Kirby infringed its Oil Daily copyright when Kirby internally distributed Oil Daily, which in effect reproduced the entire copyrighted

17

work."); *Philpot v. WOS, Inc.*, No. 1:18-CV-339-RP, 2019 U.S. Dist. LEXIS 67978 (W.D. Tex. Apr. 22, 2019) (granting summary judgment to plaintiff photographer Philpot against infringing magazine publisher WOS because there was no extension of the copyright monopoly, even in the face of the Court holding that a jury could find the photographer's litigation practice abusive); *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, Civ. No. SA-21-CV-00673-XR, 2023 U.S. Dist. LEXIS 92 (W.D. Tex. Jan. 2, 2023) (granting summary judgment to plaintiff architecture firm Kipp Flores against real estate developer defendant Pradera on copyright misuse because there was no evidence that the plaintiff copyright owner extended its monopoly beyond the copyright.).

The common theme throughout these cases is that defendants with no valid defenses for infringement liability, cannot prevail on a copyright misuse defense by alleging business conduct similar to that recited by Defendants here. Defendants do not even address the necessary factor in a copyright misuse analysis: an extension of a copyright to restrict competition on things it does not cover. This Court should look to the cases within the Fifth Circuit addressing the issue of copyright misuse on summary judgment, not the out-of-circuit and incorrectly decided cases with different procedural postures that the Defendants rely upon.

CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion. No court has found a copyright holder's copyrights unenforceable for copyright misuse on the basis of the facts and theories argued by Defendants. No court has done so on summary judgment, let alone at trial.[4]

---

[4] Plaintiff intends to move *in limine* to prevent any unsupported character attacks on it at trial. That motion will be filed prior to the scheduled deadline for *in limine* motions.

Dated: March 24, 2025

*/s/ Andrew T. Lilly*

**LILLY PLLC**
Andrew T. Lilly (La. 32559)
4907 Magazine Street
New Orleans, LA 70115
Tel: (504) 812-6388
andrew@atlpllc.com

**LEICHTMAN LAW PLLC**
David Leichtman (N.Y. 2824480)[5]
Sherli Furst (N.Y. 4783577)
Shane Wax (N.Y. 5347695)
Devin Newman (N.Y. 5813316)
Zoe Neefe (N.Y.  6123830)
185 Madison Ave, Floor 15
New York, New York 10016
Tel: (212) 419-5210
dleichtman@leichtmanlaw.com
sfurst@leichtmanlaw.com
swax@leichtmanlaw.com
dnewman@leichtmanlaw.com
zneefe@leichtmanlaw.com

***Attorneys for Plaintiff Prepared Food Photos, Inc.***

---

[5] *Pro hac vice* admission.  Dkts. 35, 255, 85, 124, 181.

19