UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**PREPARED FOOD PHOTOS INC**     **CASE NO. 3:22-CV-00037**

**VERSUS**     **JUDGE TERRY A. DOUGHTY**

**EPIC SOLUTIONS LLC ET AL**     **MAG. JUDGE MCCLUSKY**

**MEMORANDUM ORDER**

Before the Court are *five* summary judgment motions. The plaintiff, Prepared Food Photos Inc. ("PFP"), filed the first (ECF No. 275) and second (ECF No. 279) motions for summary judgment. The defendants, Adrien's Supermarket, Inc. ("Defendant Adrien's"), McDaniel Food Management and its affiliates ("Defendant Mac's"), Piggly Wiggly South Opelousas ("Defendant Piggly Wiggly"), Sullivan's Inc. Grocery ("Defendant Sullivan's") (collectively, "Defendant Grocers"), and Epic Solutions LLC and its affiliates ("Defendant Epic") (collectively, "Defendants"), filed the third (ECF No. 280) and fourth (ECF No. 281) motions for summary judgment. Defendant Grocers filed the fifth motion for summary judgment (ECF No. 283). Each motion is opposed, and ripe.

After careful consideration of the parties' memoranda and the applicable law, each motion is **DENIED**.

1

## I.  BACKGROUND

This case stems from Defendants' alleged infringement of PFP's copyrights.[1] PFP is the copyright holder of a vast number of photographs of food.[2] Defendant Epic is a marketing company that services Defendant Grocers.[3] Defendant Grocers are grocery stores that utilize photographs of food (including photographs that they allegedly acquired from Defendant Epic) in their weekly advertisements.[4] PFP contends that at least some of these photographs used by Defendant Grocers and supplied by Defendant Epic, are subject to PFP's copyrights, and that Defendant Grocers nor Defendant Epic have permission to use such photographs.[5] Accordingly, PFP charges that Defendants are liable to it for infringing its copyrights.[6]

## II.  LEGAL STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict

---

[1] *See* ECF No. 222.
[2] *Id.* at 8–19.
[3] *Id.* at 5.
[4] *Id.* at 23–28.
[5] *See id.* It is further alleged that Epic, and thus Defendant Grocers, may have had the license to use these photographs in the past through an online photo library supplied by a non-party, but that such license expired on March 1, 2017. *See id.* at 20–23. We explore this issue in greater detail below, again. *See* ECF No. 223.
[6] *Id.* at 43–46.

for the [non-movant]." *Id.* (internal quotations omitted). In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.,* 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson,* 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

### III.  ANALYSIS

**A. First Motion for Summary Judgment**

PFP's first motion seeks to resolve the issue of liability for copyright infringement. *See* ECF No. 275-1. PFP contends that no dispute exists as to whether Defendants infringed its copyrights. *Id*. at 5. Specifically, PFP avers that Defendants cannot dispute either PFP's ownership of the copyrights, nor Defendants' use of the

photographs subject to the copyrights. *Id.* Furthermore, PFP asserts that Defendants had no license, nor can they avail themselves of any defense, that would preclude their liability. *Id.* at 9–14, 25–29.

Defendants counter with three main arguments. *See* ECF No. 309. The Defendants begin by contesting the authorship of the photographs, then note the delay with which they were registered, and end with licenses. *Id.* at 19–25. Specifically, Defendants contend that Mr. Albrizio, the now-owner of PFP, may have taken the photographs outside of the course and scope of his employment with PFP, *see id.* at 12–14, or that another PFP employee may have taken the photographs instead. *Id.* at 14–15. Defendants further point out that the registration of these copyrights occurred twenty years after publication, which, according to them, would disentitle PFP to any presumption of copyright validity. *Id.* at 19–22. Last, Defendants reassert[7] that a valid license may exist to use the photographs. *Id.* at 24–26.

In Reply, PFP maintains that the disputes Defendants cite are neither genuine nor material so as to preclude summary judgment. *See* ECF No. 316. PFP is wrong.

