# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

PREPARED FOOD PHOTOS INC.          CASE NO.  3:22-CV-00037

VERSUS                             JUDGE TERRY A. DOUGHTY

EPIC SOLUTIONS LLC, ET AL.         MAG. JUDGE KAYLA D. MCCLUSKY

## MEMORANDUM ORDER

Before the Court are two motions: (1) a Motion for Documents and Testimony Regarding Waiver of the Attorney-Client Privilege [doc. #249] filed by Prepared Food Photos, Inc.; and (2) a Fourth Motion to Compel and for Sanctions [doc. #250] filed by Prepared Food Photos, Inc.  The motions are opposed.  [docs. #264, 267].

For the reasons stated below, **IT IS ORDERED** that the Motion for Documents and Testimony Regarding Waiver of the Attorney-Client Privilege [doc. #249] is **DENIED**.  **IT IS FURTHER ORDERED** that the Fourth Motion to Compel and for Sanctions [doc. #250] is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED IN PART AS MOOT**.

## Background

This suit arises from alleged copyright infringement of food photographs.  (Second Amended Complaint [doc. #222]).  Plaintiff Prepared Foods Photos Inc. ("PFP") creates and licenses photographs of food.  *Id.*  The alleged infringement occurred when these images were improperly used in advertisements by Epic Solutions, Inc. ("Epic"), various grocery stores[1], and

---

[1] All other named Defendants include Adrien's Supermarket, Inc.; McDaniel Food Management Inc.; McLawrence Foods, LLC; McDaniel Foods of Alexandria, Inc.; McDaniel Foods of Drew,

"Infringing Non-Party Epic Customers" ("INPECs").[2]  *Id.*  PFP filed its initial Complaint in this Court on January 5, 2022, which it subsequently amended on June 12, 2024.  [docs. #1, 190].  A Second Amended Complaint followed on October 11, 2024.  [doc. #222].

Throughout this litigation, there have been numerous discovery disputes, necessitating zoom hearings, telephone conferences, and multiple rulings.  PFP filed an initial motion to compel on February 22, 2023, which was addressed at a hearing on June 7, 2023.  [docs. #62, 87].  It then filed a second motion to compel and motion for sanctions on August 24, 2023.  [doc. #94].  The Court ruled on these motions on October 31, 2023.  [doc. #111].  Additionally, the undersigned held a discovery conference with the parties on January 25, 2024, which resulted in verbal orders for various productions, followed by further production orders on February 7, 2024.  [docs. #120, 122].

On February 28, 2024, the undersigned issued an Order ruling on a motion to extend the deadline to respond to a discovery request.  [doc. #127].  In that Order, the undersigned reminded counsel that not every discovery dispute needs to be brought before the Court and encouraged the parties to seek mutual resolution while maintaining a civil tone in their communications.

On May 2, 2024, PFP filed a third motion to compel and a second motion for sanctions.  [doc. #134].  The Court granted the motion in part and denied it in part.  [doc. #200].  Epic was ordered to produce documents within thirty days and to deposit $3,500 into the Court's registry.

---

LLC; McLawrence Foods of Swartz, Inc.; McLawrence Foods of Oak Grove, Inc.; McLawrence Foods of Columbia, LLC; McLawrence Foods of W. Monroe, LLC; Piggly Wiggly South Opelousas, LLC; Sullivan's Grocery La. #2 Inc.; Sullivan's Inc. Grocery; and John Does 1-100.

[2] These include Bill's Cash Saver, Naifeh's Cash Saver, Nocona Market Place LLC, Triple V Inc., Triple V, Inc., and Teet's Food Store, Inc.  [doc. #222, p. 5].

Epic subsequently filed a motion for *in camera* review on June 20, 2024, which the undersigned denied.  [docs. #195, 218].

On December 9, 2024, PFP filed a Motion for Sanctions Against Defendant Epic Solutions, LLC and Defendants' Counsel Pursuant to Rules 30 and 37 of the Federal Rule of Civil Procedure, and 28 U.S.C. § 1927 and to Amend the Scheduling Order for Good Cause pursuant to Rule 16.  [doc. #234].  The undersigned scheduled a telephone status conference for December 16, 2024, to address the outstanding issues.  [doc. #237].  At the hearing, the undersigned granted the motion in part, ordering that the depositions proceed at the office of the court reporter in Memphis, Tennessee.  [doc. #239].  However, the same courtesy was extended to defense counsel for any corporate depositions noticed for PFP.  *Id.* at p. 2.  The Court also extended deadlines for expert notices, reports, depositions, and the filing of dispositive motions for both Plaintiff and Defendants.  *Id.*  The undersigned deferred ruling on the remainder of the motion until full briefing was submitted.  *Id.* at p. 3.  The parties and counsel agreed that both depositions would last seven hours.  [doc. #238, p. 5].  The undersigned issued a Memorandum Order granting in part and denying in part PFP's motion.  [doc. #296].  The Court denied PFP's request for sanctions and costs except to the extent that Epic agreed to pay the court reporter cancellation fee and the costs to transport boxes.  The request for *in camera* review was also denied.

In this latest round of motions, on January 24, 2025, PFP filed a Motion for Documents and Testimony Regarding Waiver of the Attorney-Client Privilege.  [doc. #249]. Epic, on February 20, 2025, filed a response in opposition.  [doc. #264].   On February 25, 2025, PFP filed a reply in support of its motion.  [doc. #271]. The motion is fully briefed.