    *i.*   *Ownership*

We begin with burdens. 17 U.S.C. § 410(c) provides that "[i]n any judicial proceeding the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate," but "[t]he evidentiary weight to

---

[7] *See generally* ECF. No. 223.

4

be accorded the certificate of a registration made thereafter shall be within the discretion of the court." So, because PFP waited twenty years to register its copyrights, it "carries the burden of proving ownership of a valid copyright, including its originality." *Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.*, 95 CIV. 0246 (SHS), 1997 WL 158364, at *2 (S.D.N.Y. Apr. 2, 1997) (citing *Dollcraft Indus., Ltd. v. Well–Made Toy Mfg. Co.*, 479 F.Supp. 1105, 1114 (E.D.N.Y. 1978).

PFP contends that it owns each copyright here. *See* ECF No. 275-1 at 6–7. The Copyright Act of 1976 provides that copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). But "[i]f the work is for hire, 'the employer or other person for whom the work was prepared is considered the author' and owns the copyright, unless there is a written agreement to the contrary." *Cmty. for Creative Non-Violence v. Reid,* 490 U.S. 730, 737 (1989) (quoting 17 U.S.C. § 201(b)). For our purposes, a work is "for hire" when it is "prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101(1). To determine whether a hired party is an employee or an independent contractor, courts should apply common law agency principles, considering factors such as:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Reid,* 490 U.S. 730, at 751–52.

Neither party directly addressed these *Reid* factors. And since it is PFP's burden, both as a summary judgment movant, *see ante* at 3, and as a more-than-twenty-year-tardy copyright registrant, *see ante* at 5, summary judgment in their favor is inappropriate. But just to be sure, we briefly discuss why the record does not support summary judgment on this issue anyway.

Joel Albrizio is the owner of PFP. ECF No. 276 at 1. He has worked there since 1992. *Id.* at 2. He attests that he took 39 of the 40 photographs contested here, himself. *Id.* at 3. Apparently, all while he was a part-owner and salesman. ECF No. 309–2 at 2. But the person in charge of photography at PFP—Mr. Ciolfi—contests Mr. Albrizio's claim of taking any pictures for PFP. *Id.* And Mr. Albrizio himself attests that he took the subject pictures in seclusion.[8] The origins, labeling, and record-keeping practices surrounding the photographs, between alleged capture and registration, are sketchy and contested. *See* ECF Nos. 309-1; 309-2; 309-5; 309-6; *and generally,* ECF No. 309 at 11–15 (citing the record). This includes photographs belonging to others apparently entering the mix with PFP's library. *See id.* We are thus left with two paths that lead to the same conclusion. Since owners aren't typically considered employees in the work-for-hire context, even if PFP could show that Mr. Albrizio took the photographs, PFP has failed to show that Mr. Albrizio was acting in the scope of his employment, so ownership remains unproven. *See Woods v. Resnick,* 725 F.Supp.2d 809, 824 (W.D.Wis. 2010) (citing *Heimerdinger v. Collins,*

---

[8] "*See* ECF No. 281-4," according to the parties, but ECF No. 281-4 is a blank page holding place for a deposition that was never docketed, because it was subject to a motion to seal that was denied. So, *see generally*, ECF No. 309 at 12–13.

2009 WL 1743764, *4 (D. Utah 2009)). Alternatively, it is PFP's burden to show that these photographs were created by *some* PFP employee in the course and scope of their employment. *Tuff 'N' Rumble,* 1997 WL 158364, at *2; *Reid,* 490 U.S. 730, at 751–52. The Court is precluded from making a credibility determination between Mr. Albrizio, and the picture-taking boss, Mr. Ciolfi, regarding who took which pictures and when. *See Total,* 719 F.3d at 434. So, because "other evidence in the record casts doubt on the question" of origin and ownership, namely, whether the pictures were taken by Mr. Albrizio, or a PFP affiliate at all, summary judgment is inappropriate. *Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 908 (2d Cir. 1980).