Additionally, on January 24, 2025, PFP filed a "Fourth Motion to Compel and for Sanctions Against Defendant Epic Solutions LLC Pursuant to Federal Rule of Civil Procedure 37" [doc.

#250].  Epic filed an opposition [doc. #267] on February 20, 2025.  On February 25, 2025, PFP filed a reply memorandum [doc. #272].  Epic, with leave of Court, filed a sur-reply memorandum on March 7, 2025.  [doc. #291].  Finally, on March 19, 2025, PFP, with leave of Court, filed a supplemental memorandum in support of its motion [doc. #305].  This motion, too, is fully briefed.

## Law & Analysis

### I.     Legal Standard

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

Under the 2015 amendment, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, No. CV 15-638, 2017 WL 2267149, at *1 (E.D. La. May 24, 2017) (citations omitted).  However, this shared responsibility to weigh proportionality is not "intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." *Id.*

A party objecting to discovery "must state with specificity the objection and how it relates to the particular request being opposed . . ." *Reyes v. Red Gold, Inc.*, No. CIV A B-05, 2006 WL 2729412, at *1 (S.D. Tex. Sept. 25, 2006) (citations omitted).  In other words, to escape the production requirement, a responding party must interpose a valid objection to each contested discovery request. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th

Cir. 1990) (citation omitted).  Conclusory objections that the requested discovery is "overly broad," "burdensome," "oppressive," and "irrelevant," do not suffice.  *Id.*

A party that receives objections to its propounded discovery may file a motion to compel the discovery responses.  FED R. CIV. P. 37(a)(1).  Under Rule 37(a)(1), the motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  FED. R. CIV. P. 37(a)(1).

## II.    Waiver of the Attorney-Client Privilege

PFP moves this Court to compel Epic to produce communication between Epic and its counsel put at issue by Epic and to order additional depositions of Epic's witnesses because of the waiver of the attorney-client privilege.  [doc. #249-1, p. 4].  PFP alleges that in 2020, Epic's attorney, Justin Jones ("Jones"), and PFP's attorney, Matthew Higbee ("Higbee"), communicated regarding the prospect of PFP providing its entire library to Epic, so that Epic could perform a comparison of its library to PFP's library.  *Id.* at pp. 5-6.  Due to the size of PFP's library and Epic's request for a reduced file size, PFP narrowed the library to images provided to Multi-Ad, totaling approximately 4,700, and sent it to Epic.  *Id.* at p. 6.  Epic confirmed receipt and claimed that it performed an image comparison of its library with the subset of images provided by PFP. *Id.*  Supposedly, Epic now claims that its counsel never conveyed that the images provided were only a subset of the entire library.  *Id.*

Mr. Rick Malone ("Malone"), Vice President of Technology for Epic, was deposed by PFP, and he testified that he expressly instructed Epic's attorney to provide its library to PFP, so it could perform a comparison search.  *Id.* at p. 7.  PFP asserts that Epic never offered to provide its library. *Id.*  Malone also testified that, based on its communications with Jones, Epic believed the 4,700

images sent by Higbee were PFP's entire library. *Id.* PFP maintains that it "has no means to resolve the inconsistences between Defendant's deposition . . . and the documents in evidence" and asks this Court to intervene and compel copies of all correspondence between Jones and Epic in 2020 and "further testimony on that limited topic." *Id.* at p. 8.

PFP argues that the information sought is relevant to the issue of willfulness in this case. *Id.* The allegations against Epic include that Epic willfully continued to infringe on PFP's copyrights even after notification by PFP. *Id.* at p. 4. "Since Epic's defense here appears to be that it acted reasonably by comparing the subset of photos from PFP to its own library using a software product, the accuracy of [Malone]'s testimony on the two issues referenced above are important issues in this case." *Id.* at p. 9. By asserting that Epic was not aware that PFP's photo library was approximately 30,000 images, Epic inserted issues of fact into the record concerning its communications with counsel. *Id.* at p. 10.

Epic argues that PFP has misstated the record and testimony, mischaracterized Epic's defenses, and ignored the available avenues to address any alleged inconsistencies. [doc. #264, p. 1]. Malone never claimed that any of Epic's defenses or positions relied solely on the advice or conclusions of Jones, and Malone never revealed the substance of any specific communication with Jones. *Id.* at p. 3. While Malone did testify that he was not aware that PFP only sent a subset of images, he also testified that he did not have significant contact with Jones and that he was not aware of all communication between Jones and PFP. *Id.* at p. 5. Steve Barnes ("Barnes"), Epic's owner, was primarily aware of the communications between Jones and PFP. *Id.* He testified that while PFP claimed that its library contained more images than just the ones included in the JPEG library, it was unclear to Epic whether those images had been available through other avenues or were privately available. *Id.* at p. 6.