    *ii.*    *Infringement*

Because ownership of a work is required to make an infringement claim, and because ownership is still contested, the Court needn't reach whether Defendants copied the claimed works. *See Batiste v. Lewis,* 976 F.3d 493, 501 (5th Cir. 2020) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ("To prove copyright infringement, a plaintiff must show ownership of a valid copyright and copying by the defendant.") (quotation marks omitted). Accordingly, PFP's Motion for Summary Judgment *on Defendants' Liability for Copyright Infringement* (ECF No. 275) is **DENIED**.

    **B. Second Motion for Summary Judgment**

PFP's second motion seeks to have the Court revisit whether PFP can avail itself of statutory penalties and attorney's fees. *See* ECF No. 279. The Court has denied summary judgment on this issue previously. *See* ECF No. 223. Both parties

lean heavily on precedent hailing from the Southern District of New York or the Second Circuit throughout their briefing. *See e.g.*, ECF Nos. 280-1, 307, & 308. Seeking to join the party, the Court found its own Southern District of New York case that provides as follows: "[I]t is improper for a party to file a successive motion for summary judgment which is not based upon new facts and which seeks to raise arguments it could have raised in its original motion." *Campers' World Int' l, Inc. v. Perry Ellis Int l, Inc.*, 221 F.R.D. 409, 409 (S.D.N.Y. 2004). So PFP's "Renewed" Motion for Partial Summary Judgment (ECF No. 279) is **DENIED**, once more.

### C. Third Motion for Summary Judgment

Defendants' first motion seeks to have the Court determine whether PFP can seek disgorgement of profits as a remedy. *See* ECF No. 280. This is a tricky one.

PFP seeks to disgorge profits that Defendants allegedly derived from their unauthorized use of PFP's photographs. *See* ECF No. 222 at 44–45. Defendants contend that their profits are too attenuated from their alleged infringement of PFP's copyrights, and thus any attribution of profit would be impermissibly speculative. ECF No. 280-1 at 5. Defendants aver that Defendant Epic did not care which photographs it used in the flyers, that the Defendant Grocers definitely did not care which photographs Epic used in the flyers, and that the use of PFP's had "no discernible effect on its business." *Id*. at 9–15. Accordingly, Defendants argue that the profits of neither Epic, nor the Defendant Grocers, can be disgorged as a matter of law. *Id.*

PFP counters that profits earned both by Defendant Epic in making advertisements, and by Defendant Grocers in selling food, are attributable to the use of PFP's photographs. ECF No. 307 at 7–8. PFP argues that as long as it can show Defendants' profits "have some relevance" to the infringing use, it is Defendants' burden to show which profits were not attributable to such infringement. *Id.* at 12, 19–21. Furthermore, PFP points out that some profit evidence of Defendant Epic is not yet in the record, pending disposition of a motion to compel. *Id.* at 7.

In Reply, Defendants maintain that any attribution of profits to the infringement remains impermissibly speculative. *See* ECF No. 312.

    *i.   Profits*

Section 504(b) of the Copyright Act of 1976 sets forth the evidentiary burdens for recovery of profits in infringement actions: "The copyright owner is entitled to recover ... any profits of the infringer that are attributable to the infringement.... In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). And "[w]hen an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner." 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.03, 14–34 (2004); *see also Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 711 (9th Cir. 2004) (citing same). "'[A] district court must conduct a threshold inquiry into whether there is a legally sufficient causal link between the infringement and

9

subsequent indirect profits." *Starship, LLC v. Ghacham, Inc.,* 2023 WL 5670788, *11 (C.D. Ill. July 17, 2023) (citing *Mackie v. Rieser*, 296 F.3d 909, 915 (9th Cir. 2002)). So, "to survive summary judgment on a demand for indirect profits pursuant to § 504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Mackie,* 296 F.3d at 915–16. This may be shown by "proffer[ing] some evidence ... [that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement." *Polar Bear,* 384 F.3d at 711 (quoting *Mackie,* 296 F.3d at 911). "When the infringing material is a prominent part of an advertising campaign for a product, evidence that consumers who purchased the product had seen the advertisement and that the advertisement resulted in profits is sufficient for a finding of causation." *Griffo v. Oculus VR, Inc.,* 15-CV-1228, 2018 WL 6265067, at *11 (C.D. Cal. Sept. 18, 2018) (citing *Garcia v. Coleman,* 2009 WL 799393 (N.D. Cal. 2009).