6

Malone also testified that Epic had previously offered to make its library available to PFP; however, he also stated he "had no idea" whether Jones had actually offered this to PFP or not. *Id.* at pp. 6-7. Epic contends that it does not make any advice obtained from Jones or any of his conclusions or opinions the factual basis of any of its defenses. *Id.* at p. 9. Further, it is of no moment whether Malone was aware of PFP's full library size when he compared the subset of images to Epic's library. *Id.* Malone's awareness does not change the content of the communications between Jones and PFP's counsel, and it does not prevent PFP from arguing that Epic's comparison was inadequate. *Id.*

PFP maintains that when Malone testified that Jones never informed Epic that the 4,775 images received from PFP was just a subset, he "was expressly testifying to his communications with counsel." [doc. #271, pp. 4-5]. By asserting that it was not aware that PFP's full photo library was more than the 4,775 images sent, Epic inserted issues of fact into the record. *Id.* at p. 6. Further, PFP urges that "Epic cannot be permitted to assert an 'innocence' defense to Plaintiff's charges of willfulness by simultaneously using the privilege as a shield." *Id.* at p. 7. PFP asks this Court to compel all attorney-client communications related to the 2020 communications between Epic and Jones and additional depositions. *Id.* at p. 9. In the alternative, the Court should not permit Epic to testify at trial that (1) it believed that the 4,775 images it was sent constituted PFP's entire image library; and (2) it offered to share its own library with PFP. *Id.*

The attorney-client privilege is the oldest of the privileges for confidential communications. *Penemue, LLC v. Stevens*, No. CV 22-5093, 2025 WL 1101413, at *2 (E.D. La. Apr. 14, 2025). The attorney-client privilege protects from disclosure confidential communications made to obtain a lawyer's professional advice and assistance. *S.E.C. v. Brady*, 238 F.R.D. 429, 438 (N.D. Tex. 2006) (citing *Dabney v. Investment Corp. of Am.*, 82 F.R.D. 464,

465 (E.D. Pa. 1979).  The attorney-client privilege "was intended as a shield, not a sword." *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) (quotation and quotation marks omitted). "'[W]hen confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege.'"  *Id.* (quoting *United States v. Mierzwicki*, 500 F. Supp. 1331, 1335 (D. Md. 1980)).  "The great weight of authority holds that the attorney-client privilege is waived when a litigant 'place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.'"  *Id.* (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

However, "'[r]elevance is *not* the standard for determining whether or not evidence should be protected from disclosure as privileged, . . . even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue.'"  *In re Itron, Inc.*, 883 F.3d 553, 561 (5th Cir. 2018) (quoting *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994)).  "Attorney/client documents may be quite helpful [to an adversary's argument], but this is not a sufficient basis for abrogating the privilege."  *In re Burlington N., Inc.*, 822 F.2d 518, 533 (5th Cir. 1987).  Instead, for this type of waiver to occur, the client "'must rely on privileged advice from his counsel to make his claim or defense.'"  *In re Itron*, 883 F.3d at 561 (quoting *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008)).  "The waiver does not depend solely on the relevance of the privileged material, or on the adversary's need, no matter how strong, for the communication. The focus is on the privilege holder, and the sole concern is whether the privilege holder has 'committed himself to a course of action that will require the disclosure of a privileged communication.'"  *Conoco Inc. v. Boh Bros. Const. Co.*, 191 F.R.D. 107, 110 (W.D. La.

1998) (quoting *Succession of Smith v. Kavanaugh, Pierson and Talley*, 513 So. 2d 1138, 1146 (La. 1987)).

PFP has brought two claims against Epic: (1) Direct Copyright Infringement pursuant to 17 U.S.C. § 101; and (2) Contributory Copyright Infringement pursuant to 17 U.S.C. § 101. [doc. #222, pp. 43-45]. PFP argues that Epic inserted issues of fact into the record regarding willfulness. Contributory infringement is "intentionally inducing or encouraging direct infringement." *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 798 (5th Cir. 2017) (quotation omitted). To establish a claim for contributory copyright infringement, a copyright owner must show that the defendant, with knowledge of the infringing activity, induced, caused, or materially contributed to the infringing conduct of another. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999). Willfulness requires a showing that the defendant knew its conduct constituted contributory copyright infringement or acted with reckless disregard of Plaintiff's rights as a copyright holder. *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 395 (5th Cir. 2014).

PFP asks the Court to compel Epic to produce attorney-client communications and submit to further depositions on the basis that Epic has waived the privilege. PFP contends that Epic placed its communications with counsel at issue during deposition testimony related to a 2020 image comparison. However, the Court finds that Epic has not waived the attorney-client privilege.

The attorney-client privilege serves a critical function in protecting the confidentiality of legal advice and ensuring open communication between clients and counsel. Courts do not disturb that protection unless the party holding the privilege affirmatively places the legal advice at issue. Relevance or strategic value to the opposing party is not enough. *In re Itron*, 883 F.3d at 561.

Waiver requires that the communication be made a necessary part of the privilege holder's own case. *Id.*

PFP's motion rests on the premise that Epic's witnesses opened the door to waiver by testifying about their understanding of what PFP provided in 2020. [doc. #249]. PFP highlights the deposition testimony of Malone, who stated that he believed the set of 4,700 images sent by PFP constituted PFP's entire image library. *Id.* PFP argues that Malone's statements implied reliance on privileged communications with Epic's attorney, Jones, and, therefore, triggered a waiver of the privilege. *Id.*

Malone's testimony did not reflect or rely on the substance of legal advice. He did not testify that Epic's comparison was guided by or dependent on legal conclusions from Jones. He did not state that Epic took or refrained from taking any action based on what its attorney advised. Malone simply testified as to what he believed at the time and acknowledged that he lacked full awareness of the communications between Jones and PFP's counsel. This is not enough to constitute waiver.