    Here, PFP need only offer evidence that the photographs "may have actually influenced the purchasing decisions" of the Defendant Grocers for the flyers, or the Defendant Grocer's customers for the food, to create a triable issue regarding whether the infringement "at least partially caused the profits that the infringer generated as the result of the infringement." *See Polar Bear*, 384 F.3d at 714; *Mackie*, 296 F.3d at 911. The Defendant Grocers themselves attest that the Epic-prepared advertisements drew customers into their stores to buy food represented in those advertisements, so summary judgment in their favor is inappropriate. *See* ECF No.

10

303-2, at 62:11–63:1, 338:18–339:2; *see also*, ECF No. 303-3, at 85:11-23. Furthermore, it is Defendant Epic's business to create these advertisements, comprising mostly of photographs of food, the name of the food, and prices. *See e.g.*, ECF No. 222-25 at 66–77. So, as long as PFP can point to profits made from Defendant Epic's sale of advertisement services utilizing the infringing photographs to Defendant Grocers, summary judgment in Defendant Epic's favor on this issue is not appropriate. *See Fournier v. Erickson,* 242 F.Supp.2d 318, 327 (S.D.N.Y. 2003); *see also Cream Records, Inc. v. Joseph Schlitz Brewing Co.,* 864 F.2d 668, 669 (9th Cir. 1989). PFP has done so, *see* ECF No. 258-13, and seeks more discovery on the subject, which remains contested, *see* ECF No. 307 at 7; ECF No. 250. Accordingly, Defendants' Motion for Partial Summary Judgment (ECF No. 280) is **DENIED**.

### D. Fourth Motion for Summary Judgment

Defendants' second motion seeks to have the Court determine whether the affirmative defense of copyright misuse applies. *See* ECF No. 281. Defendants contend that because PFP derives more income from litigating infringement than from selling photographs, it would be contrary to public policy to allow PFP to prevail here. *Id.* at 26–28. In making this argument, Defendants aver that PFP's photographs are of minimal value, that no one voluntarily pays for their use, and that PFP has arbitrarily inflated the photographs' value by bootstrapping ever-increasing default judgment awards. *Id.* at 6–12, 17–21. Furthermore, Defendants point out that PFP's present-day operations consist mainly, or entirely, of combing the internet for infringement, and shaking down businesses found to be using PFP's photographs. *Id.*

PFP counters that suing to defend one's copyrights is customary, and that copyright misuse demands a higher bar than mere ickiness in tactics. *See* ECF No. 306. Instead, according to PFP, in order to have committed misuse, a copyright owner must have "trie[d] to extend the copyright monopoly to non-copyrightable items" which PFP contends it hasn't done. *Id.* at 9–10.

Defendants replied, regurgitating their initial arguments. *See* ECF No. 313.

i.   *Misuse*

Copyright misuse is an affirmative defense that "bars a culpable plaintiff from prevailing on an action for the infringement of the misused copyright." *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 601 (5th Cir. 1996). A type of unclean-hands defense, copyright misuse "forbids the use of the [copyright] to secure an exclusive right or limited monopoly not granted by the [Copyright] Office and which is contrary to public policy to grant." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 792 (5th Cir. 1999) (quoting *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 977 (4th Cir. 1990)). A plaintiff misuses a copyright when it attempts to use the copyright to obtain "monopoly power" over "property not covered by the ... copyright." *Id.* at 793 (quoting *Lasercomb*, 911 F.2d at 976).