Epic's position in this litigation also does not rest on any assertion that it acted in reliance on legal advice. To the contrary, Epic explicitly states that it is not offering the advice or conclusions of counsel as a defense. Specifically, Epic has not made any privileged communication the basis of its position in response to the willfulness allegation. PFP identifies no affirmative act by Epic that would require the disclosure of privileged information. Although PFP disputes the accuracy of Malone's recollection, that disagreement is not a basis to override the privilege. Courts have been clear that relevance or even the centrality of a factual dispute does not justify compelled disclosure of attorney-client communications unless the privilege holder has

10

affirmatively placed the legal advice at issue. *See Conoco*, 191 F.R.D. at 110; *In re Itron*, 883 F.3d at 561.

This Court previously cautioned the parties that not every discovery disagreement warrants judicial intervention. [doc. #127]. Here, the dispute centers on factual issues that can be addressed through ordinary discovery tools and trial presentation, not by invading privileged communications. PFP remains free to challenge the credibility of Epic's witnesses or argue that Epic's image comparison was inadequate. However, it may not obtain privileged communications between Epic and its counsel.

The attorney-client privilege plays a critical role in preserving the confidentiality of legal advice, and the Court will not lightly disturb it. The record does not support a finding that Epic waived that privilege. Thus, the Court will not compel production of confidential attorney-client communication and will not compel another deposition. The Court also declines to grant PFP's alternative request to preclude Epic from testifying at trial regarding the subset of images and its alleged offer to share its own library with PFP.

Accordingly, **IT IS ORDERED** that the Motion for Documents and Testimony Regarding Waiver of the Attorney-Client Privilege [doc. #249] filed by Prepared Food Photos, Inc. is **DENIED**. **IT IS FURTHER ORDERED** that the motion is **DENIED** insofar as it seeks, alternatively, to preclude Epic from testifying at trial that (1) it believed the 4,775 images it received constituted PFP's entire image library; and (2) it offered to share its own library with PFP.

### III.    Fourth Motion to Compel and for Sanctions

PFP moves the Court to enter orders under Fed. R. Civ. P. 37 to compel Epic to

(a) produce financial documents that have still not been produced despite numerous prior discovery orders; (b) provide complete, verified responses to Plaintiff's second and third sets of interrogatories; and (c) produce Steven Barnes,

11

who is Epic's founder, president and Rule 30(b)(6) designee for financial matters, for a continued deposition.

[doc. #258, p. 4].[3]  PFP also requests that the Court sanction Epic and its counsel for disregarding the Court's prior orders, including by imposing "one or more sanctions enumerated by Rule 37(b)." *Id.*  Specifically, PFP moves the Court for an order for "one or more of the following" options: (1) to strike "Epic's Answer and Affirmative Defenses, and entering default judgment or a directed verdict against Epic on the issue of liability, finding it a willful infringer"; (2) to declare "that PFP is entitled to adverse inferences at trial, including that . . . Epic is a willful infringer; . . . Epic intentionally obfuscated its revenue attributable to its infringing activities and actively prevented [PFP] from learning the truth; and . . . that [PFP] is entitled at a minimum to the maximum statutory damages of $150,000 per work for each photograph that [PFP] proves to be infringed at summary judgment or trial, or that it can use Epic's total revenues with no cost deductions as the basis for its' expert's damages calculations of Epic's profits. . .''; [3]  to preclude "Epic from offering any of its own evidence on the issue of damages, including but not limited to, any documents related to Epic's costs"; and (4) to "impose monetary sanctions against Epic and Epic's Counsel." [doc. #258, pp. 26-27].  Although not included in its requested relief, in briefing, PFP also requests that the Court require Epic to remove redactions from previously produced documents and to refrain from further redactions.  *Id.* at pp. 22-23.

In support of their motion, PFP argues that the vast majority of documents Epic was ordered to produce in July 2024 were not produced until January 2025.  At the time the Fourth Motion to Compel was filed, PFP argued, even with the January 2025 production, that Epic still had failed to fully comply with prior Court orders and its discovery obligations, particularly with regard to the

---

[3] The referenced page number is based on the Court's numbering system, not the page number assigned by the filer.

INPECs.  PFP also raises concerns that Epic redacted the documents without providing a log and the revenue figures provided are inconsistent from one document to the next without explanation. With regard to the revenue figures, Barnes, Epic's President, could not explain the discrepancies at his Rule 30(b)(6) deposition on behalf of Epic.  Following his deposition, PFP propounded additional interrogatories and requests for production, to which Epic responded on January 21, 2025 (in addition to the 15,000 pages of financial documents produced on January 10, 2025).  PFP notes that none of the productions include data on Epic's purported annual overhead costs.  PFP also raises serious concerns about the veracity of Barnes' testimony after also deposing Bowers, Epic's accountant.  In summary, PFP provides a list of the outstanding discovery requests:

   i. All documents and data underlying Epic's overall profit and loss statements for the years 2017-2022, that Epic produced on November 30, 2023 (Epic 000417 – Epic 000422 and Deposition Exhibit 218);

   ii. Epic's overall profit and loss statements for the years 2023 and 2024, including all documents and data underlying these as-yet unproduced statements;

   iii. All documents and data used to create "Epic's 'Exhibit G'" (Dkt. 107-7 and Deposition Exhibit 9);

   iv. All documents and data used to create the twenty-four-page summaries produced in March 2024 (Ex. 40 to 5/2/24 Wax Decl., Dkt. 134-41 and Deposition Exhibits 220, 225, 228 and 232);

   v. All invoices submitted to the Grocer Defendants, AWG, AGI, and the INPECs from March 1, 2017, through present, and particularly the customer and vendor invoices identified on page 7 above;

   vi. All financial documents related to the INPECs, including but not limited to those pertaining to revenue and profits, from March 1, 2017, to the present, and particularly:

    •All customer invoices and vendor invoices identified in the chart above, and particularly for Naifeh's and Bill's for all years because Epic's January 21, 2025 Interrogatory Responses (described more fully below) indicate that accurate documents were not produced for these two IN-PECs that Epic has known about since 2021;

> •Annual summaries for each year, 2017-2024, similar to the "twenty-four-page summary produced in March 2024," including all documents and data underlying, or used to create, these as-yet unproduced documents for the IN-PECS.

[doc. #258, pp. 13-14]. Finally, PFP asserts that its expert, Halle Matthews ("Matthews"), has been stymied in her efforts to prepare a report because of missing information, which she has identified for Epic. *Id.* at p. 14; [doc. #267, Exh. 11].

In response, Epic produced supplemental responses and verified answers to PFP's Second Set of Interrogatories [doc. #267, Exh. A]. Epic contends that these responses are more than sufficient to satisfy PFP's discovery needs. Epic argues that further discovery would be unduly burdensome and harassing to Epic and would be significantly disproportionate to that which PFP should be reasonably entitled. [doc. #267, p. 1]. As previously explained, Epic has undertaken to compile data that it does not track in the normal course of business and further explained that it would be producing additional records once it completed the recreation of EPIC-007725-7748 and that production would include similar transaction-by-transaction breakdowns. Specifically responding to PFP's motion, Epic asserted as follows:

> (1) Exhibit G – As Epic's Supplemental Response to Interrogatory No. 6 addresses in detail, there is simply nothing left to produce and nothing left for anyone to testify about as to Exhibit G. This was a document primarily prepared by Epic's certified public accountant, Ronald Brower, and Mr. Brower produced all documents in his possession upon which he relied in preparing the document. He was deposed at length concerning its creation, as was Epic's representatives.

> (2) EPIC-007725-7748 – As Epic's supplemental response to Interrogatory No. 7 makes plain, Epic has confirmed that it would not have been able to create this set of documents without Mr. Brower's assistance and, given that Mr. Brower apparently did not retain any materials associated with the original creation of EPIC-007725-7748, Epic cannot say for sure what materials are responsive. Epic is currently in the process of recreating these documents, with Mr. Brower's assistance, and will include transaction-by-transaction reports for each line item as it completes the recreation. As Epic's supplemental response also notes these

documents cannot simply be generated by running reports directly from Epic's QuickBooks account. Rather, they have to be created partially by running reports from QuickBooks and partially by manually entering data with Mr. Brower's assistance. While Mr. Brower did not recall his original role in creating EPIC-007725-7748, he has certainly recognized during the recreation process that his assistance to these documents' creation is essential. Epic will produce the recreated documents along with the supplemental materials upon their completion.

(3) Summaries relating to the INPECs – As Epic's supplemental response to Interrogatory No. 8 demonstrates, Epic was able to consult with Mr. Brower and complete the task of generating and compiling profit and loss summaries for each of the INPECs like the summaries previously produced for the Grocer Defendants and identified as EPIC-007725-7748. These summaries, which also required Mr. Brower's assistance, also include transaction-by-transaction breakdowns for each line item and incorporate all known responsive data relating to the INPECs during all relevant periods. Epic is not aware of any additional responsive materials that it could produce in response to this request.

(4) Epic will supplement its response to Interrogatory No. 7 – As Epic's efforts to complete the summaries and materials in response to Interrogatory No. 7 is ongoing, Epic submits that it will supplement this response upon completion of those materials. As Epic states in its supplemental answers, Epic does not track the information sought by these requests in ordinary course of its business.

[doc. #267, pp. 3-4].

Epic contends that its supplemental production properly addresses the additional financial information PFP's expert, Matthews, identified concerning the profits and losses of the INPECS. She noted that the information was necessary to update the profits figure used as a "starting point" for conducting a disgorgement analysis.   Epic further argues that, even with this additional information, Matthews concedes that she would still have to conduct an apportionment analysis using the profits figure as the starting point before any amount of Epic's profits could be reasonably attributed to any use of the Accused Infringing Copyrights.  However, there is no evidence that any amount of Epic's profits were derived from use of any Accused Infringing Copyrights, and none could exist because Epic charges its customers the same amount for all advertising regardless

of the number or source of images, and the customers pay the same amount regardless of the images used.

Further, Epic argues that a redaction log would be unduly burdensome, explaining that vendor invoices were redacted to omit identification of its customers who have not been named in this lawsuit, consistent with the Court's determination that PFP could not use the discovery process to conduct a "fishing expedition," and to omit the names of its vendors (and the vendor's addresses) due to the sensitive nature of its vendor arrangements and their non-disclosure agreements. However, Epic stated it could create a log identifying vendor redactions versus customer redactions.