The Court finds *Philpot v. WOS, Inc.,* most instructive on the dispute here. 1:18-CV-339-RP, 2019 WL 1767208, at *11–12 (W.D. Tex. Apr. 22, 2019). Like here, the plaintiff in *Philpot* was accused of maintaining "what is effectively a coercive licensing practice . . . suing users to obtain settlement agreements as his only real source of business revenue." *Id.* at 11. It was established that the *Philpot* plaintiff

12

was "rarely paid in money for his photography, sells very few prints of his work, and loses money on his photography work almost every year." *Id.* And like alleged here, "he began searching for [copyright] violations because he was not making money on his photography," with "settlement agreements" being his primary source of income. *Id.* The *Philpot* court concluded that "A reasonable jury could infer [that his] aggressive litigation practice is an abusive way to monetize works he cannot sell." *Id.* But because he was merely "seeking to secure his monopoly rights over his own copyrighted works" and "not seeking to extend that monopoly power to any other property not covered by his copyrights," the *Philpot* court found no copyright misuse. *Id.* at *11 (citing *Alcatel*, 166 F.3d at 792–93). So too here.[9]

A copyright is, among other things, a license to sue people who use your protected works. *See* 17 U.S.C. § 501(b). We will need more from the Fifth Circuit and Defendants before we say that PFP's exercise of that right is instead "misuse."[10] Accordingly, Defendants' Motion for Summary Judgment (ECF No. 281) is **DENIED**.

### E. Fifth Motion for Summary Judgment

We end this journey with Defendant Grocers' motion, which seeks dismissal of all claims against them for copyright infringement. *See* ECF No. 283-1. Defendant Grocers contend that because they were divorced from the process of creating the weekly advertisements, they cannot be liable for direct infringement. *Id.* at 8.

---

[9] *Cf. Prepared Food Photos Inc. v. Clydes Chicken King Inc.*, 6:24-CV-00351, 2025 WL 890173, at *2 (W.D. La. Mar. 20, 2025) (Summerhays, J.) (a similar case that found, in the context of attorney's fees, that PFP's litigation was just an "attempt to protect its copyright").

[10] Of course, if it were to come out at trial that PFP were suing over photographs that were not theirs, *see ante* at 6–7, the copyright misuse defense may apply, but would be duplicative of a finding of no copyright ownership. *See Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 642, 647 (7th Cir. 2003) (Posner, J.)

13

PFP opposes, highlighting that the Defendant Grocers had input over the contents of the weekly advertisements and final say over whether they would go out for distribution. *See* ECF No. 308 at 7–8. PFP thus argues that the Defendant Grocers cannot merely point the finger at their advertising agency, Epic, and escape liability. *Id.* at 9–12.

Defendant Grocers replied. *See* ECF No. 315.

i.   *Volitional Conduct*

To establish direct copyright infringement, PFP "must also establish causation, which is commonly referred to as the 'volitional-conduct requirement.'" *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019) (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017)); *see also BWP Media USA, Inc. v. T & S Software Associates, Inc.,* 852 F.3d 436, 444 (5th Cir. 2017) ("We adopt the volitional-conduct requirement in direct-copyright-infringement cases"). The volitional conduct doctrine requires a party to be the "direct cause" and "actively involved" in infringement for direct liability to attach. *VHT,* 918 F.3d at 731. The doctrine arises *primarily* in cases where the defendant "does nothing more than operate an automated, user-controlled system." *Id.* (quoting *Am. Broad. Co., Inc. v. Aereo, Inc.*, 573 U.S. 431, 454 (2014)). In those situations, the plaintiff must provide evidence "showing the alleged infringer exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of its photos." *Id.* at 732 (quoting *Giganews*, 847 F.3d at 666, 670) (quotation marks and internal brackets

omitted). Volitional conduct "simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts." *Giganews*, 847 F.3d at 666 (quoting 4 *Nimmer on Copyright* § 13.08[C][1]).