Finally, Epic has also provided supplemental responses to PFP's Third Set of Interrogatories [doc. #267, Exh. B] which it states are "the most specific information that it [has] to PFP's discovery requests" and that it "is unaware of any further responsive information or material." [doc. #267, p. 6].

In its reply [doc. #272], PFP addresses three specific points: (1) Epic's accountant, Brower, refutes the false testimony of Epic's President Barnes that Brower was responsible for the preparation of the financial summary documents; (2) Epic offered no explanation for failing to comply with the Court's orders; and (3) Epic has engaged in a pattern of non-compliance, followed by last-minute compliance when faced with motion practice.  As a result, PFP contends that sanctions against Epic should be severe and should include expert costs and attorneys' fees, including those costs of this motion and prior discovery motions, costs of subpoenas to third parties, the cost of Brower's deposition, and any additional necessary depositions the Court may order.  PFP also argues that Epic's non-compliance has been willful, and, therefore, the Court should (1) have Epic's total annual revenue, without any deductions for costs, provided to the jury,

and the jury should be instructed to consider Epic's total annual revenues to be the profits earned from the infringement; and (2) enter judgment of infringement against Epic and assess Epic the costs and expenses of PFP's motion for summary judgment on liability.

In a sur-reply [doc. #291], Epic states that, in addition to the answers and productions identified in its opposition memorandum, it has now provided its Second Supplemental Answers to Plaintiff's Second Set of Interrogatories, which includes production of the additional materials that had been identified in Epic's first supplemental response, but which Epic was still in the process of compiling at the time. With regard to Exhibit G, Epic is clear that there is nothing left to produce. Further, while Brower may not have recalled originally compiling the information for production to PFP, Epic took additional efforts to recreate those documents and to create transaction-by-transaction reports to provide the supporting data for each line item thereon with Brower's assistance. Epic has now produced the supporting materials compiled during the recreation of EPIC-007725-7748, which were produced with Epic's Second Supplemental Answers to Plaintiff's Second Set of Interrogatories as EPIC-045585 through 046217. Epic contends that there is no data left to produce in this regard. Likewise, with respect to the INPECS, Epic produced the same profit and loss summaries in its first supplemental responses (EPIC-044914-045581) as it did for the Grocer Defendants (EPIC-007725-7748), along with the supporting data for each line item therein. Epic has provided the data through 2024.

Epic argues that the Court ordered these productions to facilitate PFP's calculation of damages, and no further discovery is necessary or proportional to that need. These further productions also fully satisfy Matthews' request for additional information to supplement her expert report to conduct the same analysis for INPECS as she did for the Grocer Defendants. Finally, Epic takes issue with PFP's decision that Brower's testimony was correct and that Barnes,

therefore, committed perjury.  While the discovery sought was not part of any reports that Epic would typically run in the ordinary course of its business, Epic undertook the task of gathering the data to resolve this discovery dispute.  Epic contends that PFP's insistence upon sanctions is unwarranted when Matthews has been able to use the materials provided prior to the motion to produce actual profit calculations and given that the remaining materials she requested have now been provided to allow her to do the same for the INPECS.

In the last and final briefing on these issues [doc. #305], PFP responds that Brower was certain he had no role in the preparation of the profit and loss summaries, and Epic should not be permitted to characterize this as a credibility issue between its own witnesses.  Next, PFP argues that Epic's profits are both relevant and need to be determined because they are implicated by the Motion for Partial Summary Judgment of its Entitlement to Statutory Damages and Attorneys' Fees [doc. #279] and Defendant's Motion for Partial Summary Judgment on Plaintiff's Entitlement to Disgorgement of Epic's Profits [doc. #280]. Further, regardless of the outcome of the motions, the jury needs to determine Epic's profits, and PFP contends that "what the jury should be told concerning those profits. . . should be decided on this motion as a sanction for Epic's egregious non-compliance with the Court's orders."  [doc. #305, p. 3].

PFP argues against Epic's law on the disgorgement remedy, contending that the cases cited by Epic are not comparable and instead relate to the profits of downstream parties in a chain of copyright infringers such as the Grocer Defendants.  Even if the disgorgement method is not the applicable remedy, Epic's profits are relevant because one of the factors considered by courts in awarding statutory damages in copyright infringement cases include the defendant's profits.  PFP then contends that the production is still deficient because some of the documents produced are

illegible, they do not explain the prior discrepancies, and they were produced after the expert report deadline and necessitate further costs relating to a supplement report.

In addressing the parties' contentions, the undersigned must first take notice of Judge Doughty's rulings [doc. #336] denying all of the motions for summary judgment filed by the parties. In so ruling, he explained with regard to disgorgement of profits:

> Section 504(b) of the Copyright Act of 1976 sets forth the evidentiary burdens for recovery of profits in infringement actions: "The copyright owner is entitled to recover ... any profits of the infringer that are attributable to the infringement.... In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). And "[w]hen an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner." 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.03, 14–34 (2004); *see also Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (citing same). "'[A] district court must conduct a threshold inquiry into whether there is a legally sufficient causal link between the infringement and  . . .subsequent indirect profits." *Starship, LLC v. Ghacham, Inc.,* 2023 WL 5670788, *11 (C.D. Ill. July 17, 2023) (citing *Mackie v. Riese*r, 296 F.3d 909, 915 (9th Cir. 2002)).
>
> So, "to survive summary judgment on a demand for indirect profits pursuant to § 504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Mackie*, 296 F.3d at 915–16. This may be shown by "proffer[ing] some evidence ... [that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement." *Polar Bear*, 384 F.3d at 711 (quoting *Mackie*, 296 F.3d at 911). "When the infringing material is a prominent part of an advertising campaign for a product, evidence that consumers who purchased the product had seen the advertisement and that the advertisement resulted in profits is sufficient for a finding of causation." *Griffo v. Oculus VR, Inc.*, 15-CV-1228, 2018 WL 6265067, at *11 (C.D. Cal. Sept. 18, 2018) (citing *Garcia v. Coleman*, 2009 WL 799393 (N.D. Cal. 2009).
>
> Here, PFP need only offer evidence that the photographs "may have actually influenced the purchasing decisions" of the Defendant Grocers for the flyers, or the Defendant Grocer's customers for the food, to create a triable issue regarding whether the infringement "at least partially caused the profits that the infringer generated as the result of the infringement." *See Polar Bear*, 384 F.3d at 714; *Mackie*, 296 F.3d at 911.

19

[Doc. #336, pp. 9-10].

### (a) Financial Documents

The undersigned now turns to an analysis of the Fourth Motion to Compel. Despite, PFP's protestations otherwise, Epic has asserted over and over that it has now produced all responsive documents to requests regarding the Defendant Grocers and the INPECs. And Matthews has had the opportunity to supplement her initial report. Of course, to the extent that any documents were illegible, the Court can only assume that by this point, Epic has provided legible copies.[4] Otherwise, the undersigned finds that Epic has, now, with the latest productions, responses, and supplementation, produced discovery that is both relevant and proportional to the needs of the case, and no further responses are warranted.

Accordingly, PFP's Fourth Motion to Compel is **DENIED AS MOOT** as to the productions and supplementation made and **DENIED** to the extent that PFP seeks any further discovery.

### (b) Barnes' Deposition

"A party must obtain leave of court [to take an additional deposition or continue a deposition], and the court must grant to the extent consistent with Rule 26(b)(1) and (2) if the parties have not stipulated to the deposition and the deponent has already been deposed in the case." FED. R. CIV. P. 30(a)(2)(A)(ii). Courts generally disfavor second depositions, and absent a showing of need or good reason, a court should not require a deponent to appear for a second deposition. *Alexander v. Martin*, No. 2:08CV400, 2010 WL 11531257, at *2 (E.D. Tex. June 29, 2010); *see also Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 690 (D. Kan. 1996); *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 389 (W.D. Tex. 1999). Courts have typically reopened a deposition

---

[4] Obviously, if not, Epic should provide new copies of the illegible documents immediately.

"'where a witness was inhibited from providing full information at the first deposition'" or "'where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition.'" *Kleppinger v. Texas Dep't of Transp.*, 283 F.R.D. 330, 333 (S.D. Tex. 2012) (quoting *Keck v. Union Bank of Switzerland*, No. 94CIV.4912(AGS)(JCF), 1997 WL 411931, at *1 (S.D. N.Y. July 22, 1997)).  "District courts in the Fifth Circuit 'have applied a good cause standard when deciding a motion to retake a deposition,' and they usually place the burden on the movant to establish good cause for the deposition." *Equal Emp. Opportunity Comm'n v. SkyWest Airlines, Inc.*, No. 3:22-CV-1807-D, 2024 WL 1942124, at *3 (N.D. Tex. May 2, 2024) (citing *Chrastecky v. C. R. Bard, Inc.*, 2021 WL 2232013, at *2 (W.D. Tex. May 14, 2021)).

The Court finds that PFP has not shown good cause to conduct a second Rule 30(b)(6) deposition of Barnes.  During his deposition, Barnes repeatedly deferred to Brower on the basis that Epic's bookkeeper created many of the documents produced by Epic, and he could only speculate about inconsistencies in those documents.  [doc. #258, pp. 21-22].  Even considering the production of new documents after the filing of this motion, the Court does not find that a second deposition of Barnes would yield any materially different testimony.  Further, regardless of how the parties characterize the Barnes versus Bowers factual dispute, these ARE credibility issues that are within the province of the jury.  The Court has no doubt that PFP's counsel will use that dispute during cross examination at trial.

Accordingly, PFP's Fourth Motion to Compel is **DENIED** to the extent it seeks a second deposition of Barnes.

*(c) Redactions*

With regard to the removal of redactions and/or the requested redaction log, the undersigned finds no basis for such an order. Epic is correct in its explanation of the basis for the production and has articulated the reasons for the redactions. A redaction log is typically necessary when the redacting party has not provided an explanation for the redactions. Here, however, Epic has informed PFP that the redactions were made to prevent the identification of vendors or customers. Since Epic has provided a clear basis for the redactions, the Court sees no reason to require further disclosure.

Accordingly, PFP's Fourth Motion to Compel is **DENIED** to the extent it seeks an order requiring Epic to remove redactions from previously produced documents or to refrain from making redactions in future productions. The Fourth Motion is also **DENIED** to the extent it seeks a redaction log, as Epic has already provided the basis for its redactions.

*(d) Sanctions and Contempt*

"Federal courts have inherent powers necessary to achieve the orderly and expeditious disposition of their dockets." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). "These powers include the authority to punish for contempt in order to maintain obedience to court orders and the authority to impose reasonable and appropriate sanctions . . ." *Id.* However, due to the potency of inherent powers and the limited control of their exercise, they must be used with great restraint and caution. *Id.* (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980)).