The Court will dispel first some of the parties' misapprehensions. To start, it is not that the Defendant Grocers must have had an infringing intent to have been "volitional"—so neither Defendant Grocers' claims of ignorance, nor PFP's charges of notice, are relevant to this inquiry. *See Perfect 10, Inc. v. Giganews, Inc.,* 2013 WL 2109963, at *6 (C.D. Cal. 2013) ("[T]he key to understanding the so-called 'volitional conduct' requirement is to equate it with the requirement of causation, not intent."). Second, PFP is wrong in claiming that the volitional-conduct requirement is confined to automated platforms or hosting services. *See* ECF No. 308 at 14. Instead, the volitional-conduct requirement merely "takes on greater importance in cases involving automated systems[.]" *VHT*, 918 F.3d at 731. So, the fact that Defendant Grocers are not an automated platform does not alone negate the volitional-conduct requirement. *See id*. With that resolved, the Court must then determine whether Defendant Grocers' participation in the creation of the weekly advertisements suffices as volitional conduct. It does.

Defendant Grocers give input to Defendant Epic both before and after the advertisements are created. *See* ECF No. 308 at 7–8 (citing record depositions); ECF No. 283-1 at 16. That discretion and control over the final product, albeit without Defendant Grocers' themselves compiling the photographs, sets Defendant Grocers'

15

conduct apart from that in the precedents they cite. Unlike Zillow in *VHT*, and T&S in *BWP Media*, Defendant Grocers were not subject to the whims of users who infringed others' copyrights by way of their platforms. *VHT*, 918 F.3d at 732–34; *BWP Media*, 852 F.3d at 442. Instead, Defendant Grocers directed and collaborated with their ad agency, Defendant Epic, to create and distribute alleged infringing advertisements, for which direct liability can attach. *See Huffman v. Activision Publ'g, Inc.,* 219CV00050RWSRSP, 2020 WL 8678493, at *2, 14–16 (E.D. Tex. Dec. 14, 2020) (Payne, M.J.), *report and recommendation adopted,* 219CV00050RWSRSP, 2021 WL 2141352 (E.D. Tex. May 26, 2021). Simply put, because Defendant Grocers "exercise[d] control" over the creation of the infringing works, the volitional-conduct requirement is met. *VHT,* 918 F.3d at 732.

Alternatively militating in favor of direct liability, the Defendant Grocers use, display, and distribute the advertisements in their stores. *See* ECF No. 308 at 12 (citing record depositions). "Because the Copyright Act grants exclusive rights to the copyright owner 'to distribute copies or phonorecords of the copyrighted work to the public,' distribution of copies of a copyrighted work satisfies the copying element of a copyright claim even if the distributor did not produce the copies itself." *Atari Interactive, Inc. v. Redbubble, Inc.,* 515 F.Supp.3d 1089, 1110 (N.D. Cal. 2021), *aff'd in part, appeal dismissed in part*, 21-17062, 2023 WL 4704891 (9th Cir. July 24, 2023) (quoting 17 U.S.C. § 106(3), and citing *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62 (1st Cir. 2002) and H.R. Rep. 94-1476, at 61 (1976). Accordingly, the Defendant Grocers' Motion for Summary Judgment (ECF No. 283) is **DENIED**.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that PFP's first Motion for Summary Judgment (ECF No. 275) is **DENIED**.

**IT IS FURTHER ORDERED** that PFP's second Motion for Summary Judgment (ECF No. 279) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' first Motion for Summary Judgment (ECF No. 280) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' second Motion for Summary Judgment (ECF No. 281) is **DENIED.**

**IT IS FURTHER ORDERED** that Grocer Defendants' Motion for Summary Judgment (ECF No. 283) is **DENIED.**

**MONROE, LOUISIANA**, this 4th day of June, 2025.

_____
Terry A. Doughty
United States District Judge