The Federal Rules of Civil Procedure empower courts to sanction parties for failing to comply with discovery orders. FED. R. CIV. P. 37(b)(2). District courts have "broad discretion" in determining both whether to impose sanctions under Rule 37 and what form such sanctions may

22

take. *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 324 (5th Cir. 2023) (quotation omitted). This broad discretion allows district courts to "'fashion remedies suited to the misconduct.'" *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (quoting *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990)).

This discretion, however, is limited. *Id.*  Sanctions must be "just" and "related to the particular 'claim'" at issue in the discovery order. *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019) (quotation omitted).  Rule 37(b)(2) includes a non-exhaustive list of potential sanctions, including (1) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action; (2) prohibiting the disobedient party from supporting or opposing designated claims or defenses; (3) striking pleadings; (4) staying further proceedings until the order is obeyed; (5) dismissing the action; (6) rendering a default judgment against the disobedient party; and (7) treating as contempt of court the failure to obey any order. FED. R. CIV. P. 37(b)(2)(A)(i)-(vii).  "If there is a reasonable probability that a lesser sanction will have the desired effect, the court must try the less restrictive measure first." *Natural Gas*, 86 F.3d at 467.

First, the Court notes that Epic has, at times, delayed production until after motions to compel were filed.  In certain instances, Epic also failed to meet Court-ordered deadlines for producing discovery.  Nonetheless, Epic has produced over 15,000 documents in this matter, including materials that were not created in the ordinary course of business, but were generated specifically for purposes of this litigation.

Upon consideration of the existing record, the undersigned finds that Epic has violated certain court orders and delayed production.  However, the Court is not persuaded that it must resort to more drastic sanctions.  Discovery has been contentious throughout this process, and it is

the Court's view, after dealing with the issues on multiple occasions, that there is blame to go around.  Furthermore, while copyright infringement is always a serious matter, the proportional needs of the case do not command the level of production PFP asserts.  Accordingly,  the Court will order an award of attorneys' fees and costs and expert costs to compensate PFP for the consequences of Epic's violations of court orders and delays in discovery production.  The undersigned orders that fees and costs be awarded in the amount of $5,000 to be assessed against Epic and awarded to PFP.  Further monetary sanctions will not be awarded.

PFP also seeks for preclusion and case dispositive sanctions.  Further, PFP requests that the Court allow the jury to be informed of certain facts or inferences related to Epic.  The Court declines to impose these other sanctions sought.   Lesser monetary sanctions adequately compensate PFP for the time spent by counsel in seeking resolution of discovery issues in this matter, and fairness dictates this result.  Although Epic has been dilatory and has failed to comply with orders, its counsel has engaged with both the Court and PFP's counsel in efforts to resolve the discovery disputes.  The undersigned also acknowledges, that while this is a copyright case, this case has already involved *very* extensive discovery efforts, including substantial productions by Epic.  With all these considerations in mind, and after considering all motions and responses, no further sanctions will be ordered at this time.

The Court cautions that any further violation of any court orders by any party will result in further substantial sanctions.  When the Court issues orders and deadlines, they are not suggestions.  They are binding obligations.

Accordingly, PFP's Fourth Motion to Compel and for Sanctions is **GRANTED** to the extent it seeks attorneys' fees and costs and expert costs.  **IT IS ORDERED** that PFP is awarded

costs and fees in the total sum of $5,000. The Fourth Motion to Compel is **DENIED** to the extent it seeks any additional sanctions.

Finally, the Court does not find Epic to be in civil contempt. "[C]ivil contempt is a severe remedy." *Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (quotation and quotation marks omitted). "'A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013) (quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995)). The federal standard for civil contempt requires that contempt be demonstrated by clear and convincing evidence. *Topletz v. Skinner*, 7 F.4th 284, 299 (5th Cir. 2021). "Clear and convincing" is a higher standard than the "preponderance of the evidence" standard, but not so high as "beyond a reasonable doubt." *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976). Clear and convincing evidence is that weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct, and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case. *Moawad v. Childs*, 253 F.3d 700 (5th Cir. 2001) (quotation and quotation marks omitted).

While Epic has delayed production of documents and failed to timely comply with the Court's prior orders, the Court does not find that its conduct rises to the level of civil contempt. Epic has made substantial productions in this case which, although not always timely, are proportional to the needs of the case, as discussed above. The monetary sanctions imposed herein are sufficient to address Epic's discovery delays. Civil contempt is a serious remedy, and the Court concludes that it is not warranted under the circumstances presented.

Accordingly, PFP's Fourth Motion to Compel and for Sanctions is **DENIED** to the extent it seeks for Epic to be held in contempt of court.

## Conclusion

For the above-stated reasons,

**IT IS ORDERED** that the Motion for Documents and Testimony Regarding Waiver of the Attorney-Client Privilege [doc. #249] filed by Prepared Food Photos, Inc. is **DENIED**.[5]

**IT IS FURTHER ORDERED** that the Fourth Motion to Compel and for Sanctions [doc. #250] filed by Prepared Food Photos, Inc. is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED IN PART AS MOOT**.

In Chambers, at Monroe, Louisiana, on this 18th day of July, 2024.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE

---

[5] As this motion is not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a).